UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| DUSTIN A. KING, | ) |
| Plaintiff, | ) |
| vs. | ) No. 1:14-cv-01092-JMS-MJD |
| INDIANA SUPREME COURT, MARION COUNTY CIRCUIT COURT, MARION COUNTY OFFICE OF THE COURT ADMINISTRATOR, MARION COUNTY COUNCIL, INDIANA SUPREME COURT, DIVISION OF STATE COURT ADMINISTRATION, | ) |
| Defendants. | ) |

**ORDER ON PLAINTIFF'S MOTION TO AMEND**

This matter comes before the Court on Plaintiff's Motion for Leave to Amend. [Dkt. 53.] For the following reasons, the Court **GRANTS** Plaintiffs' motion.

**I. Background**

On June 26, 2014, Dustin King ("Plaintiff" or "King") sued the Marion County Office of the Court Administrator, the Marion County Council ("County Defendants"), the Indiana Supreme Court, the Marion County Circuit Court, and the Indiana Supreme Court Division of State Court Administration ("DSCA") (collectively "State Defendants"). King is deaf and communicates primarily through American Sign Language ("ASL"). [Dkt. 1 at 3.] He alleged that he was a party in a state court action related to custody of his daughter, and that the court ordered him to participate in mandatory mediation. [*Id.* at 4.] King claims that he moved the court for appointment of an ASL interpreter for the mediation and asked for appointment at the

1

court's expense because he "is an individual of modest means." [*Id.*] The court, however, denied the motion. [*Id.*] King moved for reconsideration, but the court denied this motion as well. [*Id.*] He then sought an interlocutory appeal, but the state court denied that motion, allegedly forcing King to locate his own ASL interpreter for the mediation at his own expense. [*Id.*]

As a result, Plaintiff alleges a violation of Title II of the Americans with Disabilities Act ("ADA"), [*id.* at 5], which provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. Plaintiff also alleges a violation of the Rehabilitation Act, [Dkt. 1 at 6], which provides that no "otherwise qualified individual with a disability in the United States, as defined in section 705(20) of this title, shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." 29 U.S.C. § 794.

On August 28, 2014, the County Defendants moved to dismiss Plaintiffs' claims. [Dkt. 30.] They argued that the complaint failed to state a claim under Fed. R. Civ. P. 12(b)(6) because Plaintiff alleged only that the trial court's order discriminated against him; he did *not* allege that the County Defendants were responsible for any aspect of this order, and thus failed to present a plausible claim that the County Defendants violated his rights. [Dkt. 31 at 4.]

Plaintiff responded by amending his complaint to allege that the County Defendants participated in the provision of ASL interpreters in court-ordered mediations. [Dkt. 39 at 2.] The County Defendants moved to dismiss this Amended Complaint. [Dkt. 43.] They asserted that Plaintiff's own allegations showed that interpreters are not generally provided to the public, such

that Plaintiff had not alleged that "but for" his hearing disability, he would have received access to an interpreter. [Dkt. 44 at 5.]

State Defendants also moved to dismiss the Amended Complaint. [Dkt. 45.] They presented numerous reasons for dismissal, including lack of Article III standing; lack of subject matter jurisdiction; sovereign immunity; judicial immunity; and failure to state a claim upon which relief can be granted. [Dkt. 46 at 2.]

On October 14, 2014, Plaintiff responded to State Defendants' motion by filing the current Motion for Leave to Amend. [Dkt. 53.] He included a proposed Second Amended Complaint ("SAC"), which includes a variety of new factual allegations, [*see id.*], and asked the Court for leave to file this Second Amended Complaint.

## II. Discussion

Plaintiff has already amended his complaint once as a matter of right, [Dkt. 53 at 1], and Plaintiff has not obtained Defendants' consent to an amendment. [Dkt. 54 at 2.] Thus, Plaintiff may amend his complaint only with the Court's leave. Fed. R. Civ. P. 15(a)(2).

