UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| **DUSTIN A. KING**,<br><br>　　　　Plaintiff,<br><br>　v.<br><br>**MARION COUNTY CIRCUIT COURT**, **MARION COUNTY OFFICE OF THE COURT ADMINISTRATOR**, **MARION COUNTY COUNCIL**, **INDIANA SUPREME COURT**, and **INDIANA SUPREME COURT, DIVISION OF STATE COURT ADMINISTRATION**.<br><br>　　　　Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)    Case No.: 1:14-cv-01092-JMS-MJD |

### SECOND AMENDED COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL

**COMES NOW**, Plaintiff Dustin A. King, by counsel, complaining of Defendants Marion County Circuit Court, Marion County Office of the Court Administrator, Marion County Council, Indiana Supreme Court, and the Indiana Supreme Court, Division of State Court Administration and states to this Court as follows:

### JURISDICTION

1. This Court has subject matter jurisdiction over this action under 28 U.S.C. § 1331 because this litigation implicates the proper interpretation and application of the federal Americans with Disabilities Act ("ADA") and Section 504 of the Rehabilitation Act ("Section 504"), which prohibit discrimination on the basis of disability and affirmatively require covered entities to provide appropriate auxiliary aids and services to individuals with disabilities when necessary to ensure equally effective communication.

1

2.   The acts and omissions of Defendants giving rise to this action occurred in Indianapolis, Indiana, making venue proper in this judicial district under 28 U.S.C. § 1391.

## THE PARTIES

3.   Plaintiff Dustin A. King ("King") is an individual and resides in Marion County, Indiana.

4.   Defendant Marion County Circuit Court has its principal offices in Marion County, Indiana and exercises jurisdiction of all civil matters filed in Marion County, including family law and juvenile cases, and administers all these cases and the courts activities with respect to these cases, including, but not limited to, providing ASL interpreters so that deaf individuals have access to its courts.

5.   Defendant Marion County Office of the Court Administrator has its principal offices in Marion County, Indiana and handles "non-judicial administrative matters" of the Marion County Courts, including the provision of the Marion County Superior Courts budget, the preparation of said budget, and other support services, including the provision of ASL interpreters so that deaf individuals have access to the Marion County Superior Courts.

6.   Defendant Marion County Council has its principal offices in Marion County, Indiana and collects and appropriates funds to the Marion County Superior Courts, including funds and monies to pay for the provision of ASL interpreters so that deaf individuals have access to the Marion County Superior Courts.  As the sole legislative body in Marion County it has the ultimate decisionmaking power with respect to the allocation and expenditures of funds collected, including from tax revenue and grants provided by the State of Indiana and the federal government, and to determine proper policy and set priorities regarding the fiscal affairs of Marion County.

7. Defendant Indiana Supreme Court ("Indiana Supreme Court") has its principal offices in Marion County, Indiana and manages the entire Indiana judicial system, and its "courts, officers and related offices and programs", including the Marion County Superior Courts.

8. Defendant Indiana Supreme Court Division of State Court Administration ("DSCA") has its principal offices in Marion County, Indiana and assists the Indiana Supreme Court in managing the entire Indiana judicial system, and its "courts, officers and related offices and programs", including the Marion County Superior Courts.

9. The Marion County Circuit Court, the Marion County Office of the Court Administrator, the Marion County Council, the Indiana Supreme Court, and DSCA may be collectively referred to as "Defendants".

10. At all times relevant, Defendants were each recipients either directly and/or indirectly of federal financial assistance and were each recipients either directly and/or indirectly of federal financial assistance specifically for the provision of ASL interpreters and other auxiliary aids and services.

