UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| **DUSTIN A. KING**, | ) |
| | ) **Case No.: 1:14-cv-01092-JMS-MJD** |
| Plaintiff**,** | ) |
| | ) |
| v. | ) |
| | ) |
| **INDIANA SUPREME COURT**, et al., | ) |
| | ) |
| Defendants. | ) |

**RESPONSE IN OPPOSITION TO
STATE DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S
SECOND AMENDED COMPLAINT PURSUANT TO RULES 12(B)(1) AND 12(B)(6)**

**COMES NOW**, Dustin A. King ("King"), by counsel, and responds in opposition to Defendant Marion County Circuit Court, Indiana Supreme Court and Indiana Supreme Court, Division of State Court Administration ("State Defendants") *Motion to Dismiss Plaintiff's Second Amended Complaint Pursuant to Rules 12(b)(1) and 12(b)(6)* [dkt. 75] as follows:

State Defendants' argue that the allegations in King's *Second Amended Complaint* [dkt. 62] do not state a claim for which relief can be granted on a number of bases, which King will address each in turn. As this Court may recall, Plaintiff requested leave to file a second amended complaint after the State Defendant's filed their first motion to dismiss. In the *Order on Plaintiff's Motion to Amend* [dkt. 61], this Court granted King leave to file his *Second Amended Complaint* [dkt. 62]. In doing so and in response to State Defendants' request to deny King leave, this Court reviewed the futility of King's proposed amendment while addressing many of the same contentions once again now argued by State Defendants' in their *Motion to Dismiss* [dkt. 75].

1

## ARTICLE III STANDING

State Defendants' first argues that King's *Second Amended Complaint* [dkt. 62] fails to allege facts which establish Article III standing that he suffered an injury in fact, that the injury was in caused by the conduct complained of, and that the injury would be redressed by a favorable decision.

To the injury in fact element of the Article III standing analysis, as this Court's *Order on Plaintiff's Motion to Amend* [dkt. 61] succinctly explains, King's *Second Amended Complaint* [dkt. 62] "demonstrate[s] that he did suffer injury in fact in the form of 1) expense required to participate in the state-wide mediation program in which he wanted to participate and 2) emotional distress resulting from the alleged mistreatment." *Order on Plaintiff's Motion to Amend* [dkt. 61], p. 6-7. Despite the voluntary nature of the mediation (which King concedes), King incurred injury by the fact that he "wanted and wished to participate in mediation", which further resulted in emotional distress to King. *Second Amended Complaint* [dkt. 62], ¶ 48. King also incurred the expense of seeking and obtaining his own interpreter. *Id.*, ¶ 52-54.

To the causation prong of the Article III standing analysis, State Defendants' argues that "Whatever harm he alleges he suffered cannot be reasonably traced to or caused by the actions or omission of the State Defendants. As noted, [King] has not identified a single fact to suggest either the Indiana Supreme Court or [Indiana Supreme Court Division of State Court Administration ("DSCA")] had any role in the conduct complained of by Plaintiff in the Complaint." dkt. 76, p. 9. Despite State Defendants' obligations under Title II of the Americans with Disabilities Act[1], the trial court's decision not to provide an interpreter was based on the

---

[1] Title II imposes an affirmative obligation on public entities to make their programs accessible to qualified individuals with disabilities, except where compliance would result in a fundamental alteration of services or impose an undue burden." *Culvahouse v. City of LaPorte*, 679 F. Supp. 2d 931, 937 (N.D. Ind. 2009) (*citing Toledo v. Sanchez*, 454 F.3d 24, 32 (1st Cir. 2006)). This obligation includes, among other accommodations, the provision

lack of funding. As this Court correctly pointed out in its *Order on Plaintiff's Motion to Amend* [dkt. 61], it is State Defendants' who approve the financial qualification guidelines and funding structure of modest means mediation programs, which King wanted to participate in and qualified for, and other ADR plans. For these reasons, it is plausible that King's denial of interpreter for his modest means mediation may have been caused by State Defendants' guidelines and/or actions with respect to the funding and approval of Marion County's ADR plan, which includes the modest means mediation program. Or as stated by this Court in its *Order on Plaintiff's Motion to Amend* [dkt. 61], "[T]he actions of the Indiana Supreme Court and DSCA in approving funding and financial eligibility guidelines may have caused the denial of the appointment of an interpreter . . . ." p. 6. Regardless of the fact that the trial court waived King's requirement to participate in mediation, King wanted and wished to participate in the mediation. *See Second Amended Complaint* [dkt. 62], ¶ 48. That is corroborated by the fact that King requested multiple times for the appointment of an ASL interpreter on the basis it was required by law, specifically obligations under Title II of the ADA. *Id.*, ¶ 41-51.

