UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| DUSTIN A. KING, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| INDIANA SUPREME COURT, | ) | No. 1:14-cv-01092-JMS-MJD |
| MARION COUNTY CIRCUIT COURT, | ) | |
| MARION COUNTY OFFICE OF THE | ) | |
| COURT ADMINISTRATOR, | ) | |
| MARION COUNTY COUNCIL, and | ) | |
| INDIANA SUPREME COURT DIVISION OF | ) | |
| STATE COURT ADMINISTRATION, | ) | |
| | ) | |
| Defendants. | ) | |

**ORDER ON DEFENDANTS' MOTIONS TO DISMISS**

Presently pending before the Court are two motions to dismiss the claims brought by

Plaintiff Dustin A. King pursuant to Title II of the Americans with Disabilities Act ("ADA") and

Section 504 of the Rehabilitation Act. [Filing No. 62.] One motion was filed by Defendants

Marion County Council and Marion County Office of the Court Administrator (collectively

"County Defendants"), [Filing No. 70], and the other was filed by Defendants Indiana Supreme

Court, Indiana Supreme Court Division of State Court Administration ("DSCA"), and Marion

Circuit Court[1] (collectively, the "State Defendants"), [Filing No. 75]. Because the pending

motions present some of the same arguments, the Court will address both motions together and

differentiate between the moving defendants as necessary.

---

[1] Mr. King's reference to the Marion County Circuit Court is read by the Court to mean the Marion Circuit Court. This Court will refer to it by its proper name. *See* Indiana Code § 33-28-1-1 ("the court shall be styled the [Marion] Circuit Court").

# I.
## STANDARD OF REVIEW

Federal Rule of Civil Procedure 8(a)(2) "requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief.'" *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (quoting Fed. R. Civ. Pro. 8(a)(2)). "Specific facts are not necessary, the statement need only 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Erickson*, 551 U.S. at 93 (quoting *Bell Atlantic v. Twombly*, 550 U.S. 544, 555 (2007)).

A motion to dismiss asks whether the complaint "contain[s] sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). In reviewing the sufficiency of a complaint, the Court must accept all well-pled facts as true and draw all permissible inferences in favor of the plaintiff. *See Active Disposal, Inc. v. City of Darien*, 635 F.3d 883, 886 (7th Cir. 2011). The Court will not accept legal conclusions or conclusory allegations as sufficient to state a claim for relief. *See McCauley v. City of Chicago*, 671 F.3d 611, 617 (7th Cir. 2011). Factual allegations must plausibly state an entitlement to relief "to a degree that rises above the speculative level." *Munson v. Gaetz*, 673 F.3d 630, 633 (7th Cir. 2012). This plausibility determination is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.*

# II.
## BACKGROUND

Mr. King's Second Amended Complaint is the operative pleading in this litigation. [Filing No. 62.] Consistent with the applicable standard of review, the allegations that the Court must accept as true at this stage of the litigation are set forth below.

## A. Marion County Alternative Dispute Resolution Program

Indiana Code § 33-23-6-1 provides that if a county meets certain requirements, "the clerk of the court shall collect from the party filing a petition for legal separation, paternity, or dissolution of marriage . . . an alternative dispute resolution fee of twenty dollars ($20)." Those funds "shall be used to foster domestic relations alternative dispute resolution," including "mediation, reconciliation, nonbinding arbitration, and parental counseling." Ind. Code § 33-23-6-2(d) (numbers of subparagraphs omitted). Litigants referred to the services covered by the fund "shall make a copayment for the services in an amount determined by the court based on the litigants' ability to pay," and "[e]ach circuit . . . that administers an alternative dispute resolution fund shall ensure that money in the fund is disbursed in a manner that primarily benefits those litigants who have the least ability to pay." Ind. Code § 33-23-6-2(d)-(e).

These alternative dispute resolution ("ADR") services are commonly referred to as an "ADR program." To participate, a county must "develop a plan to carry out the purposes [of the applicable statutory section] that is approved by a majority of the judges in the county exercising jurisdiction over domestic relations and paternity cases" and must "submit the plan to the judicial conference of Indiana." Ind. Code § 33-23-6-3(a). Pursuant to Indiana ADR Rule 1.11, that plan must be approved by "the Executive Director of the Indiana Supreme Court Division of State Court Administration." Once approved, a participating county shall submit a yearly report "summarizing the results of the program." Ind. Code § 33-23-6-4.

Marion County has operated an ADR program since 2004. [Filing No. 62 at 5.] One facet of that program is the Modest Means Mediation Program. [Filing No. 62 at 4-5.] If a party in a domestic relations case is approved for participation in the Modest Means Mediation Program, the trial court appoints a mediator from a specified panel of mediators who meet certain requirements as required by the Indiana Supreme Court and DSCA. [Filing No. 62 at 5; *see also* Ind. ADR Rule 2.5.]

**B. Mr. King's State Court Case**

Mr. King resides in Marion County. [Filing No. 62 at 2.] In 2013, Mr. King was the respondent in a state court action pending in the Marion Circuit Court regarding custody and parenting time for his daughter. [Filing No. 62 at 6; Filing No. 47 at 2.] The judicial decisions at issue in this case were made by Marion Circuit Court Judge Louis Rosenberg (the "state court"). [Filing No. 49.]

Mr. King is deaf and his primary mode of communication is American Sign Language ("ASL"). [Filing No. 62 at 3.] Mr. King asserts that he is only able to follow, understand, and participate in court proceedings with an ASL interpreter. [Filing No. 62 at 3.] In his domestic relations case, Mr. King "paid the requisite filing fee, for which portions of funds derived are utilized to support the Marion County Modest Means Mediation Program." [Filing No. 62 at 6.] Because the issues in his case "would require two or more hours of the trial court's time," Mr. King was initially required to participate in mediation pursuant to a local Marion County Rule. [Filing No. 62 at 6.] Mr. King "applied for and qualified through the court process to participate in the Marion County Modest Means Mediation Program." [Filing No. 62 at 6.] The trial court appointed a mediator and the mediation was initially scheduled for July 12, 2013. [Filing No. 62 at 6-7.]

On or about June 21, 2013, Mr. King moved for an ASL interpreter to be appointed by the state court at its expense for his mediation. [Filing No. 62 at 7.] The trial court denied that motion, stating that it "does not supply interpreters for mediation hearings." [Filing No. 62 at 7.] On June 27, 2013, Mr. King filed a motion to reconsider that decision because "not providing an ASL interpreter during his mediation was a violation of the ADA and Section 504." [Filing No. 62 at 7.] The state court denied his motion to reconsider on July 3, 2013, noting that "no funding has been budgeted for providing interpreters during mediation proceedings. The Court only has funding budgeted for interpreters during Court proceedings." [Filing No. 47 at 3.] To "alleviate the need for an interpreter under the circumstances presented," however, the trial court waived the parties' obligation to participate in mediation under the applicable local rule. Mr. King moved for the trial court to certify the issue for interlocutory appeal, but that request was denied on July 17, 2013. [Filing No. 62 at 7; Filing No. 49.]

Mr. King wanted to participate in the Modest Means Mediation Program. [Filing No. 62 at 7.] Thus, he "proceeded in the modest means mediation without the provision of a trial court appointed or supplied [ASL] interpreter." [Filing No. 62 at 7.] Instead, Mr. King "was required to furnish his own ASL interpreter for the mediation" and "found a family member that was available to interpret during the mediation." [Filing No. 62 at 8.] Mr. King alleges that he "incurred the expense of seeking and obtaining his family member to interpret for him during mediation." [Filing No. 62 at 8.]

