**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION**

| | | |
|---|---|---|
| **DUSTIN A. KING**, | ) | |
| | ) | **Case No.: 1:14-cv-01092-JMS-MJD** |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| **MARION CIRCUIT COURT**, | ) | |
| | ) | |
| Defendant. | ) | |

**BRIEF IN SUPPORT OF MOTION FOR PARTIAL SUMMARY JUDGMENT**

Andrea L. Ciobanu, #28942-49
Alex Beeman, #31222-49
CIOBANU LAW, P.C.
8910 Purdue Road, Suite 240
Indianapolis, IN 46268
Phone: (317) 495-1090
Fax: (866) 841-2071
Email: aciobanu@ciobanulaw.com
Email: abeeman@ciobanulaw.com

*Counsel for Plaintiff Dustin A. King*

# TABLE OF CONTENTS

TABLE OF CONTENTS ......................................................................................... 2

TABLE OF AUTHORITIES ................................................................................... 3

I.      INTRODUCTION ........................................................................................ 6

II.     STATEMENT OF MATERIAL FACTS NOT IN DISPUTE ..................... 6

        A.      Modest Means Mediation in Marion County ........................................... 6

        B.      King, His Modest Means Mediation, and His Requests for an Interpreter ............ 8

III.    STANDARD ............................................................................................... 14

IV.     ARGUMENT .............................................................................................. 14

        A.      Background .......................................................................................... 15

        B.      King is a "qualified individual" within the meaning of Title II. ........................... 15

        C.      Marion Circuit Court is a "public entity" within the meaning of Title II. ............ 16

        D.      The modest means mediation is as a service, program, or activity within the meaning of Title II. ............................................................................................ 17

        E.      Marion Circuit Court failed to provide King the necessary auxiliary aids and services to ensure effective communication. ................................................. 18

        F.      Marion Circuit Court refused to provide King a reasonable accommodation. ...... 20

        G.      Marion Circuit Court intentionally discriminated against King. ......................... 22

V.      CONCLUSION .......................................................................................... 27

# TABLE OF AUTHORITIES

## Cases

*Bartlett v. New York State Bd. of Law Exam'rs*, 156 F.3d 321 (2d Cir. 1998) ............................. 23

*Brettler v. Purdue Univ.*, 408 F. Supp. 2d 640 (N.D. Ind. 2006)................................................... 20

*Bronk v. Ineichen*, 54 F.3d 425 (7th Cir. 1995) ............................................................................ 22

*Chisolm v. McManimon*, 275 F.3d 315 (3rd Cir. 2001)................................................................. 19

*CTL v. Ashland Sch. Dist.*, 743 F.3d 524 (7th Cir. 2014) ............................................................. 23

*Culvahouse v. City of LaPorte*, 679 F. Supp. 2d 931 (N.D. Ind. 2009)........................................ 17

*Dadian v. Vill. of Wilmette*, 269 F.3d 831 (7th Cir. 2001)............................................................ 21

*Daveri Dev. Grp., LLC v. Vill. of Wheeling*, 934 F. Supp. 2d 987 (N.D. Ill. 2013) .................... 21

*Duvall v. Cnty. of Kitsap*, 260 F.3d 1124 (9th Cir. 2001)................................................. 23, 24, 26

*Flynn v. Doyle*, 672 F. Supp. 2d 858 (E.D. Wis. 2009) ................................................................ 15

*Hemsworth v. Quotesmith.com, Inc.*, 476 F.3d 487 (7th Cir. 2007) ............................................. 14

*Kennington v. Marion County Sheriff*, 2004 U.S. Dist. LEXIS 19572 (S.D. Ind. 2004)........ 23, 24

*Kiman v. New Hampshire Dep't of Corrs.*, 451 F.3d 274 (1st Cir. 2006) .................................... 15

*Liese v. Indian River Cnty. Hosp. Dist.*, 701 F.3d 334 (11th Cir.2012) ................................. 23, 26

*Loeffler v. Staten Island Univ. Hosp.*, 582 F.3d 268 (2d Cir.2009).............................................. 23

*Lovell v. Chandler*, 303 F.3d 1039 (9th Cir. 2002), *cert. denie*d, 537 U.S. 1105 (2003)............. 24

*Oconomowoc Residential Programs, Inc. v. City of Milwaukee*, 300 F.3d 775 (7th Cir. 2002) .. 17

*Phipps v. Sheriff of Cook Cty.*, 681 F. Supp. 2d 899 (N.D. Ill. 2009) .................................... 22, 23

*Powers v. MJB Acquisition Corp.*, 184 F.3d 1147 (10th Cir. 1999)............................................. 23

*S.H. ex rel. Durrell v. Lower Merion Sch. Dist.*, 729 F.3d 248 (3d Cir. 2013) ........................... 23

*Tennessee v. Lane*, 541 US 509 (2004)................................................................................... 17, 26

*United States v. Village of Palatine, Illinois*, 37 F.3d 1230 (7th Cir. 1994)................................ 22

*Wagoner v. Lemmon*, 778 F.3d 586 (7th Cir. 2015) ..................................................................... 15

*Washington v. Ind. High Sch. Ath. Ass'n*, 181 F.3d 840 (7th Cir. 1999) ...................................... 20

*Wis. Cmty. Servs. v. City of Milwaukee*, 465 F.3d 737 (7th Cir. 2006) .................................. 20, 21

*Wong v. Regents of the University of California*, 192 F.3d 807 (9th Cir. 1999) ......................... 24

**Statutes**

42 U.S. Code § 12102 ................................................................................................. 16

42 U.S. Code § 12102(1) ............................................................................................ 16

42 U.S. Code § 12131(1) ................................................................................... 15, 16, 17

42 U.S.C. § 12132 ...................................................................................................... 6

42 U.S.C. § 12206 .................................................................................................... 25

Ind. Code § 33-23-6 ................................................................................................. 18

Ind. Code § 33-28-1 *et seq.* ...................................................................................... 17

Ind. Code § 36-2-5 *et seq.* ......................................................................................... 17

**Other Authorities**

*2013 Indiana Judicial Service Report*, Vol. III, p. 1, available at
    http://www.in.gov/judiciary/admin/files/rpts-ijs-2013-judicial-v3-financial.pdf (last accessed
    on August 21, 2015).................................................................................................. 17

Article 7 of the Indiana Constitution ........................................................................ 17

John Baker, *The History of the Indiana Trial Court System and Attempts at Renovation*, 30
    Indiana Law Review 233 (1997), available at http://www.in.gov/judiciary/citc/files/baker.pdf
    (last accessed on October 18, 2015) ......................................................................... 17

*Title II Technical Assistance Manual*, available at http://www.ada.gov/taman2.html (last
    accessed on August 31, 2015)................................................................................... 25

**Rules**

*Marion County Local Rules*, available at http://www.in.gov/judiciary/files/marion-local-rules.pdf
    (last accessed October 16, 2015) .............................................................................. 11

**Regulations**

28 C.F.R. § 35.130(b)(7).............................................................................................. 21

28 C.F.R. § 35.160(a)(1).............................................................................................. 18

28 C.F.R. § 35.160(b)(1) ........................................................................................................... 18

28 C.F.R. § 35.160(b)(2) ........................................................................................................... 19

28 C.F.R. § 35.160(c)(1) ...................................................................................................... 19, 20

28 C.F.R. § 35.160(c)(2) ........................................................................................................... 20

28 C.F.R. § 35.164 .................................................................................................................... 19

28 C.F.R. pt. 35, app. A ............................................................................................................ 17

## I.   INTRODUCTION

Plaintiff Dustin A. King ("King"), a deaf individual, filed a lawsuit against Defendant Marion Circuit Court ("Marion Circuit Court") for its failure to provide a reasonable modification or accommodation and that it intentionally discriminated against King when it denied King a sign language interpreter for use in the modest means mediation program. [Filing No. 62 (Second Amended Complaint for Damages and Demand for Jury Trial)].