"The court should freely give leave when justice so requires." *Id.* This rule, however, does not mandate that leave be granted in every case: "district courts have broad discretion to deny leave to amend where there is undue delay, bad faith, dilatory motive, repeated failure to cure deficiencies, undue prejudice to the defendants, or where the amendment would be futile." *Arreola v. Godinez*, 546 F.3d 788, 796 (7th Cir. 2008).

Defendants resist the motion to amend only on the grounds that the proposed amendment is futile.[1] [*See* Dkt. 54 at 3.] As the parties resisting the amendment, State Defendants have the

---

[1] The Court also observes that there appears to be no evidence of undue delay, bad faith, dilatory motive, prejudice to defendants, or repeated failure to cure deficiencies. The deadline to amend the pleadings is not until December 1, 2014, and liability discovery does not close until April 29, 2015. [Dk. 34 at 4, 6.] Further, Plaintiff argues that his proposed amendment is a response to State Defendants' Motion to Dismiss, [Dkt. 45], to which Plaintiff did not

3

burden to show the amended complaint's futility. *See, e.g.*, *Foreman v. King*, No. 12 CV 50419, 2013 WL 4482612, at *1 (N.D. Ill. Aug. 20, 2013). A pleading is futile if it restates the same facts using different language, reasserts claims previously determined, fails to state a valid theory of liability, or would not survive a motion to dismiss.[2] *Garcia v. City of Chicago, Ill.*, 24 F.3d 966, 970 (7th Cir. 1994); *see also McCoy v. Iberdrola Renewables, Inc.*, 760 F.3d 674, 685 (7th Cir. 2014) *reh'g denied*, No. 13-3350, 2014 WL 4979692 (7th Cir. Oct. 7, 2014) ("District courts may refuse to entertain a proposed amendment on futility grounds when the new pleading would not survive a motion to dismiss."). To survive a motion to dismiss, the new complaint must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *McCoy*, 760 F.3d at 685 (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). Before denying such an amendment, however, it should be "clear" that the proposed amended complaint "is deficient" and would not survive such a motion. *Johnson v. Dossey*, 515 F.3d 778, 780 (7th Cir. 2008).

Plaintiff contends that his proposed SAC contains allegations that cure any deficiencies raised by State Defendants' Motion to Dismiss. [Dkt. 53 at 2.] State Defendants acknowledge that Plaintiff "has included some new factual allegations in the proposed amended complaint," but argue that none of these allegations "are sufficient to survive the State Defendants' Motion to Dismiss" because they do not address the "fatal jurisdictional and theory of liability flaws

---

have an opportunity to respond when filing his previous amended complaint. [Dkt. 53 at 2.] Thus, Plaintiff has not neglected previous opportunities to cure deficiencies.

[2] Many Seventh Circuit decisions state that an amendment is futile if it would not survive a motion for summary judgment. *See, e.g., King ex rel. King v. E. St. Louis Sch. Dist. 189*, 496 F.3d 812, 819 (7th Cir.2007). In these decisions, however, the case had already progressed to the summary judgment stage. Thus, it "would have been incongruous for the court to have defined futility in terms other than the capacity of the amendment to survive summary judgment." *Duthie v. Matria Healthcare, Inc.*, 254 F.R.D. 90, 95 (N.D. Ill. 2008). In this case, in contrast, the parties have not yet moved for summary judgment, and whether the amendment would survive a motion to dismiss is the proper standard. *See, e.g.*, *Bank of Am. NA v. Home Lumber Co. LLC*, No. 2:10 CV 170, 2011 WL 5040723, at *3 (N.D. Ind. Oct. 24, 2011).

4

elucidated in the State Defendants' Motion to Dismiss." [Dkt. 54 at 3.] The Court will thus consider the arguments raised in State Defendants' brief in support of their motion to dismiss,[3] and assess whether the proposed SAC addresses these alleged deficiencies.