## FACTUAL ALLEGATIONS

### Background

11. King is a deaf individual.

12. King is substantially limited in the major life activities of hearing and speaking.

13. King's primary mode of communication is American Sign Language ("ASL").

14. King is only able to follow, understand, and participate in court proceedings with an ASL interpreter.

### Domestic Relations ADR and Modest Means Mediation

15. As explained by DSCA:

> The Indiana General Assembly passed House Enrolled Act 1034 in 2003, authorizing for the first time the creation of alternate dispute resolution programs in domestic relations cases in each of Indiana's 92 counties. The act was effective on July 1, 2003. The Alternative Dispute Resolution Program in Domestic Relations cases under Indiana Code § 33-23-6 permits a county to collect a $20.00 fee from a party filing for a legal separation, paternity or dissolution case. This fee is placed in a separate fund and may be used for mediation, reconciliation, nonbinding arbitration and parental counseling in the county in which it is collected. Money in the fund must primarily benefit litigants who have the least ability to pay. Litigants with current charges or a former conviction of certain crimes relating to domestic violence are excluded from participating.
>
> Counties wishing to participate in an ADR program must develop an ADR plan that is consistent with the statute and that is approved by a majority of the counties' judges with jurisdiction over domestic relations and paternity cases. The Executive Director of the Indiana Supreme Court, Division of State Court Administration must approve the plan, in accordance with ADR Rule 1.11.[1] The counties are required to file an annual report summarizing the ADR program each year (see annual report form on this site.) Currently there are twenty-five counties with approved ADR plans.[2]

16. The Indiana Supreme Court and DSCA provide standards and guidelines for each ADR plan.[3]

17. One of the standards is that each plan "must primarily benefit those litigants who have the least ability to pay."[4]

18. This has led to the development of what is commonly referred to as "modest means mediation" in certain domestic relations cases in many counties across Indiana, including

---

[1] ADR Rule 1.11 states, "A county desiring to participate in an alternative dispute resolution program pursuant to IC 33-23-6 must develop and submit a plan to the Indiana Judicial Conference, and receive approval of said plan from the Executive Director of the Indiana Supreme Court Division of State Court Administration."
[2] "ADR Program Basics" at http://www.in.gov/judiciary/adr/2372.htm (as of October 14, 2014). This same information and more is also provided in the most recently available annual report titled "Court ADR Programs for Domestic Relations Cases: 2008 Annual Report" prepared by DSCA at http://www.in.gov/judiciary/adr/files/adr-annual-report-2008.pdf (as of October 14, 2014).
[3] "Standards and Guidelines for Establishment of Alternative Dispute Resolution Fund Plan" at http://www.in.gov/judiciary/adr/files/adr-adr-standards-guidelines.pdf (as of October 14, 2014). These standards and guidelines are statutory under Ind. Code § 33-23-6.
[4] *Id.*

4

        in Marion County, which is essentially mediation for those who have the least ability to pay.

19. Marion County has maintained an ADR program in domestic relations cases since 2004.[5]

20. In order to qualify for modest means mediation, an individual must meet certain criteria, primarily financial qualifications.

21. These financial qualifications are required in each ADR plan by the Indiana Supreme Court and DSCA.

22. However, the counties are free to determine the exact eligibility and financial qualification of individuals.

23. Modest means mediation and other ADR programs as approved and implemented through each counties ADR plan are funded by the collection of a $20.00 fee from every party filing for legal separation, paternity, or a dissolution case in each respective county and a co-payment by participants in the program based on ability to pay (which is specifically determined by each county).

24. In Marion County (at least), an individual applies to the trial court for modest means status or the right to proceed with modest means mediation.

25. If granted leave to participate in the modest means mediation program, the trial court appoints a modest means mediator from a specific panel of mediators.

26. Mediators apply with the Defendants, to be listed on the panel of mediators.

27. Indiana mediators are required to satisfy certain requirements in order to be a mediation as required by the Indiana Supreme Court and DCSA.

---

[5] "Court ADR Programs for Domestic Relations Cases: 2008 Annual Report" prepared by DSCA at http://www.in.gov/judiciary/adr/files/adr-annual-report-2008.pdf (as of October 14, 2014).

28. Marion County also requires that modest mean mediators register with the Indiana Commission for Continuing Legal Education, which is regulated by the Indiana Supreme Court.

29. To be placed on the registry and maintain good standing as a Registered Mediator, Registered Mediators must fulfill the requirements as set forth in ADR Rule 2.5.[6]

30. If eligible as required by Indiana Supreme Court and DCSA and approved by the Defendants, the mediator is placed on the panel of mediators.

31. Once a party is approved for modest means mediation the Marion County Court directly appoints a Modest Means Mediator from the panel of qualified Modest Means Mediators.

32. King paid the requisite filing fee, for which portions of funds derived are utilized to support the Marion County Modest Means Mediation Program.

33. King applied for and qualified through the court process to participate in the Marion County

34. Modest Means Mediation Program.

## Mediation

35. King was party Respondent in Cause No.: 49C01-1009-JP-041187 where the parties had disputes related to custody and parenting time of King's daughter.