To the redressibilty prong of the Article III standing analysis, as explained in this Court's *Order on Plaintiff's Motion to Amend* [dkt. 61], "[T]he Court can simply award damages for the "expense" and "emotional distress" Plaintiff allegedly incurred. *See, e.g., Grant-Hall v. Cavalry Portfolio Servs.*, LLC, 856 F. Supp. 2d 929, 936 (N.D. Ill. 2012) (claim for "compensatory damages" satisfies redressability).

### *ROOKER-FELDMAN* DOCTRINE

In this case, with respect to State Defendants, the *Rooker-Feldman* Doctrine is simply inapplicable. "If the injury alleged is distinct from that judgment, i.e., the party maintains an

---

ASL interpreters. *See Kennington v. Marion County Sheriff*, 2004 U.S. Dist. LEXIS 19572 (S.D. Ind. June 28, 2004).

injury apart from the loss in state court and not 'inextricably intertwined' with the state judgment . . . res judicata may apply, but *Rooker-Feldman* does not." *Garry v. Geils*, 82 F.3d 1362, 1365-66 (7th Cir. 1996). While the trial court's decision may have in part caused King injuries, the injuries alleged being economic losses and emotional distress, a plausible basis for the trial court's denial was that there was simply no funding. *See Second Amended Complaint* [dkt. 62], ¶ 43. The basis of King's loss would, at least in part, be the result of State Defendants' actions with respect to the funding and/or control of the modest means program and not as a result of the trial court's decision denying King the appointment of an ASL interpreter.

Furthermore, the basis of the trial court's decision not to provide an ASL interpreter to King was that there was no funding. *Id*. It was not denied as a matter of law or on the basis of a determination of law (specifically the ADA or Section 504). The *Rooker-Feldman Doctrine* is also not applicable because the trial court's decision was an administrative action wherein the doctrine does not apply. The trial court judge was making an administrative decision in this case, but an administrative determination that there is no funding for the provision of an interpreter in a modest means mediation program. In other words, there was no "ruling" for which the trial court's decision could even be considered a judgment and/or order.

## COLLATERAL ESTOPPEL/ISSUE PRECLUSION

State Defendants' argue that King's claims were already litigated and, based on the principle of collateral estoppel or issue preclusion, should be dismissed because they cannot now be relitigated. "Collateral estoppel will only apply if: '(1) the issue sought to be precluded is the same as that involved in the prior action; (2) the issue was actually litigated; (3) the determination of the issue was essential to the final judgment; and (4) the party against whom estoppel is invoked was fully represented in the prior action.'" *Walton v. Claybridge*

*Homeowners Ass'n*, 2004 U.S. Dist. LEXIS 946, 28-29 (S.D. Ind. Jan. 22, 2004) (*citing Havoco of Am., Ltd. v. Freeman, Atkins & Coleman, Ltd.*, 58 F.3d 303, 307 (7th Cir. 1995) (citations omitted) (emphasis added)).

State Defendants' request should be denied by this Court because King's claims were not actually litigated before the trial court, and the State Defendants' have failed to carry their burden showing that they were. As previously mentioned, the trial court based its decision on the basis that there was no funding and not that State Defendants' were not obligated to provide an interpreter under the ADA or Section 504. The issue was not actually litigated as the basis of his decision was that there was no funding. Even if that issue was actually litigated, the issue was not essential to the trial court's decision that there was no funding. Furthermore, as this Court duly noted in its *Order on Plaintiff's Motion to Amend* [dkt. 61], p. 8-9, there was no litigation over the question of whether State Defendants are liable based on their relationship and responsibility with respect to the modest means mediation program and King's case. In this respect, State Defendants argument fails as they are seeking to preclude an issue that was not even mentioned before the trial court.