### C. Mr. King's Federal Case

Mr. King filed a Complaint against the Defendants in this Court on June 29, 2014. [Filing No. 1.] His operative pleading alleges claims against all of the Defendants for violations of the

ADA and the Rehabilitation Act. [Filing No. 62 at 8-12.] Specifically, Mr. King alleges[2] that he was "treated unequally because of his disability" and that the Defendants "intentionally discriminated" against him in violation of applicable federal law "by refusing to provide auxiliary aids and services necessary to ensure an equal opportunity for King to participate in modest means mediation, a program and law required, funded, and promoted by Defendants." [Filing No. 62 at 11.] He further contends that Defendants did not provide reasonable modification or accommodation as required by applicable federal law because they "were obligated to provide 'impartial' interpreting services, that is, an interpreter that does not have a personal relationship to King." [Filing No. 62 at 11.] Mr. King alleges that he suffered emotional distress for being treated differently because of his disability. [Filing No. 62 at 11.]

Mr. King seeks judgment in his favor, including a declaration that the Defendants violated the ADA and the Rehabilitation Act. [Filing No. 62 at 12.] He asks the Court to award him actual and compensatory damages, including reasonable attorneys' fees and litigation costs. [Filing No. 62 at 12.] The Defendants have moved to dismiss Mr. King's claims, and the Court will now address those motions. [Filing No. 70; Filing No. 75.]

### III.
#### DISCUSSION

Both the State Defendants and the County Defendants challenge various aspects of the merits of Mr. King's claims because, in their view, even taking his allegations as true, his claims fail as a matter of law. [Filing No. 71 at 4-7 (County Defendants' motion); Filing No. 76 at 25-31 (State Defendants' motion).] The State Defendants also argue that Mr. King lacks Article III standing to assert his claims and that, additionally, his claims are barred by legal principles such

---

[2] Mr. King makes these allegations in the context of his ADA claim, and then incorporates them as the basis of his Rehabilitation Act claim. [Filing No. 62 at 11-12.]

as the *Rooker-Feldman* doctrine, collateral estoppel, the domestic relations exception to federal jurisdiction, Eleventh Amendment sovereign immunity, judicial immunity, judicial estoppel, waiver, and mootness. [Filing No. 76 at 4-23; Filing No. 76 at 31-34.] The Court will begin its analysis by addressing the State Defendants' defenses before turning to the parties' arguments regarding the merits of Mr. King's allegations for his ADA and Rehabilitation Act claims.

## A. State Defendants' Defenses

### 1) Standing

The State Defendants argue that Mr. King does not have Article III standing to pursue his claims against them.[3] [Filing No. 76 at 4-10.] Specifically, they contend that his operative complaint "only contains general threadbare allegations" regarding the involvement of the Indiana Supreme Court and DSCA in the Marion County Modest Means Mediation Program at issue. [Filing No. 76 at 6.] They emphasize that the state court waived mandatory mediation for Mr. King and contend that the Indiana Supreme Court and DSCA "do not play any role in the day-to-day operations or governance of the individual county courts" and that Mr. King has not alleged any facts sufficient to establish the elements of Article III standing here. [Filing No. 76 at 7-8.]

In response, Mr. King acknowledges that the mandatory mediation requirement was waived for him and that, instead, he voluntarily participated in the mediation. [Filing No. 82 at 2.] He contends, however, that he wanted to participate in the Modest Means Mediation Program and that the denial of his request for an ASL interpreter for that proceeding emotionally harmed him

---

[3] Counsel for the State Defendants represents three entities—the Indiana Supreme Court, DSCA, and the Marion Circuit Court. Their standing arguments, however, focus exclusively on Mr. King's allegations regarding the Indiana Supreme Court and DSCA. [Filing No. 76 at 5-10.] Thus, they do not challenge Mr. King's standing to pursue claims against the Marion Circuit Court. To the extent they intended to make such a challenge, the Court finds it to be waived. *See Pruitt v. City of Chicago, Illinois*, 472 F.3d 925, 930 (7th Cir. 2006) (failure to sufficiently develop arguments results in waiver).

and he incurred the expense of seeking and obtaining his own interpreter to participate. [Filing No. 82 at 2.] Mr. King points out that the decision to deny his ASL interpreter request was "based on the lack of funding," and he emphasizes that the State Defendants "approve the financial qualification guidelines and funding structure of modest means mediation programs." [Filing No. 82 at 3.]

In reply, the State Defendants downplay any role in funding decisions regarding modest means mediation. [Filing No. 85 at 2-3.] They emphasize that they cannot decide to increase, decrease, or not fund the program; that Marion County voluntarily undertook the program; and that the "only limited role" of the Indiana Supreme Court or DSCA "is in approving a county's planned use of the funds it collects so that it is consistent with the dictates established by the General Assembly." [Filing No. 85 at 2.]

There are two "concepts" of standing—"Article III standing, which requires just an injury in fact, and 'prudential' standing, a more complex, judge-made concept of standing." *MainStreet Org. of Realtors v. Calumet City, Ill.*, 505 F.3d 742, 744 (7th Cir. 2007). The State Defendants confirm that they are challenging Mr. King's Article III standing, not his prudential standing. [Filing No. 76 at 4 ("Prudential standing is not implicated by Plaintiff's Complaint and will not be addressed here.").]

Standing ensures that the parties at issue have a "vested interest in the case" and guarantees that the Court only adjudicates "cases and controversies." *Cabral v. City of Evansville, Ind.*, 759 F.3d 639, 641 (7th Cir. 2014). "To satisfy Article III's standing requirements, a litigant must show that (1) it has suffered an actual or imminent concrete and particularized "injury in fact"; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Id.* at 641-42

(citing *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 180-81 (2000)).

A plaintiff has Article III standing if he "may well be harmed by" defendants' actions. *MainStreet*, 505 F.3d at 744. The bar for establishing Article III standing is lower at the pleading stage. *See United States v. $196,969.00 U.S. Currency*, 719 F.3d 644, 646 (7th Cir. 2013) (holding that it is not required to "prove Article III standing" in the pleading context) (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561-62 (1992)). "[S]tanding in the Article III sense does not require a certainty or even a very high probability that the plaintiff is complaining about a real injury, suffered or threatened." *MainStreet*, 505 F.3d at 744. "[T]he fact that a loss or other harm on which a suit is based is probabilistic rather than certain does not defeat Article III standing." *Id.* (citation omitted). "All that a plaintiff need show to establish standing to sue in the Article III sense is a reasonable probability—not a certainty—of suffering tangible harm unless he obtains the relief that he is seeking in the suit." *Id.* at 745. The Article III standing requirement is meant to keep cases involving "some abstract psychic harm or a one-day-I'll-be-hurt allegation" out of federal court. *Id.*

At this stage of the proceedings, the Court cannot conclude as a matter of law that Mr. King lacks Article III standing to pursue his claims against the Indiana Supreme Court and DSCA. The operative pleading makes various allegations regarding the relationship between the Modest Means Mediation Program and the Indiana Supreme Court and DSCA. For example, it specifically alleges that

> · "Counties wishing to participate in an ADR program must develop an ADR plan that is consistent with the statute . . . . The Executive Director of the Indiana Supreme Court, Division of State Court Administration must approve the plan. . . ." [Filing No. 62 at 4.]

- "The Indiana Supreme Court and DSCA provide standards and guidelines for each ADR plan." [Filing No. 62 at 4.]

- "The Modest Means Mediation Program derives [its] funding through the ADR Fund, which is administered and/or approved by the Indiana Supreme Court and Indiana State Court Administration." [Filing No. 62 at 9.]

- "The Marion County Court and Marion County Circuit Court directly decide how to allocate such funding through the Modest Means Programs and report its funding, among other entities, to the Indiana State Supreme Court and the Indiana State Court Administration." [Filing No. 62 at 9.]