King asserts that Marion Circuit Court is in violation of Title II of the Americans with Disabilities Act, 42 U.S.C. § 12132 ("Title II"). [Filing No. 62 at ECF pp. 8-11].  King has been treated unequally because of his disability in violation of Title II.  King, therefore, seeks declaratory relief, actual and compensatory damages, attorney's fees and any other litigation costs, and any other just and proper relief as this Court deems just and proper. [Filing No. 62 at ECF p. 12 (Second Amended Complaint for Damages and Demand for Jury Trial at ¶90)].[1]

## II.   STATEMENT OF MATERIAL FACTS NOT IN DISPUTE

### A.  Modest Means Mediation in Marion County

In 2004, Marion County developed an alternative dispute resolution ("ADR") plan pursuant to Ind. Code § 33-23-6. [Filing No. 128-2 at ECF p. 1 (Exhibit 2 – Beeman Aff. at ¶¶3-4); Filing No. 128-3 at ECF pp. 1-2 (Exhibit 2-A – First APRA Letter); Filing No. 128-4 at ECF p. 3 (Exhibit 2-B – First APRA Letter Response at p. 3); Filing No. 128-13 at ECF pp. 1-2 (Exhibit 2-E – Second APRA Letter); Filing No. 128-14 at ECF p. 15 (Exhibit 2-F – Second

---

[1] King originally filed this lawsuit against Indiana Supreme Court, Marion Circuit Court, Marion County Office of the Court Administrator, Marion County Council, and Indiana Supreme Court Division of State Court Administration for violations of both Title II and Section 504 of the Rehabilitation Act. [Filing No. 62].  All of these parties have been dismissed by this Court except Marion Circuit Court. [Filing No. 102 (Order on Defendants' Motion to Dismiss)].  Further, the only claim remaining is for Marion Circuit Court's violation of Title II. [Filing No. 102].

APRA Letter Response Email)].[2]  Marion County's ADR plan "seeks to minimize adversarial processes promote agreed resolutions, avoid post-dissolution processes, maximize timely case management, and conserve family relations and resources" through mediation and "other related programs." [Filing No. 128-4 at ECF p. 5 (Exhibit 2-F at p. 5)].

In 2013, Marion County's ADR plan required individuals to meet certain financial criteria in order to participate. [Filing No. 128-4 at ECF pp. 7, 9 (Exhibit 2-F, p. 7, 9)].  The criterion consisted of a sliding scale co-payment be paid by each party per hour based on the combined income of the parties. [Filing No. 128-15 at ECF p. 3 (Exhibit 2-G – Email Correspondence re: Appendix to Marion County's ADR Plan at p. 3)] (Marion County's ADR plan sliding fee schedule).[3]

Per Marion County's ADR plan, the trial court or judicial officer is to review "the verified financial information and any other reliable evidence indicate a need for financial assistance from the mediation funds" and, if appropriate, "make an order for payment from the fund, including assessment of a co-payment for each party." [Filing No. 128-14 at ECF p. 7

---

[2] King was provided an *unsigned* version of Marion County's ADR plan provided by the Office of the Court Administrator and the Family Resource Center through a public records request. [Filing No. 128-2 at ECF pp. 1-2 (Exhibit 2 at ¶¶3-7); Filing No. 128-4 at ECF p. 3 (Exhibit 2-B at p. 3)].  Undersigned counsel Alex Beeman corresponded with Court Administrator Emily A. VanOsdol and confirmed that the *unsigned* version of Marion County's ADR plan was all that was in the Office of the Court Administrator and the Family Resource Center's possession. [Filing No. 128-2 at ECF pp. 1-2 (Exhibit 2 at ¶¶6-7); Filing No. 128-4 at ECF p. 3 (Exhibit 2-B at p. 3; Filing No. 128-11 (Exhibit 2-C – Email Correspondence re: Marion County's ADR Plan)].  Through a later public records request, undersigned counsel Alex Beeman was able to obtain a *signed* version of Marion County's ADR plan.  The unsigned and signed version prove to be virtually identical except as to form and design. *Compare* Filing No. 128-4 (Exhibit 2-B) *with* Filing No. 128-14 (Exhibit 2-F); Filing No. 128-15 at ECF p. 3 (Exhibit 2-G at p. 3).
[3] The *unsigned* version of Marion County's ADR plan provided by the Office of the Court Administrator and the Family Resource Center included Appendix "A". [Filing No. 128-4 at ECF p. 11 (Exhibit 2-B at p. 11)].  The signed version of Marion County's ADR plan provided by the Division of State Court Administration of the Supreme Court of Indiana did not include an Appendix "A" even though it was referenced in the plan document. [Filing No. 128-14 at ECF p. 9 (Exhibit 2-F at p. 9)].  However, undersigned counsel Alex Beeman corresponded with Staff Attorney Richard T. Payne of the Division of State Court Administration of the Supreme Court of Indiana and obtained Appendix "A" which is designated as [Filing No. 128-15 at ECF p. 3 (Exhibit 2-G at p. 3, ¶¶11-13)].  Appendix "A" provided with the unsigned version of Marion County's ADR plan and the document provided by the Division of State Court Administration of the Supreme Court of Indiana are identical except as to form and design. *Compare* Filing No. 128-4 at ECF p. 11 (Exhibit 2-B, p. 11) *with* Filing No. 128-15 at ECF p. 3 (Exhibit 2-G, p. 3).

(Exhibit 2-F at p. 7)].  Pursuant to Marion County's ADR plan, either "the court" on its own

motion or a party may request referral to modest means mediation. ADR Plan. [Filing No. 128-

14 at ECF p. 6 (Exhibit 2-F at p. 6)].  However, only a judicial officer, may order the parties to

modest means mediation. [Filing No. 128-14 at ECF p. 6 (Exhibit 2-F at p. 6)].

      Marion County's ADR plan was funded by the co-payment requested from each party

and by an additional $20.00 fee collected from every filing for legal separation, paternity, and

dissolution case in Marion County. [Filing No. 106 at ECF p. 4 (Defendant Marion Circuit

Court's Answer to Second Amended Complaint, ¶ 23)].  Per Marion County's ADR plan, these

funds were only to be used to pay for modest means and pro bono mediation. [Filing No. 128-14

at ECF p. 5 (Exhibit 2-F at p. 5)].