### A. Article III Standing

State Defendants argue that Plaintiff's Amended Complaint fails to meet the requirements of Article III standing, [Dkt. 46 at 5], and that Plaintiff's proposed amendments do not cure this defect. [Dkt. 54 at 3.] Article III standing requires injury in fact, causation, and redressability. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992). State Defendants argue that Plaintiff's Amended Complaint does not establish causation because it makes "no specific allegations against State Defendants Indiana Supreme Court and Division of State Court Administration" [Dkt. 47 at 6; *see also id.* at 9]; that it does not establish injury in fact because the trial court "waived the mandatory mediation requirement," such that Plaintiff voluntarily participated in the mediation [*id.* at 9]; and that it does not establish redressability because possible remedies, such as ordering another mediation with an ASL interpreter present, would be "unwarranted under current law." [*Id.*]

Plaintiff's proposed amendments add factual matter that may overcome these contentions. First, Plaintiff's proposed SAC explains that the court-ordered mediation was part of the state Alternative Dispute Resolution ("ADR") Program for Domestic Relations Cases. [Dkt. 53-2 at 4.] This program requires any participating counties—such as Marion County— to prepare an ADR plan that is approved by the Executive Director of the Supreme Court Division

---

[3] Courts routinely examine a party's motion to dismiss and accompanying brief to determine whether they have met their burden of showing that proposed amendments are futile. *See, e.g., Trochuck v. Patterson Companies, Inc.*, 851 F. Supp. 2d 1147, 1149 (S.D. Ill. 2012) (relying on motion to dismiss to determine amendments were futile even where defendant did not oppose motion to amend); *Parkey v. Bowling*, No. 3:07-CV-267, 2008 WL 2169007, at *7 (N.D. Ind. May 22, 2008) (noting that defendant "addressed this same issue in greater detail in its reply brief in support of its motion to dismiss" when determining amendment was futile); *In re Schmid*, 494 B.R. 737, 749 (Bankr. W.D. Wis.) (relying on disposition of motion to dismiss to determine that amendment was futile).

of State Court Administration. [*Id.*] Further, the amendment alleges that the Indiana Supreme Court and DSCA approve the financial qualification guidelines for individuals of modest means to participate in the program, [*id.*], and that the Indiana Supreme Court and DSCA oversee the program's funding structure. [*Id.* at 9.] In short, Plaintiff contends that the modest means mediation program "is funded, administered, regulated, and provisioned by Defendants, including State Defendants." [Dkt. 55 at 3.]

The proposed SAC thus adds specific allegations against the Indiana Supreme Court and DSCA related to Plaintiff's participation in the mediation program. Moreover, Defendants themselves contend that the original decision to deny appointment of an ASL interpreter was based on the lack of funds for such an interpreter. [Dkt. 46 at 7.] Hence, the actions of the Indiana Supreme Court and DSCA in approving funding and financial eligibility guidelines may have caused the denial of the appointment of an interpreter that forms the basis for Plaintiff's complaint. Plaintiff's proposed amendments therefore address Defendant's causation argument.

Second, Plaintiff's proposed SAC acknowledges that the trial court waived the obligation to proceed with mediation. [Dkt. 53-2 at 7.] The complaint, however, also adds allegations that King "wanted and wished to participate in mediation," [*id.*], and "incurred the expense of seeking and obtaining" his own interpreter for the mediation. [*Id.* at 8.] Count I of the proposed SAC then adds an allegation that King "felt emotional distress for being treated differently, as a result of his disability."[4] [*Id.* at 11.] Plaintiff's amendments therefore demonstrate that he did suffer injury in fact in the form of 1) the expense required to participate in the state-wide mediation program in which he wanted to participate and 2) emotional distress resulting from the