36. King was originally required by the trial court to participate in mediation in the aforementioned matter with the other party because the issues would require two or more hours of the trial court's time pursuant to Marion County local rule LR49-FR00-502(H).

37. The mandatory mediation was scheduled for July 12, 2013.

---

[6] Counsel for King acknowledges that ADR Rules are currently under review and shall be revised soon. To the extent that this rule number changes, Plaintiff alleges that the general requirements or a Registered Mediator shall or will be at least maintained.

38. King is an individual of modest means.

39. King was granted leave to participate in a modest means mediation as an individual of modest means by the trial court.

40. The trial court appointed a mediator to serve as the mediator from the panel of mediators.

41. On or about June 21, 2013, King, by counsel, moved for the appointment of an ASL interpreter by the trial court and at the trial court's expense.

42. Said motion was denied by the trial court on or about June 23, 2013 stating that "Court does not supply interpreters for mediation hearings."

43. The trial court seemingly based its decision on the lack of funding for interpreters in mediation.

44. On June 27, 2013, King, by counsel, filed a motion to reconsider said decision even though King raised the issue that not providing an ASL interpreter in during his mediation was a violation of the ADA and Section 504.

45. The trial court also denied this motion to reconsider on July 3, 2013.

46. However, the trial court did state that King was not required to proceed with mediation despite Marion County local rule LR49-FR00-502(H).

47. Notwithstanding, King proceeded in the modest means mediation without the provision of a trial court appointed or supplied interpreter, let alone a qualified ASL interpreter.

48. King wanted and wished to participate in mediation.

49. The trial court did not offer King any alternative or request any modification with respect to his denial of an interpreter for King at the trial court's expense.

50. Shortly thereafter, King moved for the trial court to certify the issue for interlocutory appeal.

51. Said motion was also denied.

52. As a result the foregoing, King was required to furnish his own ASL interpreter for the mediation.

53. Fortunately, King found a family member that was available to interpret during the mediation.

54. King incurred the expense of seeking and obtaining his family member to interpret for him during mediation.

55. Defendants do not have a policy with respect to providing interpreters in modest means mediation for individuals like King.

56. Defendants further allocate no funding for the provision of interpreters in modest means mediation for individuals like King.

### Post-Mediation

57. King submitted a *Complaint of Discrimination* to the Indiana Civil Rights Commission on December 27, 2013, pursuant to statutory limitations, alleging that he was denied access to the trial court "in violation of federal ADA rules, due process, accommodations, and public access."

58. King also submitted a *Notice of Tort Claim* to the Office of the Indiana Attorney General, the trial court, and the Indiana Political Management Risk Assessment Subdivision on December 27, 2013, pursuant to Ind. Code § 34-13-3-1 *et. seq.* That notice included that King "should have full access to the legal system, including mediation" despite being deaf and of modest means.

### COUNT 1: VIOLATION OF THE AMERICANS WITH DISABILITIES ACT

59. King incorporates and restates each of the above paragraphs as if fully set forth herein.

60. King is a qualified individual with disability as defined in 42 U.S.C. § 12131(2).

61. Defendants are state and county departments, agencies, or other instrumentality of a state or state government; accordingly, Defendants are public entities as defined in 42 U.S.C. § 12131(1).

62. Title II of the ADA, 42 U.S.C. § 12132 provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity."

63. The Marion County Modest Means Program is a service and/or program and/or activity of the Marion County Court.

64. The Modest Means Mediation Program derives is funding through the ADR Fund, which is administered and/or approved by the Indiana Supreme Court and Indiana State Court Administration.

65. The Marion County Court and Marion County Circuit Court directly decide how to allocate such funding through the Modest Means Programs and reports its funding, among other entities, to the Indiana State Supreme Court and the Indiana State Court Administration.

66. The Marion County Court maintains a Family Law Resource Center right at the Marion County Courts.

67. The Marion County Family Law Resource Coordinator, which oversees and directs the Modest Means Program has an office right at the Marion County Court.[7]

---

[7] "Family Court Project: Marion County" at http://www.in.gov/judiciary/family-court/files/Marion_County.pdf (as of October 14, 2014).

68. The Family Resource Center, located within the Marion County Court regulates the Modest Means Mediators, payment allocation, including to Modest Means Mediation, and may control who may or may not participate in the Modest Means Mediation Program.