## DOMESTIC RELATIONS EXCEPTION TO FEDERAL JURISDICTION

The domestic relations exception clearly does not apply to this case. King is not seeking to collaterally attack the trial court determination involving an issue of divorce, custody, paternity or any other domestic relation matter by way of federal court. King is only challenging the trial court's denial of an ASL interpreter for his modest means mediation which is entirely unrelated to the merits or facts of the underlying domestic relations case. State Defendants' do not point to one issue of domestic relations that King is now challenging. *See also Order on Plaintiff's Motion to Amend* [dkt. 61], p. 9-10.

## SOVEREIGN IMMUNITY

While generally mediation would not implicate any constitutional right as to form a basis to abrogate a state's sovereign immunity, there are cases whereas here when the use of mediation is so intertwined with the court and one's access to the courts that the denial of mediation could deprive one of the fundamental right to the courts. In Marion County, mediation is mandatory under certain circumstances was mandatory in this case. The use of mediation in Marion County, and many counties of Indiana, is so important that they form and pass a rule dictating when mediation is mandatory or suggested. In this respect, mediation is transformed into part of the court process and access to the courts becomes access to the courts and mediation. Unquestionably King was granted leave not to participate in mediation, but that does not implicate the implementation of mediation as part of the court process, at least with respect to domestic relations cases which the local rule is directed towards. Thus, denying King access to the mediation is denying him access to the court and the court process which the Supreme Court has clearly abrogated state sovereign immunity under Title II of the ADA.

Further, sovereign immunity has no bearing on King's Section 504 claims for the reasons stated in this Court's *Order on Plaintiff's Motion to Amend* [dkt. 61], p. 10-11. In short, King has alleged that State Defendants' receive financial assistance. 42 U.S.C. § 2000d-7 expressly waives sovereign immunity for violations of the Section 504 with respect to recipients of federal financial monies.

## JUDICIAL IMMUNITY

First, judicial immunity only protects judges and not their employers. "The common law doctrine of judicial immunity shields *judges* from civil liability for their judicial actions." *Rothman v. City of Chicago*, 2003 U.S. Dist. LEXIS 8376, 33 (N.D. Ill. May 14, 2003) (*citing*

6

*Brokaw v. Mercer County*, 235 F.3d 1000, 1015 (7th Cir. 2000) (emphasis added)). King has not sued any judge in their individual capacity, but only the Marion County Circuit Court who employs a judge as well as other persons (e.g. court reporter, bailiff, clerk). Nothing limits the vicarious liability of the entity to actions done by its employees, including a judge. "[W]hen a plaintiff asserts a cause of action against an employer-municipality, under either the ADA or the RA [Rehabilitation Act], the public entity is liable for the vicarious acts of *any* of its employees as specifically provided by the ADA." *Hildreth v. Cook County*, 2010 U.S. Dist. LEXIS 39983, 12 (N.D. Ill. Apr. 23, 2010) (*quoting Delano-Pyle v. Victoria Co., Tex.,* 302 F.3d 567, 574-75 (5th Cir. 2002) (emphasis in original)). For this same reason, State Defendants should not be afforded quasi-judicial immunity as these are not judicial acts. As this Court stated in its *Order on Plaintiff's Motion to Amend* [dkt. 61], p. 12, "Administrative decisions, even though they may be essential to the very functioning of the courts, have not . . . been regarded as judicial acts." (*citing Forrester v. White*, 484 U.S. 219, 228 (1978)).

Second, even if King implicated the trial court judge, the acts alleged are not "judicial acts" for which judicial immunity would be inapplicable. "[Judicial] Immunity is overcome in two instances: (1) a judge is not immune for nonjudicial actions, and (2) a judge is not immune for judicial action taken in the absence of all jurisdiction. To determine whether a judge's act is 'judicial', the court looks at 'the nature of the act itself, i.e., whether it is a function normally performed by a judge, and to the expectations of the parties, i.e., whether they dealt with the judge in his judicial capacity." *Crenshaw v. Dywan*, 34 F. Supp. 2d 707, 711 (N.D. Ind. 1999) (*citing Mireles v. Waco*, 502 U.S. 9, 10-11 (1991) (certain citations omitted). The administration and approval of Marion County's ADR plan and the administration of the modest means program, including providing funding and setting standards and guidelines, are not judicial acts.