- The Indiana Supreme Court and DSCA "at least to some degree, control the Marion County Court Modest Means Mediation Program." [Filing No. 62 at 10.]

- The Indiana Supreme Court and DSCA "at least to some degree, control the Marion County Court Modest Means Mediation Program funding." [Filing No. 62 at 11.]

As the assigned Magistrate Judge pointed out in granting Mr. King leave to file the operative complaint, the State Defendants do not dispute that the state court denied Mr. King's request for an ASL interpreter because of its belief that there was a lack of funds for such an interpreter. [Filing No. 61 at 6 (citing Filing No. 46 at 7).] Mr. King specifically alleges that the Indiana Supreme Court and DSCA have at least some control over that funding. [Filing No. 62 at 11.] He further alleges that he wanted to participate in the program despite the waiver of the requirement, that he "felt emotional distress for being treated differently, as a result of his disability," and that he had to incur the expense of seeking and obtaining his own interpreter to participate. [Filing No. 62 at 7-8; Filing No. 62 at 11.] The State Defendants do not contend that financial loss or emotional distress are insufficient injury for purposes of standing. *See In re Aqua Dots Products Liab. Litig*, 654 F.3d 748, 751 (7th Cir. 2011) ("A financial injury creates standing."); *see also Lujan*, 504 U.S. at 562-63 (noting that non-monetary effects can be "undeniably a cognizable interest for purposes of standing").

In light of Mr. King's allegations regarding the Indiana Supreme Court and DSCA's involvement in the initial approval of the administration and funding for the Modest Means Mediation Program at issue, the Court cannot conclude as a matter of law on a motion to dismiss that Mr. King does not have Article III standing to bring his claims against the Indiana Supreme Court or DSCA.[4]

### 2) Domestic Relations Exception to Federal Jurisdiction

The State Defendants argue that Mr. King's claims are barred by the domestic relations exception to federal jurisdiction. [Filing No. 76 at 15-17.] The State Defendants emphasize that "this case comes to federal court after [Mr. King] concluded his state court paternity proceeding" and that he "was unhappy with the state judge's adverse ruling on whether he was entitled to an ASL interpreter for the purposes of a mandatory mediation" in that proceeding. [Filing No. 76 at 15.] Thus, the State Defendants argue that Mr. King's case, which stems from events in his paternity proceeding, is barred by the domestic relations exception to federal jurisdiction. [Filing No. 76 at 17.]

---

[4] The Court recognizes that summary judgment was recently granted to the Indiana Supreme Court and DSCA after another District Judge concluded that a deaf plaintiff lacked Article III standing to pursue his ADA and Rehabilitation Act claims against those defendants. *See Prakel v. State of Indiana, et al.*, 2015 WL 1455988, at *7-*10 (S.D. Ind. 2015). But the applicable standards for evaluating a motion to dismiss and summary judgment are different, and *Prakel* expressly noted that "[w]e can certainly conceive of circumstances in which the actions of the State Defendants in administering this interpreter fund might be the cause of a plaintiff's injuries, such as if the decision to deny appointment of an ASL interpreter was specifically based on the lack of funds for such an interpreter. But that is not the situation presented here." *Id.* at *10. The Court has given Mr. King the benefit of the doubt at this procedural juncture, given his allegations regarding the involvement of the Indiana Supreme Court and DSCA in the initial approval of the administration and funding for the Modest Means Mediation Program and the applicable standard on a motion to dismiss. *See $196,969.00 U.S. Currency*, 719 F.3d at 646. That said, in addressing the parties' arguments regarding the merits of Mr. King's claims, the Court ultimately concludes that his allegations are insufficient to allege the necessary level of involvement with regard to certain Defendants, including the Indiana Supreme Court and DSCA. *See* Part III.B, *infra*.

In response, Mr. King emphasizes that his action is not seeking to collaterally attack the trial court determination involving an issue of divorce, custody, paternity, or any other domestic relation matter. [Filing No. 82 at 5.] Instead, Mr. King points out that he is only challenging the trial court's denial of an ASL interpreter for his mediation, "which is entirely unrelated to the merits or facts of the underlying domestic relations case." [Filing No. 82 at 5.]

In reply, the State Defendants assert that Mr. King's argument is "an attempt . . . to challenge the results of the domestic relations proceeding under the guise of a civil rights lawsuit." [Filing No. 85 at 6.] They contend that Mr. King was unhappy with the state court's denial of his interpreter request and now is attempting to collaterally attack that determination. [Filing No. 85 at 6.]

Subject matter jurisdiction cannot be waived and "always comes ahead of the merits." *See Leguizamo-Medina v. Gonzales*, 493 F.3d 772, 774 (7th Cir. 2007). A federal court "'will not take jurisdiction if it should not,'" but it "'must take jurisdiction if it should.'" *Marshall v. Marshall*, 547 U.S. 293, 307 (2006) (quoting *Cohens v. Virginia*, 6 Wheat. 264, 404 (1821)).

The domestic relations exception to federal jurisdiction covers only "a narrow range of domestic relations issues." *Marshall*, 547 U.S. at 307 (citation omitted). It recognizes the "special proficiency developed by state tribunals in handling issues that arise in the granting of divorce, alimony, and child custody decrees." *Id.* The Seventh Circuit Court of Appeals recently addressed the bounds of the exception, holding that it "applies when a litigant asks a federal court to provide one of the unique forms of relief associated with domestic relations (e.g., a decree regarding divorce, alimony, or child custody)." *Sheetz v. Norwood*, 2015 WL 1411936, at *2 (7th Cir. 2015) (citing *Ankenbrandt v. Richards*, 504 U.S. 689, 706-07 (1992); *Friedlander v. Friedlander*, 149 F.3d 739, 740 (7th Cir. 1998)). It also applies when the "issue raised by the litigant in federal

court is ancillary to the domestic-relations proceedings in state court." *Sheetz*, 2015 WL 1411936, at \*2 (citing *Jones v. Brennan,* 465 F.3d 304, 308 (7th Cir. 2006)). The domestic relations exception bars a litigant from seeking to "void" a state court's orders, such as custody orders. *Sheetz*, 2015 WL 1411936, at \*2.

Mr. King is pursuing claims for alleged violations of two federal statutes—the ADA, 42 U.S.C. § 12132, and the Rehabilitation Act, 29 U.S.C. § 794. [Filing No. 62 at 8-12.] While his claims stem from a decision that occurred while he was a litigant in a state court domestic relations proceeding, Mr. King does not argue that the state court's orders are void and he does not challenge the result of that proceeding. Instead, Mr. King is pursuing independent federal claims against entities that were not parties to his state court proceeding based on the denial of his request for an ASL interpreter for the Modest Means Mediation Program.[5] It is important to note that Mr. King's requested relief does not include a mediation "do over" and that he does not ask this Court to assess the ultimate outcome of the state court domestic relations proceeding. Instead, Mr. King is pursuing independent federal claims and seeks relief to which he would be entitled under those statutes if he prevails. For these reasons, the Court concludes that the domestic relations exception to federal jurisdiction does not apply.

> ### 3) Rooker-Feldman *Doctrine*

The State Defendants argue that Mr. King's claims are barred by the *Rooker-Feldman* doctrine, which prohibits federal courts from conducting direct review of the decisions of state

---

[5] The Court denies the State Defendants' mootness argument for this reason as well. [Filing No. 76 at 33-34 (arguing that Mr. King's federal action is moot because his "state court case is over and was disposed of when the parties reached a mediated settlement and entered an Agreed Entry on July 30, 2013").] Because Mr. King is pursuing independent federal claims against state entities that were not parties to his state court paternity proceeding, this action is not moot simply because final judgment has been entered in that action.

courts. [Filing No. 76 at 10-13.] The State Defendants contend that Mr. King is asking this Court to review the decision of the state court and that the "ruling being attacked is inextricably intertwined with the state court's decisions and judgment in this case." [Filing No. 76 at 11.]