      If the trial court or judicial officer orders the parties to modest means mediation, then

they are required, pursuant to Marion County's ADR plan, to "appoint a family mediator who is

registered with the Indiana Supreme Court Mediator Registry who has expressed availability for

mediation within Marion County and a willingness to mediate under the terms of [the ADR plan]

and accept the hourly mediation fee . . ." [Filing No. 128-14 at ECF p. 7 (Exhibit 2-F at p. 7);

Filing No. 106 at ECF p. 4, 6 (¶¶25, 31)].

      Once a modest means mediation has concluded, the appointed mediator is required by

Marion County's ADR plan to "report to the court whether the mediation was successful,

partially successful (some but not all issues were resolved), or unsuccessful." [Filing No. 128-14

at ECF p. 8 (Exhibit 2-F at p. 8)].

**B.  King, His Modest Means Mediation, and His Requests for an Interpreter**

      King is deaf. [Filing No. 128-1 at ECF pp. 9, 19-20, 25, 37 (Exhibit 1 – Deposition of

Dustin King at pp. 45:4-6, 55:22-56:10, 61:4-16, 75:17-20); Filing No. 128-17 at ECF pp. 57-59

(Exhibit 3 – Deposition of Roland Hodges at pp. 57:21-59:7)].  King's primary mode of communication is American Sign Language ("ASL"). *Id.*  King is only able to access spoken communications with an ASL interpreter. *Id.*  King can only participate in mediation with an ASL interpreter. *Id.*

King was party Respondent in Cause No.: 49C01-1009-JP-041187 where the parties had a dispute related to the custody and parenting time of King's daughter. [Filing No. 106 at ECF p. 6 (¶35); Filing No. 128-1 at ECF pp. 22-23 (Exhibit 1 at pp. 58:5-59:4); Filing No. 128-12 (Exhibit 2-D – County Defendants' Initial Disclosures)].[4]  Party Petitioner in Cause No.: 49C01-1009-JP-041187 was Briana Thomas ("Thomas"), the biological mother of King's daughter. [Filing No. 128-12 (Exhibit 2-D)].

During the proceedings, King requested to participate in the modest means mediation program. [Filing No. 128-1 at ECF p. 44 (Exhibit 1 at p. 83:19-23); Filing No. 128-12 at ECF pp. 30-31].  Marion Circuit Court granted King's request and ordered the parties to mediation. [Filing No. 128-1 at ECF p. 57 (Exhibit 1 at p. 100:7-9); Filing No. 128-12 at ECF pp. 26-29 (Exhibit 2-D at p. 92-95)].  Finding the parties to Cause No.: 49C01-1009-JP-041187 "have insufficient economic resources to pay the full cost of mediation", the Marion Circuit Court also approved the parties' participation in Marion County's modest means mediation program. [Filing No. 128-12 at ECF p. 27 (Exhibit 2-D at p. 93; Filing No. 106 at ECF p. 7 (¶39)].  Pursuant to the sliding fee schedule, Thomas was required to make a co-payment of $16 per hour and King was required to make a co-payment of $24 per hour. [Filing No. 128-12 at ECF at p. 28 (Exhibit

---

[4] King and Thomas only have one child in common. [Filing No. 128-12 at ECF p. 6 (Exhibit 2-D, p. 36)].

2-D at p. 94)].[5]  The Court appointed Michael Cheerva to mediate the modest means mediation.

[Filing No. 106 at ECF p. 7 (¶40); Filing No. 128-12 at ECF p. 27 (Exhibit 2-D at p. 93)].

On June 21, 2013, King, by trial counsel, requested the appointment of an ASL interpreter by the Marion Circuit Court at Marion Circuit Court's expense for use in the modest means mediation. [Filing No. 106 at ECF p. 7 (¶41); Filing No. 128-12 at ECF pp. 24-25 (Exhibit 2-D at pp. 75-76); Filing No. 128-1 at ECF p. 22 (Exhibit 1 at p. 58:3-4)].  Marion Circuit Court by Magistrate Judge Mark Renner denied King's request for appointment of an ASL interpreter for use in the modest means mediation. [Filing No. 106 at ECF p. 7 (¶42); Filing No. 128-12 at ECF p. 23 (Exhibit 2-D at p. 74); Filing No. 128-1 at ECF p. 30 (Exhibit 1 at p. 66:7-8)].  Marion Circuit Court's decision was based on the lack of funding for interpreters in mediation stating that "Court does not supply interpreters for mediation hearings." [Filing No. 128-12 at ECF p. 23 (Exhibit 2-D at p. 74); Filing No. 106 at ECF p. 7 (¶¶42-43); Filing No. 128-1 at ECF p. 30 (Exhibit 1 at p. 66:7-8)].

At this time, Marion Circuit Court's budget had line items allocated from the Marion County general fund for payment of interpreter fees incurred in interpretation services. [Filing No. 128-5 at ECF pp. 8-9 (Exhibit 2-B, p. 20-21)].  In 2013, Marion Circuit Court's budget for that line item was $25,000. *Id.*  Marion Circuit Court also had an agreement with Indianapolis Interpreters, Inc. for the provision of "interpretative language services" on a *pro re nata* basis. [Filing No. 128-4 at ECF p. 12 (Exhibit 2-B at p. 12); Filing No. 128-5 at ECF pp. 1-6 (Exhibit

---

[5] King and Thomas had a combined weekly income of approximately $700. [Filing No. 128-12 at ECF p. 10 (Exhibit 2-D, p. 40)].  In accord with the sliding fee schedule, King and Thomas were required by Marion Circuit Court to pay a $40 copayment. [Filing No. 128-15 at ECF p. 3 (Exhibit 2-G, p. 3)].

2-B at pp. 12-18)].  Pursuant to the agreement, Marion Circuit Court would pay ASL interpreters $60 per hour. [Filing No. 128-5 at ECF p. 5 (Exhibit 2-B at p. 17)].[6]

King's step-father, Roland Hodges ("Mr. Hodges"), has done for-pay contract sign language interpreting a couple times. [Filing No. 128-17 at ECF p. 14-20 (Exhibit 3, p. 34-40)].[7] Mr. Hodges charges $60 per hour which is the "standard rate provided by most interpreters usually for the state or in general interpreting services throughout the city." [Filing No. 128-17 at ECF p. 19 (Exhibit 3 at p. 39:7-23)].  However, Mr. Hodges has never interpreted in a court of law and has no certifications or went through any program for court interpreters to do so. [Filing No. 128-17 at ECF p. 33 (Exhibit 3 at p. 59:8-10)].  In fact, Mr. Hodges has refused to interpret in court or court-related services because he was not certified. [Filing No. 128-17 at ECF p. 34 (Exhibit 3 at p. 60:2-16)].