---

[4] The addition of these factual allegations also belie Defendants' contention that Plaintiff's proposed SAC "merely restates the same essential facts using different language." [Dkt. 54 at 3.] Quite to the contrary, and as explained throughout this order, Plaintiff's additional factual allegations provide new and important insight regarding Defendant's "jurisdictional and theory of liability flaws." [*Id.*]

6

alleged mistreatment. Thus, regardless of the voluntary nature of the mediation, Plaintiff's proposed SAC meets the injury requirement of standing. *See, e.g.*, *In re Aqua Dots Products Liab. Litig.*, 654 F.3d 748, 751 (7th Cir. 2011) ("A financial injury creates standing."); *Todd v. Collecto, Inc.*, No. 12 C 4984, 2012 WL 5510226, at *1 (N.D. Ill. Nov. 13, 2012) *aff'd*, 731 F.3d 734 (7th Cir. 2013) (calling "emotional distress" a "sufficient injury" to confer constitutional standing).

Finally, by adding the allegation that he incurred the expense of seeking his own interpreter, Plaintiff has addressed the Defendants' redressability argument. The Court need not "order the state parties to re-mediate the dispute with an ASL interpreter at court expense," as Defendants suggest. [Dkt. 46 at 9.] Instead, the Court can simply award damages for the "expense" and "emotional distress" Plaintiff allegedly incurred. *See, e.g.*, *Grant-Hall v. Cavalry Portfolio Servs.*, LLC, 856 F. Supp. 2d 929, 936 (N.D. Ill. 2012) (claim for "compensatory damages" satisfies redressability).

Plaintiff's proposed SAC therefore addresses the Article III standing deficiencies that Defendants have identified, and the Court thus does not find it "clear," *Johnson*, 515 F.3d at 780, that Plaintiff's proposed SAC would not withstand a motion to dismiss on these grounds.

### B. Rooker-Feldman Doctrine

Defendants contend that the Rooker-Feldman doctrine "bars Plaintiff's Amended Complaint." [Dkt. 46 at 10.] This doctrine prevents federal district courts from entertaining actions brought by "state-court losers" challenging "state-court judgments rendered before the district court proceedings commenced." *Lance v. Dennis*, 546 U.S. 459, 460 (2006). It applies to both "direct review of state court decision" and claims "inextricably intertwined" with a state court's judgment. *Kansas City S. Ry. Co. v. Koeller*, 653 F.3d 496, 503 (7th Cir. 2011).

Defendants argue that the trial court's decision to deny appointment of an interpreter in this case is the sort of state court decision that this Court cannot review. [Dkt. 46 at 11.] Defendants also contend that the Rooker-Feldman doctrine applies not just to state court "judgments," but also to state court "orders," such as the state trial court's order on Plaintiff's motion for appointment of an interpreter. [*Id.* (citing *Homola v. McNamara*, 59 F.3d 647, 649-50 (7th Cir. 1995).]

Defendants may be correct, but Plaintiff's proposed SAC, as noted above, adds allegations related to State Defendants' roles in determining the guidelines for Indiana counties' ADR programs and the financial qualifications for participants in the modest means mediation program. [Dkt. 53-2 at 4-5.] These administrative and financial decisions are unrelated to the trial court's order denying the appointment of the interpreter, and thus may be reviewed without violating the Rooker-Feldman doctrine. *See Lance*, 546 U.S. at 464 (noting that the "narrow" Rooker-Feldman doctrine does not apply to state executive or administrative actions). Hence, it is not clear that the Rooker-Feldman doctrine renders Plaintiff's proposed SAC deficient.

### C. Collateral Estoppel

Defendants next argue that defensive collateral estoppel bars Plaintiff's complaint. [Dkt. 46 at 12.] They contend this doctrine applies where "a defendant seeks to prevent a plaintiff from asserting a claim which the plaintiff previously litigated and lost." [*Id.* (citing *MicroVote Gen. Corp. v. Indiana Election Comm'n*, 924 N.E.2d 184, 198 (Ind. Ct. App. 2010).] They note that the trial court denied Plaintiff's motion for an interlocutory appeal as moot because Plaintiff "was relieved of the responsibility to participate in mandatory mediation," such that Plaintiff purportedly had a "full and fair opportunity to litigate this matter in the state court." [*Id.* at 13.]