69. Should Modest Means Mediators be unable to provide adequate office space for mediation for participants in the Modest Means Mediation program, the Marion County Court, through the Family Law Resource Center provides an office in which mediation may occur between the parties by utilizing the Court Appointed Mediator.

70. Modest Means Mediators are paid, in part, by the ADR Fund.

71. Modest Means are considered "venders" of the Marion County Court and must submit a "vender form" to be paid the respective subsidized Modest Means Mediation portion to the Marion County Court/City of Indianapolis.

72. The payments to Modest Means Mediators is tracked and submitted to the Indiana Supreme Court and the Indiana State Court Administration to track for funding purposes and continued participation in the ADR Fund and Modest Means Program.

73. The Marion County Court and/or other respective parties mentioned herein determine how much each party will pay the mediator, based upon their respective incomes.

74. Any portion not paid by the parties is subsidized by the Marion County Court's Modest Means Mediation Program, which derives its funding from the ADR Fund.

75. The Marion County Courts, Marion Circuit Courts, Indiana State Supreme Court, and Indiana State Court Administration control, at least to some degree, control the Marion County Court Modest Means Mediation Program.

76. The Marion County Courts, Marion Circuit Courts, Indiana State Supreme Court, and Indiana State Court Administration control, at least to some degree, control the Marion County Court Modest Means Mediation Program funding.

77. Defendants have intentionally discriminated against King in violation of Title II of the ADA, 42 U.S.C. § 12132 by refusing to provide auxiliary aids and services necessary to ensure an equal opportunity for King to participate in modest means mediation, a program and law required, funded, and promoted by Defendants.

78. King was treated unequally because of his disability.

79. Defendants have not provided reasonable modification or accommodation as necessary and required by Title II of the ADA.

80. The Modest Means Program, designated to assist the impoverished failed to serve what could be considered some of the most disadvantaged in our society.

81. Despite the fact that King used a family member to interpret during the mediation, Defendants were obligated to provide "impartial" interpreting services, that is, an interpreter that does not have a personal relationship to King.

82. King's family member is not a certified ASL interpreter.

83. King felt emotional distress for being treated differently, as a result of his disability.

84. King has suffered injuries and damages as a result of the conduct described above and prayers for relief as requested below.

## COUNT 2: VIOLATION OF THE REHABILITATION ACT

85. King incorporates and restates each of the above paragraphs as if fully set forth herein.

86. Section 504 of the Rehabilitation Act, 29 U.S.C. § 794, provides, "No otherwise qualified individual with a disability in the United States, as defined in section 705(20) of this title,

shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance."

87. Defendants have intentionally discriminated against King by refusing to provide auxiliary aids and services necessary to ensure an equal opportunity for King to participate in modest means mediation in violation of Section 504 of the Rehabilitation Act.

88. Defendants have not provided reasonable modification or accommodation as necessary and required by Section 504 of the Rehabilitation Act.

89. King has suffered injuries and damages as a result of the conduct described above and prayers for relief as requested below.

## PRAYER FOR RELIEF

90. King prays that a judgment be entered on his behalf and against the Defendants on all Counts of this Complaint that:

   A. Declares that Defendants conduct as alleged herein violates the Americans with Disabilities Act, 42 U.S.C. § 12101 *et seq.* and the Rehabilitation Act, 29 U.S.C. § 701 *et seq.* to the fullest extent of these laws;

   B. Awards actual and compensatory damages to King, including reasonable attorney's fees and any and all litigation costs incurred in this matter under 42 U.S.C. § 3613, 29 U.S.C. § 794a, and/or to the fullest extent of these laws;

   C. Considers the tax consequences of any award; and,

   D. Awards any and all other relief as this Court deems just and proper.

## DEMAND FOR JURY TRIAL

King hereby demands a trial by jury of all issues so triable.

Dated: October 14, 2014

                                              Respectfully submitted,

                                              *s/ Alex Beeman*
                                              Andrea L. Ciobanu, #28942-49
                                              Alex Beeman, #31222-49
                                              CIOBANU LAW, P.C.
                                              8910 Purdue Road
                                              Indianapolis, Indiana 46268
                                              Telephone: (317) 495-1090
                                              Facsimile: (866) 841-2071
                                              Email: aciobanu@ciobanulaw.com
                                              Email: abeeman@ciobanulaw.com