And, these acts did not implicate any judge or any other judicial officer who may invoke judicial immunity.

## OBLIGATION/DUTY UNDER THE ADA AND THE REHABILITATION ACT

As governmental or public entities, State Defendants are subject to the ADA and the Rehabilitation Act. "Title II imposes an affirmative obligation on public entities to make their programs accessible to qualified individuals with disabilities, except where compliance would result in a fundamental alteration of services or impose an undue burden." *Culvahouse v. City of LaPorte*, 679 F. Supp. 2d 931, 937 (N.D. Ind. 2009) (*citing Toledo v. Sanchez*, 454 F.3d 24, 32 (1st Cir. 2006)). King is an individual of disability. The modest means mediation program is "service, program, or activity" within the definition of the ADA and the Rehabilitation Act, as the definition of "service, program, or activity" is very broad and inclusive. *See e.g. Frame v. City of Arlington*, 657 F.3d 215, 225 (5th Cir. 2011) ("The Rehabilitation Act, however, defines a 'program or activity' as 'all of the operations of . . . a local government.'").

Pursuant to federal regulation, governmental or public entities "shall take appropriate steps to ensure that communications with applications, participants, members of the public, and companions with disabilities are as effective as communications with others" 28 C.F.R. § 35.160(a), and "shall furnish appropriate auxiliary aids and services where necessary to afford individuals with disabilities . . . an equal opportunity to participate in, and enjoy the benefits of, a service, program, or activity of a public entity." 28 C.F.R. § 35.160(b)(1). This obligation includes, among other accommodations, the provision ASL interpreters. *See Kennington v. Marion County Sheriff*, 2004 U.S. Dist. LEXIS 19572 (S.D. Ind. June 28, 2004).

**FAILURE TO STATE A CLAIM UPON WHICH RELIEF MAY BE GRANTED**

First, State Defendants argues that they are not obligated to provide interpreters or accommodations because mediation is not a judicial service or court proceeding.  The question of whether mediation is a judicial service or court proceeding (as they state) does not implicated whether King failed to state a claim upon which relief may be granted but whether State Defendants are entitled to sovereign immunity at least with respect to the ADA.  However, this argument has already been discussed above and King would incorporate said argument herein.

Second, State Defendants argue that the modest means program does not implicate them under the Rehabilitation Act because it receives no federal monies.  While it is true that the program is largely funded by the collection of $20.00 from each domestic relation filing fee, it is also true that all Defendants, including State Defendants, receive federal monies.  It is plausible in the facts alleged that certain federal monies are used in the modest means program. *See Second Amended Complaint* [dkt. 62], ¶ 10, 66-70.

Third, State Defendants deny that King is eligible for compensatory damages as he has failed to allege intentional discrimination.  King has alleged intentional discrimination. *See e.g. Second Amended Complaint* [dkt. 62], ¶ 41-51, 77, 87.  Further, King has alleged intentional discrimination as to survive this motion to dismiss.  The trial court was presented with the fact that King was deaf and required an accommodation or interpreter to participate in mediation.  The trial court, despite repeated attempts and the presentation of the relevant legal authority indicating the trial court's obligation to provide one, failed to furnish King an interpreter.  Just as the sheriff in *Kennington*, King has stated a claim for intentional discrimination. *Kennington* involved a deaf individual who required an accommodation of a teletypewriter device while he was locked up in jail.  Despite this knowledge, the sheriff failed to provide the disabled

individual any accommodation. This Court held that this was deliberate indifferent to his rights and intentional discrimination under the ADA. *See Kennington v. Marion County Sheriff*, 2004 U.S. Dist. LEXIS 19572, 21-25 (S.D. Ind. June 28, 2004).