In response, Mr. King contends that the *Rooker-Feldman* doctrine does not preclude this Court from resolving his claims because the state court's decision to deny him an ASL interpreter "was an administrative action" to which the doctrine does not apply. [Filing No. 82 at 3-4.] Thus, Mr. King argues that there was no "'ruling' for which the trial court's decision could even be considered a judgment and/or order." [Filing No. 82 at 4.]

The State Defendants reiterate their arguments in reply. [Filing No. 85 at 4-5.]

*Rooker-Feldman* "is a narrow doctrine." *Lance v. Dennis*, 546 U.S. 459, 464 (2006). It "applies when the state court's judgment is the source of the injury of which plaintiffs complain in federal court." *Richardson v. Koch Law Firm, P.C.*, 768 F.3d 732, 733 (7th Cir. 2014). The doctrine "asks what injury the plaintiff asks the federal court to redress, not whether the injury is 'intertwined' with something else." *Iqbal v. Patel*, 780 F.3d 728, 730 (7th Cir. 2015).

The Court rejects the State Defendants' arguments regarding whether the decision to deny Mr. King's request for an ASL interpreter is inextricably intertwined with the judgment to preclude this Court's review. Recent Seventh Circuit authority confirms that this is not the proper analysis. *Iqbal*, 780 F.3d at 730. Instead, what is key is that the state court's judgment in Mr. King's paternity case is not the source of the injury of which he complains. Mr. King does not ask this Court to order the state court to do anything and he does not ask this Court for relief from the state court's judgment. Mr. King claims that the state court's decision to deny him an ASL interpreter for mediation violated federal law, and he is pursuing independent federal claims in federal court

under those statutes.[6]   Accordingly, the Court rejects the State Defendants' *Rooker-Feldman* argument.

### 4) Collateral Estoppel

The State Defendants argue that Mr. King's claims are barred by collateral estopped, to the extent that doctrine precludes the relitigation of an issue already decided in a prior case.  [Filing No. 76 at 13-15.]  They contend that Mr. King "invites this Court to review and re-litigate" the state court's decision to deny his request to appoint an ASL interpreter for his mediation, which the State Defendants say this Court cannot do pursuant to collateral estoppel.  [Filing No. 76 at 13-14.]

In response, Mr. King points out that his ADA and Rehabilitation Act claims were not actually litigated before the state court.  [Filing No. 82 at 5.]  He emphasizes that the state court judge stated that he denied Mr. King's request because "there was no funding" and did not address the ADA or the Rehabilitation Act.  [Filing No. 82 at 5.]

In reply, the State Defendants emphasize that it is undisputed that Mr. King informed the state court that he believed its decision violated the ADA and the Rehabilitation Act.  [Filing No. 85 at 5.]  The State Defendants contend that the state court's "determination to deny [Mr. King's]

---

[6] The Court rejects Mr. King's argument that *Rooker-Feldman* does not apply because the state court was simply making an administrative decision.  [Filing No. 76 at 4.]  Although it is true that the doctrine "has no application to judicial review of executive action, including determinations made by a state administrative agency[,]" *Verizon Maryland, Inc. v. Pub. Serv. Comm'n of Maryland*, 535 U.S. 635, 644 (2002), the decision to deny his request for an ASL interpreter at mediation was an official order by the state court, [*see* Filing No. 47 ("Minutes of the Court" denying Mr. King's request); Filing No. 49 (state court's "Order" denying Mr. King's Motion to Grant Request for Interlocutory Appeal on issue).]  To the extent that the State Defendants argue that Mr. King's claims fail as a matter of law because they did not have any duty, authority, or responsibility for the decision to deny him an ASL interpreter, [Filing No. 76 at 11-13; Filing No. 76 at 24-25], those arguments go to the merits of Mr. King's allegations and the Court will address them in Part III.B of this decision.

motion for an appointment of an ASL interpreter was integral and essential to the final judgment in the case because that determination prompted the parties to later settle their dispute on their own through a voluntary mediation." [Filing No. 85 at 6.] Thus, the State Defendants argue that Mr. King's claims are precluded by collateral estoppel.

Collateral estoppel—also known as issue preclusion—"applies to prevent relitigation of issues resolved in an earlier suit." *Adams v. City of Indianapolis*, 742 F.3d 720, 736 (7th Cir. 2014). It has the following elements: "(1) the issue sought to be precluded is the same as an issue in the prior litigation; (2) the issue must have been actually litigated in the prior litigation; (3) the determination of the issue must have been essential to the final judgment; and (4) the party against whom estoppel is invoked must have been fully represented in the prior action." *Id.*

At the very least, the second and third elements of collateral estoppel are not present in this case. With regard to the second element, it is beyond dispute that Mr. King did not make ADA and Rehabilitation Act claims in his state court paternity suit. While Mr. King pointed out to the state court that he believed the decision to deny him an ASL interpreter violated those federal statutes, it is beyond dispute that ADA and Rehabilitation Act claims were not pending in the paternity action. The state court did not address Mr. King's arguments regarding those statutes, instead holding that "[t]he basis for the Court denial [of his request for an ASL interpreter for mediation] is that no funding has been budgeted for providing interpreters during mediation proceedings. The Court only has funding budgeted for interpreters during Court proceedings." [Filing No. 47 at 3.]

With regard to the third element of collateral estoppel, the Court disagrees with the State Defendants that the state court's decision to deny an ASL interpreter was "essential to the final judgment." [Filing No. 85 at 6.] The State Defendants cite nothing for their proposition that that

decision "was integral and essential to the final judgment in the case because that determination prompted the parties to later settle their dispute on their own through a voluntary mediation." [Filing No. 85 at 6.] The decision regarding whether to appoint an interpreter for mediation in a paternity action was not "essential" to the final judgment entered on the merits of that action. Accordingly, for the reasons stated herein, the Court concludes that collateral estoppel does not bar Mr. King's claims in this action.

### 5) *Sovereign Immunity*

The State Defendants argue that the ADA claim in Mr. King's Second Amended Complaint must be dismissed because it is barred by Eleventh Amendment sovereign immunity.[7] [Filing No. 76 at 17-20.] Although they concede that Title II is a valid abrogation of sovereign immunity in some circumstances regarding access to the courts, they contend that this is not such a case. [Filing No. 76 at 19-21.] Specifically, the State Defendants argue that it "is clear that mediation is not a court proceeding and as such, does not implicate the fundamental right of access to the courts." [Filing No. 76 at 21.]

In response, Mr. King argues that the use of mediation in this case is "so intertwined" with access to the courts that the mediation is part of the court process. [Filing No. 82 at 6.] Thus, he contends that the State Defendants are not entitled to sovereign immunity. [Filing No. 82 at 6.]

---

[7] The State Defendants do not make this argument with regard to Mr. King's Rehabilitation Act claim, [Filing No. 76 at 17-21], and Congress has expressly waived sovereign immunity for violations of section 504 of the Rehabilitation Act, *see Sossamon v. Texas*, 131 S. Ct. 1651, 1662 (2011) ("§ 1003 of the Rehabilitation Act Amendments of 1986 . . . expressly waives state sovereign immunity for violations of section 504 of the Rehabilitation Act"). Thus, the Court will only address Mr. King's ADA claim in this context.