On June 27, 2013, King, by trial counsel, sought reconsideration of the order denying his request for appointment of an ASL interpreter for use in the modest means mediation on the basis that not providing an ASL interpreter would be a violation of the Americans with Disabilities Act and Section 504 of the Rehabilitation Act. [Filing No. 106 at p. 7 (¶44); Filing No. 128-12 at pp. 20-22 (Exhibit 2-D at pp. 59-61)].  On July 3, 2013, the Marion Circuit Court

---

[6] The service agreement provided is *technically* between Marion *Superior* Court, but Defendant Marion Circuit Court has deferred King to "the Court Administrator for the Marion Superior Court." [Filing No. 128-20 at ECF p. 1 (Exhibit 5 – Marion Circuit Court Response to 2nd RFPD at p. 1)] ("Defendant responds by stating the requested documents are more readily accessible from a third party, and refers Plaintiff to the Court Administrator for the Marion Superior Court").  Pursuant to Marion County Local Rule LR49-AR00-303, the Court Administrator supervises "expenditures of the Court", including "contractual professional services". *Marion County Local Rules*, available at http://www.in.gov/judiciary/files/marion-local-rules.pdf (last accessed October 16, 2015), p. 60.  In response to King's public record request (Filing No. 128-3), Court Administrator Emily A. VanOsdol provided the service agreement with Indianapolis Interpreters, Inc. [Filing No. 128-4 at ECF p. 1, 12 (Exhibit 2-B at p. 1); Filing No. 128-5 at ECF pp. 1-6 (Exhibit 2-B at p. 12-18)].
[7] Until Mr. Hodges retired, all the interpreting he did was "gratis (sic)". [Filing No. 128-17 at ECF p. 11 (Exhibit 3 at p. 31:15-17)].

also denied King's motion to reconsider. [Filing No. 106 at p. 7 (¶45); Filing No. 128-12 at pp. 18-19 (Exhibit 2-D at pp. 48-49)].

On July 11, 2013, King, by trial counsel, moved to certify the issue for interlocutory appeal. [Filing No. 106 at p. 8 (¶50); Filing No. 128-12 at pp. 15-17 (Exhibit 2-D at pp. 45-47)]. On July 18, 2013, the Marion Circuit Court also denied King's motion to certify the issue for interlocutory appeal. [Filing No. 106 at p. 8 (¶51); Filing No. 128-12 at pp. 13-14 (Exhibit 2-D at pp. 43-44)].

On July 29, 2013, the modest means mediation convened. [Filing No. 128-12 at p. 12 (Exhibit 2-D at p. 42)].[8]  King and Thomas paid the requisite co-payment as required by Marion Circuit Court trial judge's order. [Filing No. 128-1 at ECF p. 20 (Exhibit 1 at p. 56:11-14); Filing No. 128-12 at pp. 12, 28 (Exhibit 2-D at pp. 42, 94)].[9]  However, there was no interpreter provided by the Marion Circuit Court at the modest means mediation. [Filing No. 128-1 at ECF pp. 12-13 (Exhibit 1 at pp. 48-49)].

Since the Marion Circuit Court would not provide an ASL interpreter for the King's mediation (or otherwise accommodate King's disability), King was required to furnish his own ALS interpreter for the modest means mediation. [Filing No. 128-1 at ECF pp. 12-14 (Exhibit 1 at pp. 48-50)].  King relied on Mr. Hodges to interpret for him. [Filing No. 128-1 at ECF pp. 54, 74-76 (Exhibit 1 at pp. 97, 117-119); Filing No. 128-3 at ECF pp. 5-6 (Exhibit 3 at pp. 20-21)]. Mr. Hodges had to take off work to interpret for King. [Filing No. 128-1 at ECF pp. 14-15, 21 (Exhibit 1 at pp. 41:2-6, 50:19-51:6); Filing No. 128-3 at ECF pp. 5, 18 (Exhibit 3 at pp. 20:23-

---

[8] The modest means mediation was originally scheduled for July 12, 2013 (Filing No. 62 at ECF p. 6 (¶37)), but was rescheduled to July 29, 2013.

[9] Pursuant to the trial court's order with respect to payment of the requisite copayment, "If the parties should fail to comply with this Order, the mediator shall advise the Court, in writing, in the report of mediation." [Filing No. 128-12 at p. 28].  Mr. Cheerva, the modest means mediator, did not advise the Marion Circuit Court that either King or Thomas had not paid their portion of the copayment as required by the sliding scale fee schedule. [Filing No. 128-12 at p. 12,

21:1)].  Also in attendance at the modest means mediation, besides King's trial counsel, was

King's mother Nancy Hodges ("Ms. Hodges") and his current wife, Kasandra (Sillaman) King.

King's wife did help interpret for King, but Mr. Hodges primarily interpreted for him. [Filing

No. 128-1 at ECF pp. 54, 76 (Exhibit 1 at pp. 97:4-15, 119:9-14); Filing No. 128-3 at ECF pp. 5-

6 (Exhibit 3 at pp. 20-21)].  Ms. Hodges is also deaf, so she could not interpret at all for King.

[Filing No. 128-1 at ECF p. 76 (Exhibit 1 at p. 119:13-14)].   King did not pay for Mr. Hodges or

his wife's services [(Filing No. 128-1 at ECF pp. 53-56, 76 (Exhibit 1 at pp. 96:13-99:11,

119:15-19)], but Mr. Hodges did tell King that he expected to be paid "if he ever got paid for it

in any way". [Filing No. 128-17 at ECF p. 7 (Exhibit 3 at p. 22:15-24)].

     King wanted to participate in the modest means mediation for a few reasons. [Filing No.

128-1 at ECF pp. 15-16 (Exhibit 1 at pp. 51-52); Filing No. 128-17 at ECF pp. 35-37 (Exhibit 3

at pp. 61:24-63:10)].  King and his wife did not want to their daughter to go through trial nor

wanted to wait for the trial to happen. [Filing No. 128-1 at ECF p. 15] (Exhibit 1 at p. 52:3-10)

("We were hoping that the mediation resolved our issues, the problems that we were having, so

that we would not have to go to court. We didn't want to have to go through the delays and the

time that court would incur. And we didn't want my daughter to go through that experience as

well. We didn't want my daughter in court. So we tried the mediation first.").  King had not seen

her daughter for months. [Filing No. 128-17 at ECF p. 36 (Exhibit 3 at p. 62:10-11)].

Furthermore, King and his wife's wedding was coming up, and King wanted her to attend.

[Filing No. 128-17 at ECF p. 36 (Exhibit 3 at p. 62:5-11)] ("Well, yeah, both himself and his

wife both expressed the need to get this resolved, this issue resolved with his - - the mother of his

daughter so that she could attend the wedding for one thing, but also because he was getting

extremely frustrated because he had not been given access to his daughter for several months at that time . . .").