Plaintiffs' proposed SAC contravenes this argument. The SAC adds allegations that Plaintiff wished to participate in the state-wide mediation program but incurred expenses in finding his own interpreter because of Defendants' conduct. [Dkt. 53-2 at 7-8.] It also adds an allegation that King "felt emotional distress for being treated differently, as a result of his disability." [Dkt. 53-2 at 11.] Thus, regardless of whether Plaintiff "was relieved of the responsibility to participate in mandatory mediation," he still may have suffered damages that can be redressed, and the issue is not moot.[5]

Further, the fact that King moved for appointment of an interpreter at the trial court level hardly establishes that he had the "full and fair opportunity to litigate this matter." [Dkt. 46 at 13.] Nothing suggests that State Defendants' previously described funding and administrative decisions regarding the mediation program were before the state court, such that it is not at all clear that Plaintiff's claims related to these decisions are barred by collateral estopped.

### D. Domestic Relations

State Defendants contend the domestic relations exception to federal jurisdiction bars Plaintiff's claims. [Dkt. 46 at 14.] This "limitation on federal jurisdiction" prevents district courts from hearing "domestic disputes involving divorce, custody or alimony issues." *Allen v. Allen*, 48 F.3d 259, 261 (7th Cir. 1995).

This doctrine, however, is narrower than Defendants contend. As the Supreme Court has noted, the decisions establishing the doctrine "did not intend to strip the federal courts of authority to hear cases arising from the domestic relations of persons unless they seek the

---

[5] Defendants later argue that any claim for damages is moot because in the "Agreed Entry" disposing of Plaintiff's state court paternity suit, he agreed to pay his own litigation costs. [Dkt. 46 at 31-31.] Plaintiffs proposed SAC, however, adds that he suffered "emotional distress" due to Defendants' alleged conduct. [Dkt. 53-2 at 11.] Thus, even assuming the Agreed Entry covers the costs Plaintiff incurred in locating his own interpreter, he alleges emotional damages that are not within the scope of the Agreed Entry, such that his claim is not moot.

granting or modification of a divorce or alimony decree." *Ankenbrandt v. Richards*, 504 U.S. 689, 701-02 (1992). Thus, in *Ankenbrandt*, the Supreme Court determined that the lower court erred by refusing to exercise jurisdiction over a lawsuit that did not seek such issuance or modification "of a divorce, alimony, or child custody decree." *Id.* at 704.

In this case, Plaintiff's proposed SAC has no relation whatsoever to the results of the child custody proceedings that gave rise to this action. Instead, the SAC alleges that Plaintiff suffered "injuries and damages" and "emotional distress" from the lack of a court-appointed interpreter at the mediation. [Dkt. 53-2 at 11.] It then asks for a declaratory judgment that Defendants violated the ADA and for an award of "actual and compensatory damages." [Dkt. 53-2 at 12.] The SAC asks for no modification of the child custody decree resulting from the proceedings, and thus does not fall within the scope of the domestic relations exception. As such, the proposed SAC would likely withstand a motion to dismiss on this basis.

### E. Sovereign Immunity

Defendants contend that the Eleventh Amendment bars Plaintiff's suit. [Dkt. 46 at 16.] They note that the Supreme Court has consistently held that the Eleventh Amendment renders non-consenting states immune to suits brought in federal courts, whether by citizens of that state or of another state. [*Id.*] Defendants, however, also recognize that Congress may abrogate the state's immunity through exercise of its powers under Section Five of the Fourteenth Amendment. [*Id.* at 17.]