## JUDICIAL ESTOPPEL

State Defendants' argued that King "should not be able to agree to pay for all of his litigation expenses incurred and attorney fees in state court and then march into federal court and essentially ask this Court to order State Defendants to reimburse him for those same litigation expenses." dkt. 76, p. 32. First, it is not inconsistent under the circumstances to request litigation expenses and attorney's fees. As this Court noted, "[P]arties routinely acquiesce to the payment of their own fees and costs as part of a settlement." *Order on Plaintiff's Motion to Amend* [dkt. 61], p. 15. It is not inconsistent to pay your own fees and expenses, but then ask for reimbursement. It may be inconsistent to request your fees and expenses be paid after you have asked (not just agreed) to pay your own fees and expenses. It is also unclear according to the State Defendants what King allegedly convinced the trial court to do in this matter that should estop him. This may because the judgment was not one ordered by the court but agreed to by the parties through mediation (i.e. consent judgment). Also, as this Court duly noted, "Plaintiff seeks not only his costs incurred during the state court proceedings, but also damages for the emotional distress he suffered. Thus, even if judicial estoppel does apply to his request for litigation costs while in state court, it does not apply to Plaintiff's other potential damages, and thus does not present a valid reason for dismissing Plaintiff's complaint. *Order on Plaintiff's Motion to Amend* [dkt. 61], p. 15 (citation omitted). Finally, while King may have waived his right to claim attorney's fees or litigations expenses from the trial court or the opposing party, his consent judgment waived nothing (there is no language to suggest as such) with respect to any

other matter, lawsuit, or cause of action. *See e.g. Wisch v. Whirlpool Corp.*, 927 F. Supp. 1092, 1097 (N.D. Ill. 1996) (language of settlement contract did not provide consideration for any claims outside workers' compensation claim, it did not release employee's ADA claims against employer).

## MOOTNESS

"[I]f an event occurs while a case is pending . . . that makes it impossible for the court to grant 'any effectual relief whatever,' the case must be dismissed as moot". *Wylie v. For Eyes Optical Co.*, 2011 U.S. Dist. LEXIS 130301, 17-18 (N.D. Ill. Nov. 10, 2011) (*quoting Church of Scientology v. United States*, 506 U.S. 9, 12, 113 S. Ct. 447, 121 L. Ed. 2d 313 (1992); *Mills v. Green*, 159 U.S. 651, 653, 16 S. Ct. 132, 40 L. Ed. 293 (1895)).  There has been no action done on the part of State Defendants or any defendant in this matter as to make King's claim moot.  A controversy exists as to whether King was denied an interpreter when participating in modest means mediation.  King has incurred damages, both monetary and emotional distress injuries, which still have not been redressed.  King has a very personal stake left in the outcome of this litigation. *See Filardi v. Loyola Univ.*, 1998 U.S. Dist. LEXIS 3008, 11-12 (N.D. Ill. Mar. 11, 1998) ("[P]laintiff must continue to have a personal stake in the outcome of the litigation to avoid dismissal of her complaint for mootness.").  That said, we invite the Defendants to admit to a violation of the ADA and the Rehabilitation Act and to reimburse and compensate King for his injuries.

**WHEREFORE**, King, by counsel, requests this Court deny State Defendants' *Motion to Dismiss Plaintiff's Second Amended Complaint Pursuant to Rules 12(b)(1) and 12(b)(6)* [dkt. 75], and for all other just and proper relief in the premises.

Respectfully submitted,

*s/ Alex Beeman*
Andrea L. Ciobanu, #28942-49
Alex Beeman, #31222-49
Ciobanu Law, P.C.
8910 Purdue Road
Indianapolis, Indiana 46268
Telephone: (317) 495-1090
Facsimile: (866) 841-2071
Email: aciobanu@ciobanulaw.com
Email: abeeman@ciobanulaw.com

## CERTIFICATE OF SERVICE

I hereby certify that on December 19, 2014 a copy of this document was filed electronically. Service of this filing will be made on all ECF-registered counsel by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

*s/ Alex Beeman*
Andrea L. Ciobanu, #28942-49
Alex Beeman, #31222-49
Ciobanu Law, P.C.
8910 Purdue Road
Indianapolis, Indiana 46268
Telephone: (317) 495-1090
Facsimile: (866) 841-2071
Email: aciobanu@ciobanulaw.com
Email: abeeman@ciobanulaw.com