In reply, the State Defendants emphasize that mediation is not a court service implicating fundamental access to the courts, and Mr. King cites no cases in support of his argument that it could be. [Filing No. 85 at 7-8.] They point out that mediation occurs between private parties, the public is not allowed to participate, and that in this case, the Modest Means Mediation Program is funded by the litigants, not the public. [Filing No. 85 at 7-8.] Thus, the State Defendants ask the Court to dismiss Mr. King's ADA claim. [Filing No. 85 at 8.]

"The Eleventh Amendment provides states with immunity from suits in federal courts unless the State consents to the suit or Congress has abrogated their immunity." *Tucker v. Williams*, 682 F.3d 654, 658 (7th Cir. 2012) (citation omitted). "State agencies are treated the same as states for purposes of the Eleventh Amendment." *Id.*

Title II of the ADA authorizes suits by private citizens against public entities for money damages. *United States v. Georgia*, 546 U.S. 151, 154 (2006) (citing 42 U.S.C. § 12133). Title II provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs or activities of a public entity, or be subjected to discrimination by any such entity." *Tennessee v. Lane*, 541 U.S. 509, 513 (2004). Specifically, it "prohibits any public entity from discriminating against 'qualified' persons with disabilities in the provision or operation of public services, programs, or activities. The Act defines the term 'public entity' to include state and local governments, as well as their agencies and instrumentalities." *Id.* at 517. The United States Supreme Court has "repeatedly affirmed that Congress may enact so-called prophylactic legislation that proscribes facially constitutional conduct, in order to prevent and deter unconstitutional conduct." *Id.* at 519. Congress' power, however, is not unlimited and Congress "may not work a substantive change in the governing law." *Id.*

In *Lane*, the Supreme Court analyzed whether Title II is a valid exercise of Congress' enforcement power. *Id.* at 522. In doing so, it noted that Title II seeks to enforce a prohibition on "irrational disability discrimination" and "a variety of other basic constitutional guarantees," such as the right of access to the courts protected by the Due Process Clause of the Fourteenth Amendment. *Id.* at 522-23. Title II also requires the States "to afford certain civil litigants a "meaningful opportunity to be heard by removing obstacles to their full participation in judicial proceedings." *Id.*

*Lane* detailed the serious history of disability discrimination that led Congress to enact the ADA. *Id.* at 524-27. It noted that before enacting the legislation, Congress heard "numerous examples of the exclusion of persons with disabilities from state judicial services and programs, including exclusion of persons with visual impairments and hearing impairments from jury service, failure of state and local governments to provide interpretive services for the hearing impaired, failure to permit the testimony of adults with developmental disabilities in abuse cases, and failure to make courtrooms accessible to witnesses with physical disabilities." *Id.* at 527. *Lane* concluded that "the sheer volume of evidence demonstrating the nature and extent of unconstitutional discrimination against persons with disabilities in the provision of public services . . . makes clear beyond peradventure that inadequate provision of public services and access to public facilities was an appropriate subject for prophylactic legislation." *Id.* at 529. Thus, despite the breadth of Title II's applications, the Supreme Court specifically held that its "requirement of program accessibility" in the context of the right of access to the courts "unquestionably is valid . . . as it applies to the class of cases implicating the accessibility of judicial services." *Id.* at 531. *Lane* cautioned, however, that Title II requires only "reasonable modifications that would not

fundamentally alter the nature of the service provided," not "to employ any and all means to make judicial services accessible to persons with disabilities." *Id.* at 531-32.

As was the case in *Lane*, the fundamental right of access to "judicial services" is at issue in Mr. King's case. *Lane* did not limit its holding to actual in-court proceedings, instead noting that the right of access to the courts implicates "the accessibility of *judicial services*" and specifically referencing the "failure of state and local governments to provide interpretive services for the hearing impaired." *See, e.g.*, *id.* at 527, 531 (emphasis added). The State Defendants make much of the private nature of the actual mediation,[8] but they ignore Mr. King's allegations about the public services surrounding access to and participation in the Modest Means Mediation Program—specifically, that it is a public program created by Indiana statute, approved of by the State Defendants, and maintained by the County Defendants. [Filing No. 62 at 3-6.] Mr. King alleges that he wanted to participate in the Modest Means Mediation Program, that his request for an ASL interpreter to do so was denied and he was released from his obligation to participate, and that doing so violated the ADA. [Filing No. 62 at 6-11.] Given that *Lane* held that Title II is a valid abrogation of sovereign immunity in the context of "the accessibility to judicial services,"

---

[8] The State Defendants cite various Indiana state court cases regarding private mediation, but those are inapplicable in this context. [Filing No. 76 at 19-20 (citing *Horner v. Carter*, 981 N.E.2d 1210, 1211 (Ind. 2013) (statements made during mediation inadmissible); *Fuchs v. Martin*, 845 N.E.2d 1038, 1041 (Ind. 2006) (requirement for mandatory mediation as a prerequisite to court hearings does not violate litigants' right of access to courts).] They also cite *Crenshaw v. Supreme Court of Indiana* as support for their sovereign immunity argument, but in that case the Seventh Circuit held that the defendants at issue were entitled to Eleventh Amendment immunity under the *Younger* abstention doctrine because the underlying attorney discipline proceedings were ongoing in nature, implicated important state interests, and allowed the plaintiff to raise her constitutional challenges therein. 170 F.3d 725, 727-28 (7th Cir. 1999) (applying *Younger v. Harris*, 401 U.S. 37 (1971)). The State Defendants make no such argument regarding *Younger* abstention in Mr. King's case.

the Court cannot conclude as a matter of law on the basis of the State Defendants' motion to dismiss that they are entitled to sovereign immunity.

### 6) *Judicial Immunity*

The State Defendants argue that they are entitled to immunity—either absolute judicial immunity or quasi-judicial immunity—from Mr. King's claims. [Filing No. 76 at 21-23.] They contend that they are entitled to absolute judicial immunity "[t]o the extent that the trial judge's rulings in the state court case are implicated in any individual capacity." [Filing No. 76 at 21.] Alternatively, they argue that DSCA is entitled to quasi-judicial immunity because it "operated under the umbrella and at the direction of the Indiana Supreme Court" and "to the extent it can be said to have taken any action with respect to the matters now in dispute, performed a quasi-judicial function." [Filing No. 76 at 25.]

In response, Mr. King contends that these immunities "only protect judges and not their employees" and points out that he has not sued any judges in their individual capacities. [Filing No. 82 at 6-7.] He also argues that the state court was acting in an administrative capacity, not a judicial capacity, when it denied Mr. King's request for an ASL interpreter. [Filing No. 82 at 7.]

In reply, the State Defendants acknowledge that Mr. King has not sued any judicial officers in their individual capacities but emphasizes that "it is indeed the individual judicial decisions of the Marion Circuit judge that are being collaterally attacked in this case." [Filing No. 85 at 8.] Thus, the State Defendants argue that they are immune from Mr. King's claims. [Filing No. 85 at 8-9.]

The Seventh Circuit has made it clear that "units of government are not entitled to immunity . . . . Official immunities (judicial, legislative, absolute, qualified, quasi, and so on) are personal defenses designed to protect the finances of public officials whose salaries do not

compensate them for the risks of liability under vague and hard-to-foresee constitutional doctrines. That justification does not apply to suits against units of state or local government, which can tap the public fisc." *Hernandez v. Sheahan*, 455 F.3d 772, 776 (7th Cir. 2006).[9]  The State Defendants ignore these principles, despite the fact that the assigned Magistrate Judge cited them in allowing Mr. King to amend his complaint over objections that any amendment would be futile.  [Filing No. 61 at 12.]  Thus, the State Defendants—all of which are entities, not individuals—are not entitled to absolute judicial immunity or quasi-judicial immunity.