As a result of Marion Circuit Court's refusal to provide an interpreter for the modest means mediation, King has suffered emotional distress. [Filing No. 128-1 at ECF p. 63 (Exhibit 1 at p. 106:12-21)].  He feels "awful", "angry", "upset", "preoccupied", and frankly "pissed off" about the situation. [Filing No. 128-1 at ECF p. 63-65 (Exhibit 1 at pp. 106-108)].  King also incurred attorney's fees in seeking to have the Marion Circuit Court appoint an interpreter for the modest means mediation. [Filing No. 128-18 (Exhibit 4 – Affidavit of Ludendorff Lara); Filing No. 128-19 (Exhibit 4-A – Attorney's Fees Invoices)].  Most of these attorney's fees were waived due to a professional courtesy discount provided by King's trial counsel, but King did pay at least $380.00 in his effort to get an interpreter for the modest means mediation. [Filing No. 128-19 at ECF p. 3 (Exhibit 4-A at Bates DAK0069 (billing entries 6/18/2013 and 6/26/2013)); Filing No. 128-1 at ECF pp. 14-15, 67 (Exhibit 1 at pp. 50:19-51:6, 110:12-14)].

The modest means mediation was successful and resulted in an agreed entry resolving all the pending issues in Cause No.: 49C01-1009-JP-041187. [Filing No. 128-12 at ECF pp. 6-12 (Exhibit 2-D at pp. 36-42)].  On July 30, 2013, the Marion Circuit Court made the agreed entry the order of the court. [Filing No. 128-12 at ECF p. 9 (Exhibit 2-D at p. 39)].

### III.   STANDARD

The standard for which this Court considers a motion for summary judgment is well known and established. *See Hemsworth v. Quotesmith.com, Inc.*, 476 F.3d 487, 489 (7th Cir. 2007).

### IV.   ARGUMENT

The undisputed material facts show that Marion Circuit Court violated Title II as a matter of law by:

(1) failing to provide King the necessary auxiliary aids and services to ensure effective communication;

(2) refusing to accommodate King's disability; and,

(3) intentionally discriminating against King on the basis of his disability.

**A. Background**

Title II provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity." 42 U.S.C. § 12132.  Therefore, "[t]he elements of a Title II claim are: (1) plaintiffs are qualified individuals with disabilities; (2) plaintiffs were either excluded from participating in, or denied the benefits of, a public entity's services, programs, or activities, or were otherwise discriminated against; and (3) that such exclusion, denial of benefits, or discrimination was by reason of disability." *Flynn v. Doyle*, 672 F. Supp. 2d 858, 878 (E.D. Wis. 2009) (*citing id.*; *Kiman v. New Hampshire Dep't of Corrs.*, 451 F.3d 274, 283 (1st Cir. 2006)). *See also Wagoner v. Lemmon*, 778 F.3d 586, 592 (7th Cir. 2015).

Initially, the undisputed evidence indicates that King is a qualified individual, Marion Circuit Court is a public entity, and the modest means mediation program is a service, program, or activity all within the meaning of Title II.

**B. King is a "qualified individual" within the meaning of Title II.**

42 U.S. Code § 12131(1) defines "qualified individual" as "an individual with a disability who, with or without reasonable modifications to rules, policies, or practices, the removal of architectural, communication, or transportation barriers, or the provision of auxiliary aids and

15

services, meets the essential eligibility requirements for the receipt of services or the participation in programs or activities provided by a public entity."

First, King is an individual with a disability as defined in 42 U.S. Code § 12102.[10]  King is deaf. [Filing No. 128-1 at ECF pp. 9, 19-20, 25, 37 (Exhibit 1 – Deposition of Dustin King at pp. 45:4-6, 55:22-56:10, 61:4-16, 75:17-20); Filing No. 128-17 at ECF pp. 57-59 (Exhibit 3 – Deposition of Roland Hodges at pp. 57:21-59:7)].  King's primary mode of communication is ASL. *Id.*  King is only able to access spoken communications with an ASL interpreter. *Id.*

Second, King met "the essential eligibility requirements for the receipt of services or the participation in programs or activities provided by a public entity." 42 U.S. Code § 12131(1).  In order to participate in the modest means program, Marion County's ADR plan required individuals to meet certain financial criteria as determined by the trial court or judicial officer. [Filing No. 128-4 at ECF pp. 7, 9 (Exhibit 2-F, p. 7, 9)].  King requested to participate in the modest means mediation program with Marion Circuit Court. [Filing No. 128-1 at ECF p. 44 (Exhibit 1 at p. 83:19-23); Filing No. 128-12 at ECF pp. 30-31].  Marion Circuit Court granted King's request, finding King and Thomas to "have insufficient economic resources to pay the full cost of mediation." [Filing No. 128-12 at ECF p. 27 (Exhibit 2-D at p. 93); Filing No. 106 at ECF p. 7 (¶39)].  The Marion Circuit Court ordered the parties to modest means mediation. [Filing No. 128-12 at ECF pp. 26-29 (Exhibit 2-D, p. 92-95)].

## C.  Marion Circuit Court is a "public entity" within the meaning of Title II.

---

[10] The general definition of "disability" provided in 42 U.S. Code § 12102(1) reads as follows:
   (1)  Disability  The term "disability" means, with respect to an individual—
      (A) a physical or mental impairment that substantially limits one or more major life activities of such individual;
      (B) a record of such an impairment; or
      (C) being regarded as having such an impairment (as described in paragraph (3)).

42 U.S. Code § 12131(1) defines "public entity" to mean, in relevant part, any State government or other instrumentality of a State government.  Marion Circuit Court is part of judicial branch of the government of the State of Indiana.  Marion Circuit Court, like other "circuit courts", was established and operates under authority of the Indiana Constitution and Indiana Code. *See generally* Article 7 of the Indiana Constitution; Ind. Code § 33-28-1 *et seq.*; Ind. Code § 36-2-5 *et seq.*[11]

### D.  The modest means mediation is as a service, program, or activity within the meaning of Title II.

Title II applies essentially "to anything a public entity does", including activities of judicial branches of State government. *See Culvahouse v. City of LaPorte*, 679 F. Supp. 2d 931, 939 (N.D. Ind. 2009) (*citing Oconomowoc Residential Programs, Inc. v. City of Milwaukee*, 300 F.3d 775, 782 (7th Cir. 2002) (*quoting* 28 C.F.R. pt. 35, app. A)) (citations omitted).  Title II cases involving courts typically implicate access-issues related to court proceedings, however, the United States Supreme Court was clear that Title II implicates broadly the accessibility of "judicial services and programs." *See Tennessee v. Lane*, 541 US 509, 527 (2004).  The modest means mediation program is a service, program, or activity within the meaning of Title II, and more specifically, a general service, program, or activity of Marion Circuit Court.