In *Tennessee v. Lane*, the Supreme Court determined that Congress abrogated state sovereign immunity through Title II of the ADA insofar as the ADA is used to "enforce the constitutional right of access to the courts." 541 U.S. 509, 531 (2004). Defendants argue that access to mediation is not equivalent to access to the courts, and that denying access to mediation

would not violate Plaintiff's constitutional rights, such that Title II's abrogation of sovereign immunity does not extend to Plaintiff's claims. [Dkt. 46 at 17-19.]

Defendants, however, do not address Count II of Plaintiff's complaint, in which he alleges a violation of Section 504 of the Rehabilitation Act. [Dkt. 53-2 at 11.] In 1986, Congress amended the Rehabilitation Act to provide that a "State shall not be immune under the Eleventh Amendment of the Constitution of the United States from suit in Federal court for a violation of section 504 of the Rehabilitation Act." 42 U.S.C. § 2000d-7. The Supreme Court has explained that this provision "expressly waives state sovereign immunity for violations of 'section 504 of the Rehabilitation Act of 1973 . . . *by recipients of Federal financial assistanc*e.'" *Sossamon v. Texas*, 131 S. Ct. 1651, 1662 (2011) (emphasis original)). Plaintiff's proposed SAC alleges that all Defendants received federal financial assistance, [Dkt. 53-2 at 2], such that all Defendants waived their sovereign immunity. *See Cullen v. Illinois Dep't of Human Servs.*, No. 12-1032, 2012 WL 1965384, at *3 (C.D. Ill. May 31, 2012) (recognizing effect of 1986 amendments in eliminating state immunity); *Rittenhouse v. Bd. of Trustees of S. Illinois Univ.*, 628 F. Supp. 2d 887, 895 (S.D. Ill. 2008) ("[Plaintiff's] action under the Rehabilitation Act is not barred by the Eleventh Amendment and may proceed."). Thus, even if the Court accepts Defendants' argument that "Title II of the ADA should not be held . . . as a valid abrogation of Indiana's sovereign immunity," [Dkt. 46 at 19], Plaintiff's remaining claim would survive this aspect of Defendants' motion to dismiss. Indiana's sovereign immunity therefore does not render Plaintiff's proposed SAC futile.

**F. Judicial Immunity**

Defendants argue that Plaintiff's complaint is barred by the doctrine of absolute judicial immunity. [Dkt. 56 at 20.] They correctly note that the Supreme Court has used a "functional

approach" to determine whether an individual is entitled to absolute immunity. [*Id.* (citing *Forrester v. White*, 484 U.S. 219, 224 (1978).] The Court agrees with Defendants, [*see id.* at 21], that the trial judge's rulings on Plaintiff's motion for appointment of an interpreter were, functionally, judicial acts that are likely entitled to judicial immunity.

Plaintiff's proposed SAC, however, adds allegations describing the operations and funding of the state-wide ADR program. Plaintiff alleges that the Indiana Supreme Court and the DSCA "provide standards and guidelines for each ADR plan," including the plan in Marion County, [Dkt. 53-2 at 4], and that the ADR funding programs are "administered and/or approved by the Indiana Supreme Court and the Indiana State Court Administration." [*Id.* at 9.] Thus, Plaintiff has alleged that the Indiana Supreme Court and DSCA may be involved in activities that caused the denial of his request for an interpreter, but which are not judicial activities entitling Defendants to judicial immunity. *See, e.g.*, *Forrester*, 484 U.S. at 228 ("Administrative decisions, even though they may be essential to the very functioning of the courts, have not . . . been regarded as judicial acts."). As such, the Court does not find it "clear," *Johnson*, 515 F.3d at 780, that Plaintiff's proposed SAC would not withstand a motion to dismiss on the basis of judicial immunity.[6]