### 7) Judicial Estoppel and Waiver

Mr. King's prayer for relief includes a request for "reasonable attorney's fees and any and all litigations costs incurred in this matter under 42 U.S.C. § 3613, 29 U.S.C. § 794a, and/or to the fullest extent of these laws."  [Filing No. 62 at 12.]  The State Defendants argue that to the extent Mr. King "seeks actual and compensatory damages and attorney's fees for the costs he allegedly incurred for participating in a voluntary mediation after he was relieved of the obligation to participate in a mandatory mediation by the trial court[,] Mr. King's claims are barred by the doctrines of judicial estoppel and waiver."  [Filing No. 76 at 31.]  The State Defendants emphasize that Mr. King entered into an agreed judgment in the state court paternity case, in which he agreed to pay his own attorney fees and litigation expenses incurred therein.  [Filing No. 76 at 31.]  The State Defendants contend that Mr. King's attempt in this case to "essentially have State Defendants reimburse him for the costs associated with his private mediation should be barred by the doctrine of judicial estoppel."  [Filing No. 76 at 32.]  Alternatively, the State Defendants argue that Mr.

---

[9] *Hernandez* addressed a claim brought pursuant to 42 U.S.C. § 1983.  The State Defendants have not argued that the principles set forth therein regarding the individual nature of absolute judicial or quasi-judicial immunity do not apply simply because Mr. King pursues ADA and Rehabilitation Act claims.

King waived his right to seek litigation costs and attorneys' fees stemming from his paternity case because he entered into an agreement to dispose of all of the issues in his state court case. [Filing No. 76 at 33.]

In response, Mr. King argues that "it is not inconsistent under the circumstances to request litigation expenses and attorney's fees." [Filing No. 82 at 10.] He points out that in granting his request to amend his complaint, the assigned Magistrate Judge noted that parties routinely acquiesce to the payment of their own fees and costs as part of a settlement. [Filing No. 82 at 10 (citing Filing No. 61 at 15).] He emphasizes that he was not ordered to do this by the state court and did not convince that court to do anything. [Filing No. 61 at 15.] Alternatively, Mr. King argues that even if he is estopped or has waived his right to collect attorneys' fees or litigation expenses from the state court action, he has not waived anything with respect to this separate lawsuit. [Filing No. 82 at 11.]

In reply, the State Defendants point out that absent fraud or lack of consent—which are not present here—a trial judge must approve an agreed judgment and enter it in the record. [Filing No. 85 at 10-11.] Thus, the State Defendants contend that the state court did approve the parties' agreement and Mr. King is now estopped from receiving any attorneys' fees or costs incurred in that litigation. [Filing No. 85 at 11.]

"It is well established that the doctrine of judicial estoppel acts 'to protect the integrity of the judicial process . . . by prohibiting parties from deliberately changing positions according to the exigencies of the moment.'" *Jarrard v. CDI Telecommunications, Inc.*, 408 F.3d 905, 914 (7th Cir. 2005) (quoting *New Hampshire v. Maine*, 532 U.S. 742, 749 (2001)). Judicial estoppel is designed to "prevent the perversion of the judicial process." *Cannon-Stokes v. Potter*, 453 F.3d 446, 448 (7th Cir. 2006) (citation omitted). While no precise or rigid formula guides its

application, there are three main factors in deciding whether invocation of the doctrine may be appropriate: 1) a party's position must be clearly inconsistent with an earlier taken position; 2) the party must have prevailed on the basis of the earlier position, such that judicial acceptance of the inconsistent position would create the perception that one of the tribunals was misled, and 3) the party asserting the inconsistent position would derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped. *Jarrard*, 408 F.3d at 914 (citing *New Hampshire*, 532 U.S. at 750).

The Court cannot apply judicial estoppel to dismiss Mr. King's claims as a matter of law. Although the State Defendants cite the three main factors that determine when judicial estoppel applies, they do not specifically apply them to Mr. King's case. [Filing No. 76 at 32.] Instead, the State Defendants simply conclude that Mr. King "should not be able to agree to pay for all of his litigation expenses incurred and attorney fees in state court and then march into federal court and essentially ask this Court to order State Defendants to reimburse him for those same litigation expenses." [Filing No. 76 at 32.] The State Defendants do not convincingly explain how Mr. King's agreement to pay his own costs and fees in state court was the result of persuading that court to adopt his position. As the assigned Magistrate Judge pointed out in overruling the State Defendants' objection to allowing Mr. King to amend his complaint, "rare is the litigant who affirmatively asks the court to order him to pay his own fees and costs." [Filing No. 61 at 15.] Instead, the Court finds it significant that Mr. King's agreement to pay his own costs and fees in the paternity suit was an agreement with the other party in that action, not the State Defendants. It is unclear to the Court how, at this stage in the litigation as a matter of law, Mr. King's agreement not to seek fees or costs from that private party bars him from seeking damages from the State Defendants in this separate federal action stemming from independent federal claims that were not

pled in the state court paternity action. For these reasons, the Court denies the State Defendants' request to apply judicial estoppel to Mr. King's claims as a matter of law on a motion to dismiss.

The Court also rejects the State Defendants' waiver argument. Their only cited legal support is to a criminal decision regarding a restitution order, which they cite for the proposition that "waiver occurs when a defendant intentionally relinquishes or abandons a known right." [Filing No. 76 at 33 (citing *United States v. Pappas*, 409 F.3d 828 (7th Cir. 2005).] Even if this principle applied to the civil case at hand, the State Defendants do not explain how Mr. King's payment of fees and costs in the state court action knowingly relinquished his claim for damages for the independent federal claims he is pursuing in this Court. Thus, the Court cannot conclude as a matter of law on a motion to dismiss that Mr. King has waived his right at this point.

### B. Mr. King's ADA Claim

Both the County Defendants and the State Defendants challenge the merits of Mr. King's Title II ADA claim as a matter of law. [Filing No. 71 at 4-5; Filing No. 76 at 25-27.] Although they set forth various arguments, each Defendant except for the Marion Circuit Court argues that Mr. King's ADA claim fails as a matter of law because it was not responsible for the state court's decision to deny his request for an ASL interpreter for the Modest Means Mediation Program. The Court will set forth these arguments, and Mr. King's responses, below.

The State Defendants argue that Mr. King's claims against the Indiana Supreme Court and DSCA must be dismissed because those entities "owed no duty" to him.[10] [Filing No. 76 at 24-25.] They point out that Indiana does not have a unified trial court system and that Mr. King "has

---

[10] The State Defendants do not make this argument with regard to the Marion Circuit Court, instead limiting their argument to the Indiana Supreme Court and DSCA. [Filing No. 76 at 24-25.] Thus, any challenge to the Marion Circuit Court's duty to Mr. King is waived for purposes of the pending motion.

made no specific allegation that any particular conduct by [those defendants] caused his alleged injuries because [they] do not have a duty to get involved in the daily activities of the numerous trial courts in Indiana." [Filing No. 76 at 24.] The State Defendants also contend that Mr. King's claims are precluded because the Indiana Supreme Court and DSCA did not have any authority or responsibility over the actual decision to deny his interpreter request.[11] [Filing No. 76 at 11-13.]

The County Defendants make a similar argument in their reply brief,[12] contending that Mr. King specifically alleges that they are "'only responsible for non-judicial administrative matters.'" [Filing No. 78 at 4 (citing Filing No. 62 at 2).] Thus, they believe that Mr. King's ADA claim fails as a matter of law because he has not alleged that they "participated in any affirmative act to deny Plaintiff modest means mediation on the basis of his disability." [Filing No. 78 at 4.]