As more fully described above, the modest means mediation program is available to certain qualifying litigants in domestic relations cases in Marion County. [Filing No. 128-4 at ECF pp. 7, 9 (Exhibit 2-F, p. 7, 9)].  The program is authorized, regulated, and organized

---

[11] While Marion Circuit Court is a trial court of the State of Indiana, it is primarily funded by the City-County Council of Indianapolis/Marion County (i.e. local government) as well as the fees/costs collected from litigants. "Indiana's trial courts are funded primarily through county funds; however, state funds pay for judges' and magistrates' salaries, senior judges and some special judge expenses." *2013 Indiana Judicial Service Report*, Vol. III, p. 1, available at http://www.in.gov/judiciary/admin/files/rpts-ijs-2013-judicial-v3-financial.pdf (last accessed on August 21, 2015). *See also* John Baker, *The History of the Indiana Trial Court System and Attempts at Renovation*, 30 Indiana Law Review 233, 234, fn. 11 (1997), available at http://www.in.gov/judiciary/citc/files/baker.pdf (last accessed on October 18, 2015) ("Trial courts are primarily funded by the individual counties.") (citation omitted).

pursuant to the ADR plan developed in Marion County pursuant to Ind. Code § 33-23-6. [Filing No. 128-4 at ECF p. 3 (Exhibit 2-B at p. 3); Filing No. 128-14 at ECF p. 15 (Exhibit 2-F)]. Modest means mediation may be requested by either a qualifying litigant or by the trial court, like Marion Circuit Court, on its own motion. [Filing No. 128-14 at ECF p. 6 (Exhibit 2-F at p. 6)]. However, only the trial court may order the parties to modest means mediation pursuant to Marion County's ADR plan. [Filing No. 128-14 at ECF pp. 6-7 (Exhibit 2-F at pp. 6-7)]. The modest means mediation program is utilized by Marion County trial courts, like the Marion Circuit Court in Cause No.: 49C01-1009-JP-041187, as part of the adversarial processes of a domestic relations action (including a juvenile paternity matter) "to minimize adversarial processes promote agreed resolutions, avoid post-dissolution processes, maximize timely case management, and conserve family relations and resources . . ." [Filing No. 128-4 at ECF p. 5 (Exhibit 2-F at p. 5)].

In the instant case, Marion Circuit Court ordered the parties to modest means mediation after considering King's request and the financial resources of both parties pursuant to Marion County's ADR plan. [Filing No. 128-1 at ECF pp. 44, 57 (Exhibit 1 at pp. 83:19-23, 100:7-9); Filing No. 128-12 at ECF pp. 26-31 (Exhibit 2-D at pp. 92-95, 99-100); Filing No. 106, p. 7 (¶39)].

### E. Marion Circuit Court failed to provide King the necessary auxiliary aids and services to ensure effective communication.

Title II regulations require public entities to "take appropriate steps to ensure that communications with applicants, participants, members of the public, and companions with disabilities are as effective as communications with others." 28 C.F.R. § 35.160(a)(1). Among the appropriate steps is the furnishing of appropriate "auxiliary aids and services." 28 C.F.R. § 35.160(b)(1). 28 C.F.R. § 35.160(b)(1) states, "A public entity shall furnish appropriate

auxiliary aids and services where necessary to afford individuals with disabilities, including

applicants, participants, companions, and members of the public, an equal opportunity to

participate in, and enjoy the benefits of, a service, program, or activity of a public entity."[12]

When determining what auxiliary aids or services are necessary, the public entity *shall*

give consideration to "the method of communication used by the individual; the nature, length,

and complexity of the communication involved; and the context in which the communication is

taking place" and "*primary* consideration to the requests of individuals with disabilities." 28

C.F.R. § 35.160(b)(2) (emphasis added).  Further, Title II regulation specifically provides that

"[a] public entity *shall not* require an individual with a disability to bring another individual to

interpret for him or her." 28 C.F.R. § 35.160(c)(1) (emphasis added).

---

[12] The only "limitation on this duty is embodied in Section 35.164 . . ." *Chisolm v. McManimon*, 275 F.3d 315 (3rd Cir. 2001).  28 C.F.R. § 35.164 reads:

> This subpart does not require a public entity to take any action that it can demonstrate would result in a fundamental alteration in the nature of a service, program, or activity or in undue financial and administrative burdens. In those circumstances where personnel of the public entity believe that the proposed action would fundamentally alter the service, program, or activity or would result in undue financial and administrative burdens, a public entity has the burden of proving that compliance with this subpart would result in such alteration or burdens. The decision that compliance would result in such alteration or burdens must be made by the head of the public entity or his or her designee after considering all resources available for use in the funding and operation of the service, program, or activity and must be accompanied by a written statement of the reasons for reaching that conclusion. If an action required to comply with this subpart would result in such an alteration or such burdens, a public entity shall take any other action that would not result in such an alteration or such burdens but would nevertheless ensure that, to the maximum extent possible, individuals with disabilities receive the benefits or services provided by the public entity.

However, this limitation or exception is inapplicable in the instant case for, at least, a few reasons.  First, the head of Marion Circuit Court was uninvolved with this case.  Second, providing effective information would not be an undue burden or require a fundamental alteration of the modest means program.  Third, no written statement was provided indicating the rationale that providing effective communication would be an undue burden or require a fundamental alteration of the modest means program.  Finally, Marion Circuit Court took no steps to ensure King could receive the benefits of the modest means program, even assuming it would have been an undue burden or fundamental alteration.

Here, Marion Circuit Court failed to provide King an interpreter for the modest means mediation as he requested and did not propose another auxiliary aid or service to allow King to access the spoken communications of the modest means mediation and ensure effective communication. [Filing No. 128-1 at ECF pp. 12-13, 30 (Exhibit 1 at pp. 48-49, 66); Filing No. 128-12 at pp. 13-14, 18-19, 23 (Exhibit 2-D at pp. 43-44, 48-49, 74); Filing No. 106 at ECF p. 7 (¶¶42, 45. 51)].  Marion Circuit Court simply denied King's request for effective communication for use in modest means mediation program.  Since King wished to participate in the modest means program, Marion Circuit Court essentially forced King to supply his own interpreters in direct contradiction of 28 C.F.R. § 35.160(c)(1) and 28 C.F.R. § 35.160(c)(2) (with a limited number of circumstances, "A public entity shall not rely on an adult accompanying an individual with a disability to interpret or facilitate communication . . ."). [Filing No. 128-1 at ECF pp. 12-14, 15-16, 54, 74-76 (Exhibit 1 at pp. 48-52, 97, 117-119); Filing No. 128-3 at ECF pp. 5-6, 35-37 (Exhibit 3 at pp. 20-21, 61-63)].

**F.  Marion Circuit Court refused to provide King a reasonable accommodation.**

"A Title II claim 'may be established by evidence that (1) the defendant intentionally acted on the basis of the disability, (2) the defendant refused to provide a reasonable modification, or (3) the defendant's rule disproportionally impacts disabled people.'" Filing No. 102, p. 28 (citing *Wis. Cmty. Servs. v. City of Milwaukee*, 465 F.3d 737 (7th Cir. 2006)).  Each of the above bases are separate and independent claims under Title II. *See e.g. Washington v. Ind. High Sch. Ath. Ass'n*, 181 F.3d 840 (7th Cir. 1999); *Wis. Cmty. Servs.*, 465 F.3d at 737.