---

[6] A more basic problem with the assertion of judicial immunity is that this is a personal defense reserved for individuals. *See Hernandez v. Sheahan*, 455 F.3d 772, 776 (7th Cir. 2006) ("Official immunities (judicial, legislative, absolute, qualified, quasi, and so on) are personal defenses designed to protect the finances of public officials whose salaries do not compensate them for the risks of liability under vague and hard-to-foresee constitutional doctrines. That justification does not apply to suits against units of state or local government, which can tap the public fisc."). Plaintiff, however, has not named any individual defendants in this suit; indeed, he has named *only* "units of state or local government." [*See* Dkts. 1 & 53-2.] State Defendants acknowledge this, [Dkt. 46 at 20], but continue to assert judicial immunity, apparently in case "the trial judge's rulings in the state court case are implicated in any individual capacity." [*Id.*] Regardless of the reason, their assertion of judicial immunity does not present a valid reason for dismissing the claims against the State Defendants themselves.

### G. Failure to State a Claim

Defendants next contend that Plaintiff has failed to state a claim upon which relief can be granted. [Dkt. 46 at 23.] They present two main arguments: first, that the trial court did not discriminate against Plaintiff because it waived the requirement to participate in the mediation program [Dkt. 46 at 24]; and second, that Plaintiff did not properly allege intentional discrimination. [*Id.* at 29.]

The first argument rests on the premise that the trial court did not exclude Plaintiff from any "services, programs, or activities" because it excused Plaintiff's participation in the mediation program. [*Id.* at 24.] Plaintiff's proposed SAC, however, alleges that he *wanted* to participate in the program, and could only do so by incurring costs to secure his own interpreter. [Dkt. 53-2 at 7-8.] Further, the proposed SAC adds facts establishing that the mediation was part of a state-wide program "funded, regulated, and provisioned by Defendants." [Dkt. 55 at 3.] Defendants themselves define "programs or activities" as "all of the operations of a . . . local government," [Dkt. 46 at 24 (citing *Frame v. City of Arlington*, 657 F.3d 215, 225 (5th Cir. 2011)], suggesting the Marion County mediation program was indeed a program or activity from which Plaintiff may have been excluded. As such, the Court finds that the proposed ADA claim could potentially survive a motion to dismiss for failure to state a claim on this basis.

Defendants then argue that "there is simply no allegation in the Amended Complaint that State Defendants were aware their conduct violated the ADA or section 504," such that "there is no showing here of discriminatory animus or intentional discrimination." [Dkt. 46 at 29.] Plaintiff, however, alleges in his proposed SAC that "Defendants have *intentionally* discriminated against King by refusing to provide auxiliary aids and services necessary to ensure an equal opportunity for King to participate in modest means mediation." [Dkt. 53-2 at 12

13

(emphasis added).] Furthermore, a showing of intent is not necessary for all of Plaintiffs' claims. Rather, discrimination under both the ADA and the Rehabilitation Act may "be established by evidence that (1) the defendant intentionally acted on the basis of the disability, (2) the defendant refused to provide a reasonable modification, or (3) the defendant's rule disproportionally impacts disabled people." *Washington v. Indiana High Sch. Athletic Ass'n, Inc.*, 181 F.3d 840, 847 (7th Cir. 1999). Granted, Plaintiff must show intent to prevail on his claim for compensatory damages. *See, e.g.*, *Phipps v. Sheriff of Cook Cnty.*, 681 F. Supp. 2d 899, 917 (N.D. Ill. 2009). Plaintiff, however, also seeks declaratory relief, [Dkt. 53-2 at 12], such that the Court does not find it "clear" that his amended complaint fails to state a claim for any potential deficiency in alleging intent.