In response to the State Defendants' argument, Mr. King contends that they owed him a duty because "Title II imposes an affirmative obligation on public entities to make their programs accessible to qualified individuals with disabilities, except where compliance would result in a fundamental alteration of services or impose an undue burden." [Filing No. 82 at 8 (citing *Culvahouse v. City of LaPorte*, 679 F. Supp. 2d 931, 937 (N.D. Ind. 2009)).] He emphasizes his belief that "[t]his obligation includes, among other accommodations, the provision [of] ASL

---

[11] To the extent that the State Defendants—including the Marion Circuit Court—argue that Mr. King's ADA claim fails as a matter of law because mediation is not a court proceeding, [Filing No. 76 at 26-27 ("judicial services are not at issue in this case because mediation is not a court proceeding"], the Court has already rejected that argument in addressing the State Defendants' sovereign immunity argument. *See* Part III.A.5, *supra*.

[12] Arguments raised for the first time in a reply brief are typically considered to be waived. *Mendez v. Perla Dental*, 646 F.3d 420, 423-24 (7th Cir. 2011). Under these circumstances, however, the Court will consider the County Defendants' argument because it is similar to the State Defendants' argument, and Mr. King had an opportunity to respond to that argument. *See Malak v. Associated Physicians, Inc.*, 784 F.2d 277, 280 (7th Cir. 1986) (holding that where one defendant files a motion that is equally effective in barring the claim against the other defendants, the Court may enter judgment in favor of the additional non-moving defendant if the plaintiff had an adequate opportunity to argue in opposition to the motion).

interpreters." [Filing No. 82 at 8.] Mr. King further contends that the basis of his loss was "at least in part the result of State Defendants' actions with respect to the funding and/or control of the modest means mediation program . . . [because] the basis of the trial court's decision not to provide an ASL interpreter to King was that there was no funding." [Filing No. 82 at 4.]

In their reply brief, the State Defendants reject Mr. King's position that they had an obligation to provide him an ASL interpreter. [Filing No. 85 at 9.] They contend that there is no case law supporting the proposition that Mr. King was entitled to an interpreter as a matter of law in a non-court voluntary proceeding such as modest means mediation and that "this Court should not provide [him] with the precedent [he] desire[s]." [Filing No. 85 at 9.] They further contend that "the decision to fund or not to fund the county's provision of interpreter services for modest means mediation is a *county* decision, not a decision or determination by State Defendants." [Filing No. 85 at 5 (original emphasis).]

Title II of the ADA is "commonly referred to as the public services portion of the ADA." *Wisconsin Cmty. Servs., Inc. v. City of Milwaukee*, 465 F.3d 737, 750 (7th Cir. 2006). It "prohibits a public entity from denying equal services to individuals because of their disabilities." *Discovery House, Inc. v. Consol. City of Indianapolis*, 319 F.3d 277, 279 (7th Cir. 2003). To receive protection under Title II of the ADA, one must be a "qualified individual" with a disability. *See* 42 U.S.C. § 12132. The parties do not dispute that Mr. King is a qualified individual with a disability or that any of the Defendants are public entities within the meaning of the ADA.

Title II provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity." 42 U.S.C. § 12132. Although the ADA does not define "services, programs, or activities," the Rehabilitation Act defines that phrase as "all of the operations of . . .

a local government," and courts have adopted that definition for the ADA. *See Frame v. City of Arlington*, 657 F.3d 215, 225 (5th Cir. 2011) ("The ADA does not define the 'services, programs, or activities of a public entity.' The Rehabilitation Act, however, defines a 'program or activity' as 'all of the operations of ... a local government.' As already stated, we interpret Title II and the Rehabilitation Act *in pari materia*."); *Prakel v. Indiana*, 2015 WL 1455988, at *16 (S.D. Ind. 2015) (citing *Frame* for the "broad definition" of the phrase "services, programs, or activities"); *see also* [Filing No. 76 at 26 (State Defendants' brief citing that portion of *Frame*)].

A Title II claim "may be established by evidence that (1) the defendant intentionally acted on the basis of the disability, (2) the defendant refused to provide a reasonable modification, or (3) the defendant's rule disproportionally impacts disabled people." *Wisconsin Cmty. Servs.*, 465 F.3d at 753. Thus, to succeed on an ADA claim against any of the Defendants in this case, Mr. King must connect that Defendant's intentional actions to the denial of his request to be provided an ASL interpreter.

Mr. King's operative complaint contains no allegations that anyone other than the judge of the Marion Circuit Court took any action or made any decision with regard to Mr. King's specific request for an ASL interpreter for the modest means mediation in his paternity case. In response to that point, Mr. King only cites the Indiana Supreme Court and DSCA's general supervisory authority over Indiana's trial court system and their role in initially approving a county's ADR program. [Filing No. 82 at 4.] Mr. King cites no legal authority supporting his belief that public entities not alleged to have been involved in or even aware of the decision forming the basis for the ADA claim can be liable for that decision.

For this reason, the Court concludes that Mr. King's ADA claim fail as a matter of law with regard to all Defendants, except for the Marion Circuit Court, because Mr. King has not

alleged that any of the other public entities took part in the actual decision to deny his request for an ASL interpreter.[13]  Thus, the Court dismisses Mr. King's ADA claim with prejudice against Defendants Marion County Office of the Court Administrator, Marion County Council, Indiana Supreme Court, and DSCA.[14]  Mr. King's ADA claim against Defendant Marion Circuit Court will proceed.

### C.  Mr. King's Rehabilitation Act Claim

Both the State Defendants and the County Defendants challenge Mr. King's Rehabilitation Act claim as a matter of law because they contend that Mr. King does not plausibly allege that the

---

[13] This conclusion also undermines Mr. King's Rehabilitation Act claim against all defendants except for the Marion Circuit Court.  Relief under the Rehabilitation Act and the ADA is "coextensive," and the "analysis governing each statute is the same except that the Rehabilitation Act includes as an additional element the receipt of federal funds."  *Jaros v. Ill. Dep't of Corrections*, 684 F.3d 667, 671 (7th Cir. 2012).  Thus, Mr. King's Rehabilitation Act claims against those Defendants also fail as a matter of law on the basis set forth in this section.  As detailed in the next section, however, the Court also concludes that Mr. King's Rehabilitation Act claim fails as a matter of law with regard to all Defendants because he does not plausibly allege that the Modest Means Mediation Program receives federal funds.

[14] Given this conclusion, the Court need not address the County Defendants' argument that Mr. King was not treated differently than non-disabled individuals because the "policy applies to all persons in the court system, regardless of whether they are disabled or not[,]" [Filing No. 71 at 5], or its reply argument that Mr. King was not denied access to the Modest Means Mediation Program because he "successfully participated in modest means mediation after making a reasonable accommodation (i.e. providing his own ASL translator) which was not prevented by the County Defendants." [Filing No. 78 at 4.]  The Court notes, however, that none of the Defendants address an applicable portion of the "Communications" subpart of the Title II regulations, providing that "[a] public entity shall not require an individual with a disability to bring another individual to interpret for him or her" or "rely on an adult accompanying an individual with a disability to interpret or facilitate communication."  28 C.F.R. § 35.160(c)(1)-(2).  That regulation also may distinguish a recent Seventh Circuit decision holding that a prisoner plaintiff who alleged that he was denied an adequate wheelchair backrest or wheelchair-ready van was not denied services within the meaning of the ADA or Rehabilitation Act because although he allegedly experienced "longer waits and humiliation," he was able to "crawl off the regular van."  *Wagoner v. Lemmon*, 778 F.3d 586, 593 (7th Cir. 2015) (no reference to applicable regulation); *but see Flynn v. Doyle*, 672 F. Supp. 2d 858, 879 (E.D. Wis. 2009) ("Going one step further, if the plaintiff actually accepts the risky accommodation so she can go to church, she *still* could state an ADA claim.  Title II 'proscribes *discrimination* on the basis of disability without requiring exclusion *per se.*'") (quoting *Chisolm v. McManimon*, 275 F.3d 315, 330 (3d Cir. 2001)).