"A public entity must reasonably accommodate a qualified individual with a disability by making changes in rules, policies, practices or services, when necessary." *Brettler v. Purdue Univ.*, 408 F. Supp. 2d 640, 666 (N.D. Ind. 2006) (citing *Dadian v. Vill. of Wilmette*, 269 F.3d

831, 838 (7th Cir. 2001) (citations omitted)). *See also* 28 C.F.R. § 35.130(b)(7) ("A public entity

shall make reasonable modifications in policies, practices, or procedures when the modifications

are necessary to avoid discrimination on the basis of disability, unless the public entity can

demonstrate that making the modifications would fundamentally alter the nature of the service,

program, or activity.).  To establish a reasonable accommodation claim under Title II, a plaintiff

must show that an accommodation is required as necessary to avoid discrimination on the basis

of a disability and that that requested accommodation is reasonable. *See Wis. Cmty. Servs.*, 465

F.3d at 751; *Daveri Dev. Grp., LLC v. Vill. of Wheeling*, 934 F. Supp. 2d 987, 1005 (N.D. Ill.

2013).

      First, King's accommodation was necessary in order to avoid discrimination on the basis

of his disability.  Without an interpreter, King, as a deaf individual, would not have been able to

participate in the mediation because he is only able to access spoken communications with an

ASL interpreter. [Filing No. 128-1 at ECF pp. 9, 19-20, 25, 37 (Exhibit 1 at pp. 45:4-6, 55:22-

56:10, 61:4-16, 75:17-20); Filing No. 128-17 at ECF pp. 57-59 (Exhibit 3 at pp. 57:21-59:7)].  In

fact, if it was not for Mr. Hodges, King would have had to cancel the modest means mediation.

[Filing No. 128-1 at ECF pp. 12-13 (Exhibit 1 at pp. 48-49)].  Here, Marion Circuit Court simply

did not do anything to accommodate King's disability. *Id.*; [Filing No. 128-12 at pp. 13-14, 18-

19, 23 (Exhibit 2-D at pp. 43-44, 48-49, 74); Filing No. 106 at p. 7 (¶¶42, 45. 51)].  Any

"accommodation" entirely precluding a disabled individual from the benefits of a service,

program, or activity of a public entity is no accommodation.

      Second, King requested accommodation was reasonable.  "Whether a requested

accommodation is reasonable is highly fact-specific, and determined on a case-by-case basis by

balancing the cost to the defendant and the benefit to the plaintiff." *Dadian*, 269 F.3d at 838

(*citing Bronk v. Ineichen*, 54 F.3d 425, 429 (7th Cir. 1995); *United States v. Village of Palatine, Illinois*, 37 F.3d 1230, 1234 (7th Cir. 1994)).  The designated evidence indicates that King's requested accommodation would impose little burden on Marion Circuit Court.  Indeed, Marion Circuit Court already had an agreement with Indianapolis Interpreters, Inc. for the provision of "interpretative language services" on a *pro re nata* basis. [Filing No. 128-4 at ECF p. 12 (Exhibit 2-B at p. 12); Filing No. 128-5 at ECF pp. 1-6 (Exhibit 2-B at pp. 12-18)].  Pursuant to the agreement, Marion Circuit Court would have had to pay the ASL interpreter $60 per hour. [Filing No. 128-5 at ECF p. 5 (Exhibit 2-B at p. 17)].  Ultimately, the modest means mediation in this case lasted between three and four hours. [Filing No. 128-17 at ECF p. 6 (Exhibit 3 at p. 21:11)].  Therefore, at worst, Marion Circuit Court would have been looking at a $240 expenditure.[13]  Furthermore, Marion Circuit Court had already budgeted for interpreter fees. [Filing No. 128-5 at ECF pp. 8-9 (Exhibit 2-B, p. 20-21)].  In 2013, Marion Circuit Court had set aside approximately $25,000 for the payment of interpreter fees. *Id.*  Therefore, Marion Circuit Court would have only had to expend a minor expense to provide King an ASL interpreter. Compared to an overall budget of over $53 million (or even of the $25,000 interpreter fee line item), an expense of $240 is relatively minor. [Filing No. 128-10 at ECF p. 9 (Exhibit 2-B at p. 81)].

### G. Marion Circuit Court intentionally discriminated against King.

Under Title II, "it is necessary to show intentional discrimination in order to recover compensatory damages . . ." *Phipps v. Sheriff of Cook Cty.*, 681 F. Supp. 2d 899, 917 (N.D. Ill. 2009).

---

[13] Four hours at $60 per hour is $240.

While there is a known split between federal circuits, King believes the appropriate standard to show intentional discrimination is that standard adopted by a majority of the circuits.[14]  The majority of courts have "generally applied a two-part standard for deliberate indifference, requiring both (1) 'knowledge that a harm to a federally protected right is substantially likely,' and (2) 'a failure to act upon that likelihood.'" *S.H. v. Lower Merion Sch. Dist.*, 729 F.3d at 272 (*citing Duvall v. Cnty. of Kitsap*, 260 F.3d 1124, 1139 (9th Cir. 2001); *Loeffler v. Staten Island Univ. Hosp.*, 582 F.3d 268, 275 (2d Cir.2009); *Liese v. Indian River Cnty. Hosp. Dist.*, 701 F.3d 334, 348 (11th Cir.2012)). *See also Phipps*, 681 F. Supp. 2d at 918 (*citing Duvall v. Cnty. of Kitsap*, 260 F.3d at 1138-1139; *Bartlett v. New York State Bd. of Law Exam'rs*, 156 F.3d 321, 331 (2d Cir. 1998); *Powers v. MJB Acquisition Corp.*, 184 F.3d 1147, 1152-53 (10th Cir. 1999); *Kennington v. Marion County Sheriff*, 2004 U.S. Dist. LEXIS 19572, at *7. (S.D. Ind. 2004).

> When the plaintiff has alerted the public entity to his need for accommodation (or where the need for accommodation is obvious, or required by statute or regulation), the public entity is on notice that an accommodation is required, and the plaintiff has satisfied the first element of the deliberate indifference test.

*Duvall v. Cnty. of Kitsap*, 260 F.3d at 1139.  Upon receipt of a request for an accommodation, a public entity

> is required to undertake a fact-specific investigation to determine what constitutes a reasonable accommodation, and we have provided the criteria by which to evaluate whether that investigation is adequate. "[M]ere speculat[ion] that a suggested accommodation is not feasible falls short of the reasonable accommodation

---

[14] We note that all circuits to consider the question have held that compensatory damages are only available for intentional discrimination, though there is a split over the appropriate standard for showing intentional discrimination. *See S.H. ex rel. Durrell v. Lower Merion Sch. Dist.*, 729 F.3d 248, 260-65 (3d Cir. 2013) (listing cases, discussing the split, and adopting the majority standard).

*CTL v. Ashland Sch. Dist.*, 743 F.3d 524, 528 n.4 (7th Cir. 2014).

> requirement; the Acts create a duty to gather sufficient information from the [disabled individual] and qualified experts as needed to determine what accommodations are necessary." *Wong v. Regents of the University of California*, 192 F.3d 807, 818 (9th Cir. 1999)(all but first alteration in original; citation and internal quotation marks omitted).

*Duvall v. Cnty. of Kitsap*, 260 F.3d at 1139.