**H. Judicial Estoppel**

Defendants next argue that judicial estoppel precludes Plaintiff's claims. This doctrine prevents a party who "prevails" on one ground in a first lawsuit from asserting and prevailing on an inconsistent position in a second lawsuit. *Ogden Martin Sys. of Indianapolis, Inc. v. Whiting Corp.*, 179 F.3d 523, 527 (7th Cir. 1999). The Seventh Circuit has described three prerequisites for the doctrine: "(1) the later position must be clearly inconsistent with the earlier position; (2) the facts at issue should be the same in both cases; and (3) the party to be estopped must have convinced the first court to adopt its position." *Id.*

Defendants contend that in the "Agreed Entry" disposing of his state court paternity suit, Plaintiff agreed to "pay [his] own attorney fees and litigation expense incurred hereto," such that he should not be allowed to now seek damages based on the expenses occurred during the state court proceedings. [Dkt. 46 at 30.] This contention is problematic for two reasons. First, Defendants do not explain how Plaintiff's agreement to pay his own fees was the result of his

14

"convince[ing] the first court to adopt [his] position." *Ogden*, 179 F.3d at 523. While parties routinely acquiesce to the payment of their own fees and costs as part of a settlement, rare is the litigant who affirmatively asks the court to order him to pay his own fees and costs. Second, Plaintiff's agreement to pay the attorney fees in the paternity suit is not "clearly inconsistent," *id.*, with his request for damages in this case. As noted above, Plaintiff seeks not only his costs incurred during the state court proceedings, but also damages for the emotional distress he suffered. [*See* Dkt 53-2 at 11.] Thus, even if judicial estoppel does apply to his request for litigation costs while in state court, it does not apply to Plaintiff's other potential damages, and thus does not present a valid reason for dismissing Plaintiff's complaint.[7]

### I. Summary

For the reasons explained above, the Court finds that Plaintiff's proposed Second Amended Complaint could survive Defendant's motion to dismiss. As such, the proposed SAC is not futile, and the Court will **GRANT** Plaintiff's motion to file the SAC.

The Court emphasizes that this order is not determinative of any potential motions to dismiss. At this time, the Court merely finds that it is not "clear" that the "proposed amended complaint is deficient." *Johnson*, 515 at 780. Further consideration after the parties have fully briefed any motions to dismiss may yet result in dismissal.

### III. Conclusion

Based on the above reasoning, the Court **GRANTS** Plaintiff's Motion for Leave to Amend. [Dkt. 53.] Plaintiff is therefore granted leave to amend his Amended Complaint, and the

---

[7] Defendants relatedly argue that the state court "Agreed Entry" constitutes a "waiver" of Plaintiff's claims. [Dkt. 46 at 31.] They define "waiver" as the intentional relinquishment of a known right. [*Id.* (citing *U.S. v Pappas*, 409 F.3d 828, 829 (7th Cir. 2005).] Defendants, however, do not explain how Plaintiff's payment of costs for the state court suit relinquished his claim for damages related to the emotional distress associated with a potential ADA violation.

Court **ORDERS** the Clerk to file Plaintiff's Second Amended Complaint and Demand for Jury Trial, [Dkt. 53-2], as of the date of this order. In light of the filing of the Second Amended Complaint, Defendants' Motions to Dismiss, [Dkts. 43 and 45], are **DENIED AS MOOT** without prejudice to their resubmission in response to the Second Amended Complaint, and Defendants are ordered to answer or otherwise respond to Plaintiff's Second Amended Complaint as set forth in the applicable federal rules.

Date: 11/07/2014

Mark J. Dinsmore
United States Magistrate Judge
Southern District of Indiana

Distribution:

Alex Maurice Beeman
CIOBANU LAW PC
abeeman@ciobanulaw.com

Andrea Lynn Ciobanu
CIOBANU LAW, PC
aciobanulaw@gmail.com

Dino L. Pollock
INDIANA ATTORNEY GENERAL
dino.pollock@atg.in.gov

Kenneth Lawson Joel
INDIANA ATTORNEY GENERAL
kenneth.joel@atg.in.gov

Adriana Katzen
OFFICE OF CORPORATION COUNSEL
adriana.katzen@indy.gov

Patricia Orloff Erdmann
OFFICE OF THE ATTORNEY GENERAL
Patricia.Erdmann@atg.in.gov