Modest Means Mediation Program receives federal financial assistance. [Filing No. 71 at 6-7; Filing No. 76 at 27-28.] They emphasize that Mr. King specifically alleges that the Modest Means Mediation Program is privately funded by the participants. [Filing No. 71 at 6-7; Filing No. 76 at 27-28.] Thus, all defendants argue that Mr. King's Rehabilitation Act claim must be dismissed as a matter of law.

In response, Mr. King concedes that the Modest Means Mediation Program is "largely funded by the collection of $20.00 from each domestic relations filing fee." [Filing No. 82 at 9.] He contends, however, that his Rehabilitation Act claim can proceed because he alleges that the Defendants themselves receive federal assistance. [Filing No. 74 at 4 (contending that the County Defendants "receive either directly and/or indirectly federal financial assistance for [their] operations"); Filing No. 82 at 9 ("all Defendants, including the State Defendants, receive federal monies").] Mr. King also alleges that the County Defendants accept federal funds and that they provide office space and regulate mediators for Marion County's Modest Means Mediation Program. [Filing No. 74 at 4-5.]

In reply, the State Defendants contend that Mr. King "attempts to escape from the reality" of his allegations, which are that the Modest Means Mediation Program is completely funded by the collection of $20.00 from each domestic relations filing. [Filing No. 85 at 10.] They emphasize that any contention that they receive federal funds is speculative and not enough to survive a motion to dismiss. [Filing No. 85 at 10.] The County Defendants point out that the Rehabilitation Act specifically states that it proscribes discrimination with respect to a "program" that receives federal funds, but Mr. King's own allegations are that the Modest Means Mediation Program is privately funding. [Filing No. 78 at 6.]

Section 504 of the Rehabilitation Act provides that "[n]o otherwise qualified individual with a disability . . . shall, solely by reason of his or her disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." 29 U.S.C § 794(a). The Seventh Circuit generally construes Title II of the ADA and Section 504 consistently in most respects because of "the similarities between the relevant provisions . . . ." *Radaszewski ex rel. Radaszewski v. Maram*, 383 F.3d 599, 607 (7th Cir. 2004). To prove a Rehabilitation Act claim, a plaintiff must show that: "'(1) he is a qualified person; (2) with a disability; and (3) the [state agency] denied him access to a program or activity because of his disability.'" *Wagoner v. Lemmon*, 778 F.3d 586, 592 (7th Cir. 2015) (quoting *Jaros v. Ill. Dep't of Corr.*, 684 F.3d 667, 672 (7th Cir. 2012)).

The Rehabilitation Act "is by its terms program-specific" in that "[i]t proscribes discrimination only with respect to 'programs' or 'activities' receiving federal financial assistance." *Foss v. City of Chicago*, 817 F.2d 34, 34-35 (7th Cir. 1987). "Congress limited the scope of § 504 to those who actually 'receive' federal financial assistance because it sought to impose § 504 coverage as a form of contractual cost of the recipient's agreement to accept the federal funds." *U.S. Dep't of Transp. v. Paralyzed Veterans of Am.*, 477 U.S. 597, 605 (1986). Thus, "the statute covers those who receive the aid, but does not extend as far as those who benefit from it." *Id.* at 607. The United States Supreme Court has recognized "that most federal assistance has 'economic ripple effects'" but has specifically "rejected the argument that those indirect economic benefits can trigger statutory coverage." *Id.* (citing *Grove City Coll. v. Bell*, 465 U.S. 555, 564 (1984)).

The Court agrees with the Defendants that Mr. King alleges throughout the operative pleading that the Modest Means Mediation Program is privately funded by the litigants.

Specifically, Mr. King alleges that the Modest Means Mediation Program is "funded by the collection of a $20.00 fee from every party filing for legal separation, paternity, or a dissolution case in each respective county and a co-payment by participants in the program based on ability to pay." [Filing No. 62 at 5; *see also* Filing No. 62 at 4 (quoting DSCA website conveying the same information).] This is confirmed by applicable Indiana statutes. *See* Ind. Code § 33-23-6-1 (setting forth the $20.00 ADR fee requirement for participating counties); Ind. Code § 33-23-6-2(c) (noting that the "sources of money" for the ADR fund are the $20.00 fee and litigant co-payments based on ability to pay). Thus, based on Mr. King's own allegations, the Modest Means Mediation Program is privately funded, such that it is not subject to the Rehabilitation Act.

Mr. King tries to impute any federal assistance that he alleges the Defendants may "directly or indirectly receive" to the Modest Means Mediation Program, [*see* Filing No. 62 at 3 ("At all relevant times, Defendants were each recipients either directly and/or indirectly of federal financial assistance.")], but the Rehabilitation Act is "program specific," *Foss,* 817 F.2d at 34-35. Any "economic ripple effects" that the Modest Means Mediation Program may benefit from, such as use of the County Defendants' office space, are insufficient to bind the Modest Means Mediation Program to the Rehabilitation Act. *Paralyzed Veterans,* 477 U.S. at 605. Accordingly, the Court agrees with the Defendants that Mr. King's Rehabilitation Act claim fails with respect to all Defendants as a matter of law because, by his own allegations, the Modest Means Mediation Program is privately funded.[15]

---

[15] In light of this conclusion, the Court need not address the State Defendants' argument that Mr. King's Rehabilitation Act claim fails as a matter of law because he does not sufficiently allege the requisite intentionality of their conduct. [Filing No. 76 at 28-31.]

## IV.
### CONCLUSION

For the reasons stated herein, the Court **GRANTS** the County Defendants' Motion to Dismiss, [Filing No. 70], such that Mr. King's ADA and Rehabilitation Act claims against the Marion County Office of the Court Administrator and Marion County Council are **DISMISSED WITH PREJUDICE**. The Court **GRANTS IN PART** the State Defendants' Motion to Dismiss, [Filing No. 75], such that Mr. King's ADA and Rehabilitation Act claims against the Indiana Supreme Court and Division of State Court Administration are **DISMISSED WITH PREJUDICE**, as is Mr. King's Rehabilitation Act claim against the Marion Circuit Court. The Court **DENIES IN PART** the State Defendants' Motion to Dismiss, [Filing No. 75], such that Mr. King's ADA claim against the Marion Circuit Court may proceed. The Court directs the Clerk to **TERMINATE** Defendants Marion County Office of the Court Administrator, Marion County Council, Indiana Supreme Court, and Division of State Court Administration from this action. The Court will not issue a partial final judgment at this time.

In sum, the only remaining claim in this litigation is Mr. King's ADA claim against Defendant Marion Circuit Court. The Court requests that the assigned Magistrate Judge schedule a conference with those parties to address lifting the discovery stay and amending the Case Management Plan, consistent with his prior order. [Filing No. 101.]

Date: May 5, 2015

Hon. Jane Magnus-Stinson, Judge
United States District Court
Southern District of Indiana

**Electronic Distribution via CM/ECF**:

Alex Maurice Beeman
CIOBANU LAW PC
abeeman@ciobanulaw.com

Andrea Lynn Ciobanu
CIOBANU LAW, PC
aciobanu@ciobanulaw.com

Adriana Katzen
OFFICE OF CORPORATION COUNSEL
adriana.katzen@indy.gov

Amanda J. Dinges
OFFICE OF CORPORATION COUNSEL
amanda.dinges@indy.gov

Betsy M. Isenberg
OFFICE OF THE ATTORNEY GENERAL
Betsy.Isenberg@atg.in.gov

Patricia Orloff Erdmann
OFFICE OF THE ATTORNEY GENERAL
Patricia.Erdmann@atg.in.gov