"Thus, the 'deliberate indifference' standard has two elements. The first is satisfied when the public entity has notice that an accommodation is required." *Kennington v. Marion County Sheriff*, 2004 U.S. Dist. LEXIS 19572, at *22 (*citing Lovell v. Chandler*, 303 F.3d 1039, 1056 (9th Cir. 2002), *cert. denie*d, 537 U.S. 1105 (2003)).  As to the first element, King, by trial counsel, requested numerous times with Marion Circuit Court to be provided an ASL interpreter at the modest means mediation. [Filing No. 106 at ECF pp. 7-8 (¶¶41, 44, 50); Filing No. 128-12 at pp. 15-17, 20-22, 24-25 (Exhibit 2-D at pp. 45-47, 59-61, 75-76)].  Therefore, King clearly alerted Marion Circuit Court to his need for accommodation and Marion Circuit Court was on notice of the same. *See e.g. Kennington*, 2004 U.S. Dist. LEXIS 19572, at *23 (jail was on notice that an accommodation to a deaf pre-trial detainee may have been required when they were alerted to detainee's deafness during the booking-in process).

"Regarding the second element, 'a failure to act must be a result of conduct that is more than negligent, and involves an element of deliberateness.'" *Kennington v. Marion County Sheriff*, 2004 U.S. Dist. LEXIS 19572 at *23 (*quoting Duvall*, 260 F.3d at 1139; *citing Lovell*, 303 F.3d at 1056).  As to the second element, Marion Circuit Court deliberately denied King an interpreter for the modest means mediation after each and every request without any investigation despite its particularly unique position to under the applicable law and regulations.

Each and every time, Marion Circuit Court by Magistrate Judge Mark Renner denied King's request. [Filing No. 128-12 at pp. 13-14, 18-19, 23 (Exhibit 2-D at pp. 43-44, 48-49, 74);

Filing No. 106 at p. 7 (¶¶42, 45. 51)].  In fact, each deliberate decision was memorialized in an

order or minute entry that is part of the record in Cause No.: 49C01-1009-JP-041187. *See* Filing

No. 128-12 at pp. 23 (Exhibit 2-D at p. 74) (denying appointment of ASL interpreter), 18-19

(Exhibit 2-D at pp. 48-49 (denying motion to reconsider order denying appointment of ASL

interpreter), 13-14 (Exhibit 2-D at pp. 43-44) (denying motion to certify the issue for

interlocutory appeal).  It is undisputed that Marion Circuit Court made a deliberate decision to

deny King's request.

In his request for reconsideration of Marion Circuit Court's original denial of an ASL

interpreter for use in the modest means mediation, King, by trial counsel, explicitly noted that

pursuant to Title II that Marion Circuit Court was obligated to provide King an interpreter during

the modest means mediation. *See* Exhibit 2-D, p. 59-61.  King, by trial counsel, also made the

Marion Circuit Court aware that not providing an ASL interpreter would be in violation of Title

II. *See* Exhibit 2-D, p. 45-47.  Therefore, Marion Circuit Court was well aware of the law that

would obligate it to provide King a mediator for the modest means mediation.

As is apparent, Marion Circuit Court was also in a particularly unique position to either

understand or find the applicable law and regulations relating to the obligation to provide an

interpreter and ensure effective communication.[15]  Further, widely available and known

resources of the applicable law and regulations existed in 2013, including, but not limited to:

➢ The Department of Justice's 1993 technical assistance per 42 U.S.C. § 12206 which is

publicly available, and easily accessible online. *See Title II Technical Assistance Manual*,

available at http://www.ada.gov/taman2.html (last accessed on August 31, 2015).

---

[15] The "court sits as an impartial arbiter of the law . . ." *Goodwin v. State*, 96 Ind. 550, 573 (Ind. 1884).

➢ *Tennessee v. Lane*, 541 U.S. at 509: the United States Supreme Court outlined in courts' obligations to comply with Title II and provide meaningful access to the courts and other judicial services.

There is simply no evidence that Marion Circuit Court did anything to investigate whether it would have been possible to provide the requested accommodation or tried to provide King an interpreter or other reasonable modification to be able to participate in the modest means mediation. *See e.g.* Filing No. 128-21 at ECF pp. 2-3 (Exhibit 6 – Marion Circuit Court Response to 1st RFPD at pp. 14-15) (response to request no. 9); Filing No. 128-2 at ECF pp. 1-2 (Exhibit 2 at pp. 1-2 (¶¶8-11); Filing No. 128-16 at p. 1 (Exhibit 2-H – Meet-and-Confer Follow-up Letter at p. 1)]. *See Duvall v. Cnty. of Kitsap*, 260 F.3d at 1139 (in analyzing deliberateness the court noted there was no investigator or even effort made to determine whether the requested accommodation was available or possible); *Liese v. Indian River Cnty. Hosp. Dist.*, 701 F.3d at 348 (jury could find deliberate indifference where there was no evidence a surgery made any attempt to obtain interpreter even after repeated requests by a deaf patient that they needed an interpreter). Notably, the designated evidence indicates that Marion Circuit Court would have easily been able to provide the requested accommodation (i.e. an ASL interpreter for the modest means mediation). *See Duvall*, 260 F.3d at 1136 ("The evidence in the record strongly suggests that the County would have been able to provide videotext display for Duvall's hearings if the defendants had given due consideration to Duvall's requested accommodation and investigated the availability of real-time transcription.").

Further, to be clear, the only reason that King was eventually able to take part in the modest means mediation and resolve his case was because he procured his own interpreters,

albeit his own family members (i.e. Mr. Hodges, and to a lesser extent his wife). [Filing No. 128-1 at ECF pp. 54, 76 (Exhibit 1 at pp. 97:4-15, 119:9-14)].

## V.   CONCLUSION

There is no genuine issue as to any material fact and King is entitled to judgment as a matter of law that Marion Circuit Court violated Title II and intentionally discriminated against King.  King, respectfully requests this Court enter partial summary judgment against Marion Circuit Court declaring Marion Circuit Court violated Title II and for liability against Marion Circuit Court for actual and compensatory damages for its violation of Title II.

Dated: September 19, 2015          Respectfully submitted,

                                   _s/ Alex Beeman_____
                                   Andrea L. Ciobanu, #28942-49
                                   Alex Beeman, #31222-49
                                   CIOBANU LAW, P.C.
                                   8910 Purdue Road, Suite 240
                                   Indianapolis, IN 46268
                                   Phone: (317) 495-1090
                                   Fax: (866) 841-2071
                                   Email: aciobanu@ciobanulaw.com
                                   Email: abeeman@ciobanulaw.com

## CERTIFICATE OF SERVICE

I hereby certify that on September 19, 2015 a copy of this document was filed electronically. Service of this filing will be made on all ECF-registered counsel by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

*s/ Alex Beeman*
Andrea L. Ciobanu, #28942-49
Alex Beeman, #31222-49
CIOBANU LAW, P.C.
8910 Purdue Road, Suite 240
Indianapolis, IN 46268
Phone: (317) 495-1090
Fax: (866) 841-2071
Email: aciobanu@ciobanulaw.com
Email: abeeman@ciobanulaw.com

28