UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| DUSTIN A. KING, | ) | |
| | ) | |
| *Plaintiff*, | ) | |
| | ) | |
| vs. | ) | No. 1:14-cv-01092-JMS-MJD |
| | ) | |
| MARION CIRCUIT COURT, | ) | |
| | ) | |
| *Defendant*. | ) | |

## ORDER

Plaintiff Dustin A. King brings the instant suit against Defendant Marion Circuit Court under Title II of the Americans with Disabilities Act ("ADA"). [Filing No. 62.] Presently pending before the Court are Mr. King's Motion for Partial Summary Judgment, [Filing No. 128], and Marion Circuit Court's Cross-Motion for Summary Judgment, [Filing No. 141]. For the reasons that follow, Mr. King's Motion for Partial Summary Judgment is **GRANTED** and Marion Circuit Court's Cross-Motion for Summary Judgment is **DENIED**.

## I.
### STANDARD OF REVIEW

A motion for summary judgment asks the Court to find that a trial is unnecessary because there is no genuine dispute as to any material fact and, instead, the movant is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(a). As the current version of Rule 56 makes clear, whether a party asserts that a fact is undisputed or genuinely disputed, the party must support the asserted fact by citing to particular parts of the record, including depositions, documents, or affidavits. Fed. R. Civ. P. 56(c)(1)(A). A party can also support a fact by showing that the materials cited do not establish the absence or presence of a genuine dispute or that the adverse party cannot produce admissible evidence to support the fact. Fed. R. Civ. P. 56(c)(1)(B).

Affidavits or declarations must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant is competent to testify on matters stated. Fed. R. Civ. P. 56(c)(4). Failure to properly support a fact in opposition to a movant's factual assertion can result in the movant's fact being considered undisputed, and potentially in the grant of summary judgment. Fed. R. Civ. P. 56(e).

In deciding a motion for summary judgment, the Court need only consider disputed facts that are material to the decision. A disputed fact is material if it might affect the outcome of the suit under the governing law. Hampton v. Ford Motor Co., 561 F.3d 709, 713 (7th Cir. 2009). In other words, while there may be facts that are in dispute, summary judgment is appropriate if those facts are not outcome determinative. Harper v. Vigilant Ins. Co., 433 F.3d 521, 525 (7th Cir. 2005). Fact disputes that are irrelevant to the legal question will not be considered. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, (1986).

On summary judgment, a party must show the Court what evidence it has that would convince a trier of fact to accept its version of the events. Johnson v. Cambridge Indus., 325 F.3d 892, 901 (7th Cir. 2003). The moving party is entitled to summary judgment if no reasonable fact-finder could return a verdict for the non-moving party. Nelson v. Miller, 570 F.3d 868, 875 (7th Cir. 2009). The Court views the record in the light most favorable to the non-moving party and draws all reasonable inferences in that party's favor. Darst v. Interstate Brands Corp., 512 F.3d 903, 907 (7th Cir. 2008). It cannot weigh evidence or make credibility determinations on summary judgment because those tasks are left to the fact-finder. O'Leary v. Accretive Health, Inc., 657 F.3d 625, 630 (7th Cir. 2011). The Court need only consider the cited materials, Fed. R. Civ. P. 56(c)(3), and the Seventh Circuit Court of Appeals has "repeatedly assured the district courts that they are not required to scour every inch of the record for evidence that is potentially relevant to

2

the summary judgment motion before them," *Johnson*, 325 F.3d at 898.  Any doubt as to the

existence of a genuine issue for trial is resolved against the moving party.  *Ponsetti v. GE Pension*

*Plan*, 614 F.3d 684, 691 (7th Cir. 2010).

"The existence of cross-motions for summary judgment does not, however, imply that there

are no genuine issues of material fact."  *R.J. Corman Derailment Servs., LLC v. Int'l Union of*

*Operating Engineers*, 335 F.3d 643, 647 (7th Cir. 2003).  Specifically, "[p]arties have different

burdens of proof with respect to particular facts; different legal theories will have an effect on

which facts are material; and the process of taking the facts in the light most favorable to the non-

movant, first for one side and then for the other, may highlight the point that neither side has

enough to prevail without a trial."  *Id.* at 648.

## II.
### BACKGROUND

The Court draws the factual background from the undisputed evidence submitted by the

parties.[1]

### A.  Marion Circuit Court

Marion Circuit Court is a court system in Marion County that was established under the

authority of Article 7, Section 8 of the Indiana Constitution.

### B.  Modest Means Mediation Program

The Indiana General Assembly passed legislation that created an alternative dispute

resolution ("ADR") program in domestic relations cases.  *See* Ind. Code § 1-33-23 *et seq.*  Counties

---

[1] Marion Circuit Court claims that some of the facts from Mr. King's brief are immaterial and "contain argument or inferences that should not be considered."  [Filing No. 149 at 9-10.] Likewise, Mr. King argues that some of Marion Circuit Court's facts are immaterial, argumentative, and unsupported.  [Filing No. 150 at 4-7.]  The Court reviewed each party's arguments and has construed the facts that are supported by evidence from the record in the light most favorable to Marion Circuit Court, since the Court ultimately rules in favor of Mr. King.

that wish to participate in the program must develop an ADR plan, obtain approval by the majority of the judges in the county that exercise jurisdiction over domestic relations and paternity cases, and submit the plan to the Judicial Conference of Indiana.  Ind. Code § 33-23-6.  Thereafter, each participating county establishes an ADR fund for the court or courts that exercise jurisdiction over domestic relations and paternity cases.  Ind. Code § 33-23-6-2.  The ADR fund is generated from an ADR fee from each party filing a legal separation, paternity, or dissolution of marriage and from any co-payments made by parties who participate in the ADR plan.  *Id.*  Each year, the county must submit a report to the Judicial Conference of Indiana summarizing the results of the program. Ind. Code § 33-23-6-4.

The Marion Circuit Court and Superior Court – a separate court system in Marion County – created a joint ADR plan for domestic relations matters in Marion County to "minimize adversarial processes, promote agreed resolutions, avoid post-decree processes, maximize timely case management, and conserve family relations and resources."[2]  [Filing No. 128-14 at 5.]  Under the ADR plan, Marion Circuit Court runs the Modest Means Mediation Program, which allows parties who qualify for financial assistance under a sliding fee scale to participate in mediation. [Filing No. 128-14 at 6; Filing No. 128-14 at 9.]  A judicial officer within Marion Circuit Court determines whether parties can participate in the Modest Means Mediation Program by issuing a court order.  [Filing No. 128-14 at 7-8.]  The judicial officer makes that determination either on his or her own motion or by granting a party's referral request.  [Filing No. 128-14 at 7-8.] Depending on their income level, a party "could receive mediation services with a minimum co-payment of $5.00 per hour."  [Filing No. 128-14 at 9; Filing No. 128-15 at 3.]  Part of the annual

---

[2] Although the ADR plan is implemented by both Marion Circuit Court and Superior Court, the Court will only refer to Marion Circuit Court because it is the sole defendant in the case and Mr. King's case was pending in that court.

income of the ADR plan's fund comes from "the additional $20.00 per dissolution case" and the co-payment of participants, and in turn the ADR plan's resources and funds help pay for the Modest Means Mediation Program. [Filing No. 106 at 4; Filing No. 128-14 at 9.] The trial court "appoint[s] a family mediator who is registered with the Indiana Supreme Court Mediator Registry who has expressed availability for mediation within Marion County and a willingness to mediate under the terms of [the ADR plan] and accept the hourly mediation fee, as set by the Circuit Court and Marion Superior Court Civil Term." [Filing No. 128-4 at 6.] Upon the conclusion of mediation, the family mediator is required to report to the court whether mediation was successful, successful on some of the issues, or unsuccessful. [Filing No. 128-14 at 8.]

### C. Interpreters

In 2013, Indianapolis Interpreters, Inc., ("Indianapolis Interpreters") and the Marion Superior Court maintained a services agreement (the "Agreement") for interpreter services.[3] [Filing No. 128-4 at 12; Filing No. 128-5 at 1-6.] At that time, Indianapolis Interpreters charged $60 per hour for the use of an American Sign Language ("ASL") interpreter for on-site

---

[3] Marion Circuit Court objects to the admissibility of the Agreement. [Filing No. 149 at 10; Filing No. 153 at 4 (citing Filing No. 128-4 at 12; Filing No. 128-5 at 1-6).] It contends that this document violates the best evidence rule because the Agreement is only between Marion Superior Court and Indianapolis Interpreters and claims that Mr. King is attempting to create an inference that the Agreement also permitted Marion Circuit Court to use the interpreters. [Filing No. 149 at 10; Filing No. 153 at 4.] The Court, however, finds this evidence relevant to the extent that it demonstrates that Marion Circuit Court failed to consider ways to accommodate Mr. King's disability so that he could participate in the Modest Means Mediation Program, which is further discussed in Part III.C of this Order.

interpretation.  [Filing No. 128-5 at 5.]  Moreover, Marion Circuit Court and the Superior Court

had a budget of $25,000 in 2013 for interpreter services.[4]  [Filing No. 128-5 at 9.]

### D.  Mr. King's State Court Case

Mr. King is deaf and his primary manner of communication is through ASL.  [Filing No.

128-1 at 9; Filing No. 128-17 at 32.]  In 2013, Mr. King was the respondent in a state court action

in Marion Circuit Court with respect to custody and parenting time for his daughter.  [Filing No.

106 at 6; Filing No. 128-1 at 22-23.]  During the proceedings, Mr. King requested to participate in

the Modest Means Mediation Program.  [Filing No. 128-1 at 44.]  Mr. King wanted to participate

in mediation primarily because he did not want his daughter to go through trial, did not want to

experience the delays from a trial, and wanted his daughter to attend his upcoming wedding.

[Filing No. 128-1 at 15; Filing No. 128-17 at 36.]  The court granted that request – finding he

qualified for the Modest Means Mediation Program – and ordered the parties to mediation.  [Filing

No. 128-1 at 44.]  Each party paid their portion of the co-payment pursuant to the sliding fee

schedule, and the court appointed a mediator.  [Filing No. 106 at 7; Filing No. 128-12 at 28.]

Because Mr. King is only able to communicate through an ASL interpreter, he filed a

request with the Marion Circuit Court in June 2013 to appoint an ASL interpreter for mediation.

[Filing No. 128-1 at 10; Filing No. 128-12 at 24-25.]  Magistrate Judge Mark Renner issued an

order denying that request because the "[c]ourt does not supply interpreters for mediation

hearings" since no money was budgeted for mediation.  [Filing No. 128-12 at 5; Filing No. 128-

---

[4] Marion Circuit Court objects to the admissibility of the document that contains the budget line
item of $25,000 for interpreters.  [Filing No. 149 at 10 (citing Filing No. 128-5 at 9).]  It argues
that there is no evidence to support that "any monies budgeted for interpreter services for the
Marion Circuit [Court] and Superior Courts could be utilized for interpreters in mediation, as well
as court proceedings."  [Filing No. 149 at 10.]  The Court overrules this objection and finds that
this evidence is relevant to show that Marion Circuit Court maintained a budget for interpreters.

12 at 23.] Mr. King sought reconsideration of the request for appointment of an ASL interpreter for mediation, and the Marion Circuit Court denied his request once again. [Filing No. 128-12 at 5; Filing No. 128-12 at 20-22.] Marion Circuit Court waived the obligation of the parties to attend mediation in order to "alleviate the need for an interpreter." [Filing No. 128-12 at 5.] Mr. King moved to certify the issue for interlocutory appeal, and the Marion Circuit Court denied such request. [Filing No. 128-12 at 13-17.]

Despite not being appointed an interpreter and the court's waiver of the requirement to mediate, Mr. King continued with the Modest Means Mediation Program. [Filing No. 128-12 at 13.] The parties' mediation convened on July 29, 2013. [Filing No. 128-1 at 12; Filing No. 128-12 at 12.] Because Marion Circuit Court did not provide an ASL interpreter, Mr. King asked his step-father, Roland Hodges, to be his ASL interpreter. [Filing No. 128-1 at 54; Filing No. 128-1 at 74-76.] Mr. Hodges has done for-pay contract sign language for $60 per hour, which is the "standard rate provided by most interpreters usually for the state or in general . . . throughout the city." [Filing No. 128-17 at 14-20.] He has never interpreted in the courtroom and has never completed a program or obtained any certificates for interpreting in the courtroom. [Filing No. 128-17 at 33.] Mr. Hodges had to take off work in order to interpret for Mr. King. [Filing No. 128-1 at 14-15.] Although Mr. King's current wife, who is also deaf, helped interpret during mediation, Mr. Hodges was the primary interpreter for Mr. King. [Filing No. 128-1 at 54; Filing No. 128-1 at 76; Filing No. 128-3 at 5-6.] Mr. King did not pay Mr. Hodges or his wife for interpreting during mediation, but Mr. Hodges expressed that he expected to be paid if Mr. King "ever got paid for it in any way." [Filing No. 128-1 at 53-56; Filing No. 128-17 at 7.]

Mr. King suffered emotional distress as a result of Marion Circuit Court's refusal to provide an interpreter for mediation. [Filing No. 128-1 at 63.] Although most fees were waived, Mr. King

incurred attorney's fees of $380 in the process of requesting that Marion Circuit Court appoint an interpreter for the mediation, even though one was never appointed by the court. [Filing No. 128-1 at 14-15; Filing No. 128-18; Filing No. 128-19 at 3.]

The mediation was successful and resulted in an agreed entry resolving all the pending issues. [Filing No. 128-12 at 6-12.] On July 30, 2013, Marion Circuit Court made the agreed entry the order of the court. [Filing No. 128-12 at 9.]

### E. Mr. King's Federal Case

Mr. King filed the instant case against Marion Circuit Court[5] in this Court on June 29, 2014. [Filing No. 62.] Mr. King asserts that Marion Circuit Court violated Title II of the ADA when it intentionally discriminated against him by refusing to provide "auxiliary aids and services necessary" to ensure his participation in mediation and when it provided him with no reasonable accommodation. [Filing No. 62 at 11.] He seeks declaratory relief, actual and compensatory relief, attorney's fees, and any other litigation costs. [Filing No. 62 at 12.]

Mr. King has filed a Motion for Partial Summary Judgment as to liability, arguing that there is no genuine issue of material fact and that he is entitled to judgment as a matter of law. [Filing No. 128.] Marion Circuit Court filed its Cross-Motion for Summary Judgment, asking the Court to deny Mr. King's Motion and to either dismiss this matter for lack of jurisdiction or to grant its Motion for Summary Judgment. [Filing No. 149.]

---

[5] Mr. King's original complaint included other parties as defendants, but the Court's May 2015 Order, [Filing No. 102], dismissed all the claims against the other defendants except the current Title II claim against Marion Circuit Court.

# III.
## DISCUSSION

Mr. King argues that judgment should be entered in his favor because he "is a qualified individual, Marion Circuit Court is a public entity, and the Modest Means Mediation Program is a service, program, or activity all within the meaning of Title II." [Filing No. 129 at 15.] Moreover, Mr. King claims that undisputed facts establish that Marion Circuit Court failed to provide a reasonable accommodation and intentionally discriminated against him when it failed to provide the necessary auxiliary aids and services to ensure communication. [Filing No. 129 at 18-22.]

In its Cross-Motion for Summary Judgment, Marion Circuit Court disputes Mr. King's arguments and claims that Mr. King does not have Article III standing. [Filing No. 149 at 12.] It argues that even if Mr. King has standing, Marion Circuit Court is entitled to Eleventh Amendment sovereign immunity or judicial immunity. [Filing No. 149 at 26; Filing No. 149 at 31.] Lastly, Marion Circuit Court argues that if the Court considers the merits of the case, Mr. King's claim fails as a matter of law because he has not demonstrated that Marion Circuit Court violated Title II of the ADA. [Filing No. 149 at 17.]

The Court will first address whether Mr. King has standing. Second, the Court will discuss whether Marion Circuit Court is entitled to sovereign or judicial immunity. Lastly, the Court will address the merits of Mr. King's Title II claim.

## A.  Article III Standing

In its Cross-Motion for Summary Judgment, Marion Circuit Court claims that Mr. King "fails to allege any facts sufficient to establish any of the elements of Article III standing. . . ." [Filing No. 149 at 14.] It claims that the Modest Means Mediation Program is "privately funded" and the mediation requirement was waived for Mr. King. [Filing No. 149 at 13.] Marion Circuit Court argues that it only granted mediation because Mr. King requested it, and that mediation was

ultimately resolved in his favor.  [Filing No. 149 at 14.]  It asserts that Mr. King made no request for an interpreter "through the scheduled mediator," who is a private entity, that he "waited months before requesting [a mediator] solely through the [Marion Circuit Court]," and that he chose to proceed with voluntary mediation rather than through the court.  [Filing No. 149 at 14.]  Marion Circuit Court claims Mr. King has not demonstrated a concrete and particularized injury that is traceable to its waiver of the mediation requirement.  [Filing No. 149 at 15.]  It contends that it has funding for interpreters during court proceedings and not during mediation, and that "even setting budgetary concerns aside," Marion Circuit Court was within its discretionary power to "waive the local rule requiring mediation."  [Filing No. 149 at 15.]  Lastly, Marion Circuit Court claims that Mr. King has demonstrated no damages for its alleged conduct and no treatment for any alleged emotional damages or injury.  [Filing No. 149 at 16.]

In response, Mr. King maintains that he has standing "by virtue of Title II . . . which Marion Circuit Court has violated."  [Filing No. 150 at 8.]  He claims that he is a qualified individual, that Marion Circuit Court is a public entity, that the Moderate Means Mediation Program is a service, program, or activity, and that he has designated sufficient evidence to show that Marion Circuit Court has violated his rights under Title II.  [Filing No. 150 at 10-11.]  Moreover, Mr. King alleges that he meets all three elements of Article III standing.  [Filing No. 150 at 8.]  He argues that he suffered injuries when Marion Circuit Court failed to provide Mr. King with an interpreter for his mediation, and that the fact that Marion Circuit Court waived the mandatory requirement of mediation is irrelevant.  [Filing No. 150 at 15-16.]  He asserts that he was required to furnish his own ASL interpreter, and that he suffered emotional distress and incurred attorney's fees in seeking to have Marion Circuit Court appoint an interpreter.  [Filing No. 150 at 16-17.]

In reply, Marion Circuit Court argues that Mr. King fails to demonstrate a concrete or particularized injury or damages. [Filing No. 153 at 6.]  It argues that Mr. King relies on cases that discuss Title III and Title VII standing, that he ignores any implication of a fundamental right at issue, and that "Article III standing is not automatically conferred 'by virtue of Title II.'" [Filing No. 153 at 6-7 (citing Filing No. 150 at 10).]  Marion Circuit Court claims that Mr. King admits that he did not incur any injuries or damages because Marion Circuit Court waived mandatory mediation. [Filing No. 153 at 7-8.]  It further argues that judicial services are not at issue and that this case can be analyzed in a Title III context since it involves private mediation. [Filing No. 153 at 9.]  Additionally, Marion Circuit Court has filed Defendant's Notice of Supplemental Authority with the Court and asks the Court to consider a recent Seventh Circuit opinion, *Hummel et al. v. St. Joseph County Bd. Of Commissioners, et al.*, 2016 WL 1128487 (7th Cir. 2016), claiming it is binding authority and particularly relevant to the issue of standing. [Filing No. 156; Filing No. 156-1.]

Standing ensures that the parties at issue have a "vested interest in the case" and guarantees that the Court only adjudicates "cases and controversies." *Cabral v. City of Evansville, Ind.*, 759 F.3d 639, 641 (7th Cir. 2014). "To satisfy Article III's standing requirements, a litigant must show that (1) [he] has suffered an actual or imminent concrete and particularized 'injury in fact'; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Id.* at 641-42. (citing *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 180-81 (2000)).

Marion Circuit Court does not dispute that Mr. King participated in mediation and that when he requested an ASL interpreter because of his disability, it denied him one and failed to

offer any other reasonable accommodation other than relieving him from an order to participate in the mediation program. Mr. King has designated sufficient evidence to show that he suffered emotional distress or "feelings of angst related to his treatment," that he was forced to procure his own ASL interpreter who normally charges and who expects to be paid if Mr. King recovers in this case, and that he incurred attorney's fees in the process of requesting an interpreter, a fact the Marion Circuit Court does not dispute. The Court concludes this evidence is sufficient to show that Mr. King suffered an actual concrete and particularized injury.

Marion Circuit Court relies on *Hummel*, 2016 WL 1128487 (7th Cir. 2016), as authority for its position. However, this case is distinguishable. In *Hummel*, the Seventh Circuit Court of Appeals affirmed the grant of summary judgment in favor of the defendants. The plaintiffs were persons with disabilities who brought several claims under Title II of the ADA regarding accessibility issues to various courthouses, and the Seventh Circuit determined, in relevant part, that the plaintiffs lacked standing. In one claim, the plaintiffs lacked standing because only one of the plaintiffs had a case in one of the courthouses but the case was dismissed without prejudice, and no other plaintiffs had plans to return to that location. Another claim involved snow removal from the parking lot, and the Seventh Circuit held that the plaintiffs did not have standing because they had no past harms and provided no evidence of plans to visit in the near future. The plaintiffs' attorney, who was in a wheelchair, expressed that he had accessibility issues with the courthouse due to the snow, but the court determined that he was not a plaintiff to the case and that Title II does not provide for associational standing. Thus, unlike *Hummel*, Mr. King has designated sufficient evidence to demonstrate he suffered an injury in fact and a past harm when Marion Circuit Court failed to provide an interpreter for mediation. Accordingly, Marion Circuit Court's refusal to appoint an interpreter is fairly traceable to Mr. King's injuries and could be redressed by

a favorable decision for Mr. King by this Court.  Thus, Mr. King has standing to pursue his Title II claim.

### B.  Immunity

#### 1.  Sovereign Immunity

Marion Circuit Court's arguments on whether sovereign immunity can be raised by it for an ADA claim are a rehash of the arguments it previously made during litigation of the earlier motion to dismiss.  The Court will therefore reiterate its earlier rulings on those questions. "The Eleventh Amendment provides states with immunity from suits in federal courts unless the State consents to the suit or Congress has abrogated their immunity." *Tucker v. Williams*, 682 F.3d 654, 658 (7th Cir. 2012) (citation omitted).  Title II provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132.

 Pursuant to the plain text of Title II as interpreted by the Supreme Court, Congress unequivocally expressed its intent to abrogate Eleventh Amendment sovereign immunity under Title II of the ADA.  *See Tennessee v. Lane*, 541 U.S. 509, 518 (2004).  In *Lane*, the Supreme Court held that Title II's "requirement of program accessibility" in the context of the right of access to the courts "unquestionably is valid . . . as it applies to the class of cases implicating the accessibility of *judicial services*." *Lane*, 541 U.S. at 531 (emphasis added).  *Lane* did not limit its holding to actual in-court proceedings, instead noting that the right of access to the courts implicates "the accessibility of judicial services" and specifically referencing the "failure of state and local governments to provide interpretive services for the hearing impaired." *See, e.g.*, *id.* at 527, 531.

In the pending motions, the parties further expand upon prior arguments as to whether participating in the Modest Means Mediation Program is considered a judicial service under Title II of the ADA.[6] Mr. King argues that the Modest Means Mediation Program is a "service, program, or activity within the meaning of Title II. . . ." [Filing No. 129 at 17.] He contends that the Modest Means Mediation Program is available to qualifying litigants in "domestic relations cases" and that the program is "authorized, regulated, and organized" under the ADR plan pursuant to Ind. Code § 33-23-6. [Filing No. 129 at 17-18.] He further argues that the purpose of the program is "to promote agreed resolutions, avoid post-dissolution processes, maximize timely case management, and conserve family relations and resources." [Filing No. 129 at 18.] Mr. King claims that after considering his request, Marion Circuit Court ordered the parties to participate in the Modest Means Mediation Program. [Filing No. 129 at 18.]

In response, Marion Circuit Court disputes Mr. King's position and argues that the Modest Means Mediation Program is not a state program, service, or activity as defined under Title II. [Filing No. 149 at 18; Filing No. 149 at 29.] Marion Circuit Court argues that when it granted Mr. King's request to participate in the program, it gave Mr. King "access to an out of court proceeding, mediation, at a reduced rate." [Filing No. 149 at 18-19.] Moreover, Marion Circuit Court argues that the Modest Means Mediation Program is not a judicial service and that it waived any obligation to participate in this "non-court proceeding." [Filing No. 149 at 19; Filing No. 149 at 28.]

---

[6] The parties argued over whether the Modest Means Mediation Program is a judicial service in discussing both sovereign immunity and the merits of Mr. King's ADA claim. The Court will condense all arguments here.

14

In his reply, Mr. King argues that contrary to Marion Circuit Court's argument, Title II does not solely regulate judicial services, but that it also includes anything that a public entity does, which includes judicial services. [Filing No. 150 at 27.] Moreover, Mr. King argues that the Modest Means Mediation Program should be considered a judicial service and that "Title II implicates broadly the 'accessibility of judicial services and programs.'" [Filing No. 150 at 28.] Mr. King argues that based on that structure, the Modest Means Mediation Program is "a fundamental part of the Indiana court system, including Marion Circuit Court," which "resolves issues much more quickly and efficiently and saves a tremendous amount of court time." [Filing No. 150 at 29.] Thus, he argues that for these reasons, the Marion Circuit Court is a service, program, or activity under Title II. [Filing No. 150 at 30.]

In its reply, Marion Circuit Court asserts that Mr. King has never been denied any fundamental right of access to the courts, and that he failed to respond to this argument. [Filing No. 153 at 10.] It claims that "no constitutional right is at issue because no judicial services are at issue." [Filing No. 153 at 10.] Moreover, Marion Circuit Court argues that the Modest Means Mediation Program is privately funded and regarded as settlement negotiations, and is also not a state public service, program, or activity. [Filing No. 153 at 10-11.]

Although the ADA does not define "services, programs, or activities," the Rehabilitation Act[7] defines that phrase as "all of the operations of . . . a local government," and courts have

---

[7] Section 504 of the Rehabilitation Act provides that "[n]o otherwise qualified individual with a disability in the United States . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance. . . ." 29 U.S.C. § 794(a). The Rehabilitation Act applies to federal government agencies as well as organizations that receive federal funds. *Wisconsin Cmty. Servs., Inc. v. City of Milwaukee*, 465 F.3d 737, 746 (7th Cir. 2006). The Seventh Circuit generally construes Title II of the ADA and Section 504 consistently in most respects. *Radaszewski ex rel. Radaszewski v. Maram*, 383 F.3d 599, 607 (7th Cir. 2004).

adopted that definition for the ADA.  *See Frame*, 657 F.3d at 225 ("The ADA does not define the 'services, programs, or activities of a public entity.'  The Rehabilitation Act, however, defines a 'program or activity' as 'all of the operations of ... a local government.'  As already stated, we interpret Title II and the Rehabilitation Act [together]."); *Prakel*, 2015 WL 1455988, at *16 (citing *Frame* for the "broad definition" of the phrase "services, programs, or activities").

With this guidance, the Court considers whether the Modest Means Mediation Program is a judicial service.  Both parties acknowledge that the purpose of the program is "to promote agreed resolutions, avoid post-dissolution processes, maximize timely case management, and conserve family relations and resources."  [Filing No. 129 at 18.]  The program clearly benefits Marion Circuit Court, program participants, and the public because it resolves issues more efficiently and provides a less expensive way to access the court's services.  It is authorized, regulated, and organized pursuant to Marion County's ADR plan, it is submitted to the Judicial Conference of Indiana, and Marion Circuit Court determines whether a party qualifies to participate in the Modest Means Mediation Program by issuing a court order.  Parties who participate make a minimum co-payment and those funds, along with other funds from the ADR plan, which are collected by the Court, are used to pay for the Modest Means Mediation Program.  Marion Circuit Court appoints the mediator from the Indiana Supreme Court Mediator Registry, and at the conclusion of the Modest Means Mediation Program, a report is filed with the Court indicating whether mediation resulted in no agreement, partial agreement, or full agreement.  These undisputed facts compel the Court to concludes that the Modest Means Mediation Program is a judicial service subject to the provisions of Title II of the ADA. Therefore, because immunity was validly abrogated by Congress in the ADA, and because the Modest Means Program is within the scope of the ADA's provisions, Marion Circuit Court is not entitled to sovereign immunity.

2.   *Judicial Immunity*

In its Cross-Motion for Summary Judgment, Marion Circuit Court claims that it is entitled to judicial immunity.  [Filing No. 149 at 32.]  It contends that Mr. King is attempting to circumvent judicial immunity because his ADA claim is not "a result of any purported conduct by the Marion Circuit Court or instrumentalities of the Court, but rather an attack on the Orders of the judge. . . ."  [Filing No. 149 at 32.]

In response, Mr. King argues that Marion Circuit Court is not entitled to judicial immunity, and that this is the third time that it has raised this issue.  [Filing No. 150 at 36 (citing Filing No. 61 at 11-12; Filing No. 102 at 21-22).]  He argues that the "law of the case" applies here.  [Filing No. 150 at 37.]  Mr. King further argues that he has not sued any judges, but only a government entity.  [Filing No. 150 at 37.]

In reply, Marion Circuit Court argues that Mr. King "cannot attempt to circumvent judicial immunity by naming entities besides the judge, when the alleged conduct stems from orders issued through the judicial process."  [Filing No. 153 at 16.]  It claims that this issue arose from a judicial order denying Mr. King's request for an ASL interpreter for an out of court proceeding.  [Filing No. 153 at 16.]

The Seventh Circuit has made it clear that "units of government are not entitled to immunity. . . .  Official immunities (judicial, legislative, absolute, qualified, quasi, and so on) are personal defenses designed to protect the finances of public officials whose salaries do not compensate them for the risks of liability under vague and hard-to-foresee constitutional doctrines. That justification does not apply to suits against units of state or local government, which can tap the public fisc."  *Hernandez v. Sheahan*, 455 F.3d 772, 776 (7th Cir. 2006).

This Court has issued two previous orders addressing the issue of judicial immunity. Under the first order, the Court addressed Mr. King's Motion for Leave to Amend his Amended Complaint. [Filing No. 61.] Marion Circuit Court and other defendants who were parties at the time asserted judicial immunity as a defense and this Court found that judicial immunity did not apply because Mr. King alleged that the activities that caused the denial of an interpreter were not judicial acts. [Filing No. 61 at 12.] In a footnote, the Court further noted that judicial immunity is a personal defense reserved for individuals and not for units of state or local government. [Filing No. 61 at 12.] The Court thereafter issued a second order from another motion to dismiss, and it reiterated that Marion Circuit Court was not entitled to judicial immunity or quasi-judicial immunity. [Filing No. 102 at 22.]

Now at the summary judgment stage, Marion Circuit Court makes the same arguments and claims that Mr. King is attempting to circumvent judicial immunity by naming other entities as defendants besides the judge. Once again, this argument is without merit. Judicial immunity is a personal defense, and Marion Circuit Court has acknowledged that no individual defendants are named as parties to this lawsuit. *See Hernandez*, 455 F.3d at 776. Marion Circuit Court is the sole defendant in this lawsuit and, as the Court noted in its previous Order, units of government are not entitled to immunity. [*See* Filing No. 102 at 22 (quoting *Hernandez*, 455 F.3d at 776).] Nor is Mr. King trying to do an end-run by naming Marion Circuit Court as opposed to an individual judge. Mr. King is not simply challenging a court order denying the appointment of a mediator, he is challenging an allegedly discriminatory policy – the denial of an ASL interpreter for a hearing impaired Modest Means Mediation Program participant. He is permitted to pursue a Title II claim against Marion Circuit Court, which is the entity that established that policy. Thus, Marion Circuit Court is not entitled to judicial immunity.

### C.  Mr. King's ADA Claim

In his brief supporting his Motion for Partial Summary Judgment, Mr. King claims that the facts of this case demonstrate that Marion Circuit Court violated Title II of the ADA as a matter of law.  [Filing No. 129 at 15.]  He claims that Marion Circuit Court failed to "provide [him] with the necessary auxiliary aids and services to ensure effective communication," refused to "accommodate to [his] disability," and "intentionally discriminat[ed] against [him] on the basis of his disability."  [Filing No. 129 at 15.]

In response, Marion Circuit Court argues that the Modest Means Mediation Program is not a program, service, or activity under Title II.  [Filing No. 149 at 18.]  It further argues, however, to the extent that the Modest Means Mediation Program falls under Title II, Marion Circuit Court did not intentionally discriminate against Mr. King, [Filing No. 149 at 20], and it provided a reasonable accommodation by releasing him from the obligation of attending mediation, [Filing No. 149 at 23].

A violation of Title II of the ADA "may be established by evidence that (1) the defendant intentionally acted on the basis of the disability, (2) the defendant refused to provide a reasonable modification, or (3) the defendant's rule disproportionally impacts disabled people."  *Wisconsin Cmty. Servs.*, 465 F.3d at 753.  Thus, to succeed on an ADA claim against Marion Circuit Court, Mr. King must connect Marion Circuit Court's intentional actions to his disability and the denial of his request to be provided an ASL interpreter.

The parties do not dispute that Mr. King is a qualified individual with a disability nor that Marion Circuit Court is a public entity in accordance with Title II of the ADA.  However, the parties dispute the following three issues: (1) whether the Modest Means Mediation Program is a "service, program, or activity;" (2) whether Marion Circuit Court was required to provide an ASL

interpreter as a reasonable accommodation; and (3) whether Marion Circuit Court acted intentionally on a basis of Mr. King's disability. The Court will address each issue in turn.

### 1. Service, Program, or Activity

The Court already determined that the Modest Means Mediation Program is a service, program, or activity under Title II of the ADA. Thus, the Court need not address this issue again.

### 2. Reasonable Accommodation

#### a. ASL Interpreter

Mr. King argues that an accommodation for the Modest Means Mediation Program "was necessary in order to avoid discrimination on the basis of his disability." [Filing No. 129 at 21.] He also argues that the "requested accommodation was reasonable" and that he designated evidence that shows Marion Circuit Court could have paid $60 per hour for an ASL interpreter, and since the mediation lasted between three to four hours, the most it would have paid was $240, which he claims is a relatively minor expense given its budget. [Filing No. 129 at 22.]

In response, Marion Circuit Court argues that assuming Mr. King was entitled to an accommodation, it provided a reasonable accommodation when it released Mr. King from the obligation to attend the Modest Means Mediation Program. [Filing No. 149 at 23.]

In reply, Mr. King argues that releasing him from the obligation to attend the Modest Means Mediation Program is immaterial and that his request for an accommodation was necessary and reasonable. [Filing No. 150 at 32.] Mr. King reiterates that his evidence demonstrates that providing an ASL interpreter for mediation is not an unreasonable accommodation. [Filing No. 150 at 34-35.]

In its reply, Marion Circuit Court argues that Mr. King does not focus on the reasonableness of the accommodation and that Indiana law supports the fact that mediation is not a judicial service. [Filing No. 153 at 11-12.]

A public entity is required to "take appropriate steps to ensure that communications with applicants, participants, and members of the public with disabilities are as effective as communications with others." 28 C.F.R. § 35.160(a). A public entity must also "furnish appropriate auxiliary aids and services where necessary to afford an individual with a disability an equal opportunity to participate in, and enjoy the benefits of, a service, program, or activity conducted by a public entity." 28 C.F.R. § 35.160(b)(1). In deciding "what type of auxiliary aid and service is necessary," a public entity is required to "give primary consideration to the requests of the individual with disabilities." 28 C.F.R. § 35.160(b)(2). Such auxiliary aids include "effective methods of making aurally delivered information available to individuals who are deaf or hard of hearing," such as "qualified interpreters." 28 C.F.R. § 35.104.

Throughout this litigation, Marion Circuit Court has maintained its position that waiving Mr. King's requirement to attend mediation was a reasonable accommodation. However, such action is not an accommodation because Mr. King actually requested to participate in the Modest Means Mediation Program and he notified the Marion Circuit Court that he needed an ASL interpreter in order to meaningfully do so. The program presented him with an opportunity to participate in mediation at little expense, as opposed to traditional private mediation. According to Title II, Marion Circuit Court was required to give primary consideration to Mr. King's request for an interpreter, but it deliberately failed to do so. The only justification that it gave was that it had no funding for an interpreter for the Modest Means Mediation Program even though it had a budget of $25,000 for interpreter services, and although it claims that none of those funds were for

mediation, such allegation is not corroborated by any evidence. During that time, Indianapolis Interpreters charged $60 per hour for the use of an ASL interpreter and the most that Marion Circuit Court would have had to pay is $240 for an interpreter. Moreover, even if an interpreter were not available, Marion Circuit Court failed to consider whether any other accommodations listed under 28 C.F.R. § 35.104[8] were suitable for Mr. King's mediation. Thus, as a matter of law, Marion Circuit Court failed to provide Mr. King with a reasonable accommodation for the Modest Means Mediation Program.

### b. Fundamental Alteration or Undue Burden

Marion Circuit Court argues that since a public entity is not required to make an accommodation that would "result in a fundamental alteration" or "in undue financial and administrative burdens," the judicial officer who made the determination regarding the interpreter had the authority to consider the "budgetary constraints and lack of funding" as well as "case management and managing the court's docket. . . ." [Filing No. 149 at 24.] In a footnote, Marion Circuit Court claims that it opened 4,810 new paternity cases in 2013 and that "the sheer volume of cases filed in Marion Circuit Court [would] implicate[] an undue burden associated with altering" the budget and administrative actions. [Filing No. 149 at 24.] It further claims that given

---

[8] Although not all are applicable with respect to Mr. King's disability, other auxiliary aids and services under 28 C.F.R. § 35.104 include:

> (1) . . . [N]otetakers; real-time computer-aided transcription services; written materials; exchange of written notes; telephone handset amplifiers; assistive listening devices; assistive listening systems; telephones compatible with hearing aids; closed caption decoders; open and closed captioning, including real-time captioning; voice, text, and video-based telecommunications products and systems, including text telephones (TTYs), videophones, and captioned telephones, or equally effective telecommunications devices; videotext displays; accessible electronic and information technology; or other effective methods of making aurally delivered information available to individuals who are deaf or hard of hearing[.]

these considerations, the judge's "orders operated as written statements indicating clear, nondiscriminatory rationale[s] . . ." and that it "exercised its discretionary function and waived the mediation requirement. . . ." [Filing No. 149 at 24.]

In response, Mr. King argues that a determination for an accommodation is made on a case-by-case basis, that he was not asserting a claim on behalf of the entire deaf population, that all paternity actions would not require an interpreter, and that all persons referred to Modest Means Mediation are not deaf or disabled. [Filing No. 150 at 32-33.] He further claims that Marion Circuit Court has not designated any other evidence that would show the requested accommodation would be an undue burden or a fundamental alteration. [Filing No. 150 at 34.]

In reply, Marion Circuit Court argues that mediation is not a judicial service and that states are not required to employ any and all means to make judicial services accessible to persons with disabilities or to compromise their essential eligibility criteria for programs. [Filing No. 153 at 11-12.]

A public entity is not required to employ any and all means to make judicial services accessible to persons with disabilities. *Lane*, 541 U.S. at 531-32. Thus, Title II regulations provide:

> [A] public entity has the burden of proving that compliance with this subpart would result in [fundamental alterations to the program, service, or activity or undue financial and administrative burdens]. The decision . . . must be made by the head of the public entity or his or her designee after considering all resources available for use in the funding and operation of the service, program, or activity and must be accompanied by a written statement of the reasons for reaching that conclusion. If an action required to comply with this subpart would result in such an alteration or such burdens, a public entity shall take any other action that would not result in such an alteration or such burdens but would nevertheless ensure that, to the maximum extent possible, individuals with disabilities receive the benefits or services provided by the public entity.

28 C.F.R. § 35.164.

Marion Circuit Court claims that the judge was a designee of the court and that he determined there was no funding for interpreters for the Modest Means Mediation Program because of budgetary constraints and issues affecting the management of the cases and court's docket.  However, it has not presented any evidence that it followed the procedural steps set out above.  Evidence in the record shows that the judge indicated that the budget for interpreters did not extend to mediation, but nothing demonstrates that the judge considered whether such accommodation would alter the program or whether it would be an undue burden to the court.  In its brief, Marion Circuit Court alleges that such accommodation would be an undue burden because of its "sheer volume of cases."  Even considering this allegation, it is doubtful that paying for an interpreter in a one-time proceeding would alter the program or unduly impact the financial resources of the court.  As Mr. King asserts, he was not representing the entire deaf population and all the people who are ordered to attend the Modest Means Mediation are not deaf or disabled.  Accordingly, Marion Circuit Court has not met its burden to show that providing an interpreter for the Modest Means Mediation Program would result in a fundamental alteration or undue burden.

    *3. Intentional Act*

Mr. King argues that Marion Circuit Court intentionally discriminated against him because it had notice of his need for an accommodation when he requested an ASL interpreter for the Modest Means Mediation Program numerous times.  [Filing No. 129 at 24.]  Mr. King claims that Marion Circuit Court deliberately denied him an interpreter after each request without any investigation.  [Filing No. 129 at 24.]  He contends that there is no evidence that Marion Circuit Court investigated "whether it would have been possible to provide the requested accommodation or tried to provide [him] an interpreter or other reasonable modification. . . ."  [Filing No. 129 at

26.]  He argues that Marion Circuit Court would have easily been able to provide the requested accommodation, and instead he had to procure his own interpreter.  [Filing No. 129 at 26.]

In response, Marion Circuit Court argues that there is no fundamental right to attend the Modest Means Mediation Program, and no evidentiary basis that it violated the ADA.  [Filing No. 149 at 22.]  It further claims that Mr. King's "request for mediation was granted, and after considering [his] request to appoint an interpreter, the Court exercised its discretionary function and waived the mediation requirement due to budgetary restraints. . . ."  [Filing No. 149 at 23.]

In reply, Mr. King argues that "Marion Circuit Court appears to be incorporating its general argument that [it] did not violate Title II."  [Filing No. 150 at 31.]  Mr. King argues that he "would incorporate his argument herein as well as his arguments about intentional discrimination from his brief in support of summary judgment to the extent that Marion Circuit Courts is trying to dispute whether discrimination was intentional or not."  [Filing No. 150 at 31 (citing Filing No. 129 at 22-26).]

In reply, Marion Circuit Court argues that Mr. King "ignores the plain facts of the underlying family law case, the waiver of any mediation requirement, and the subsequent voluntary mediation proceeding."  [Filing No. 153 at 12.]  It goes on to claim that it relieved Mr. King from any obligation of mandatory mediation and from any expense that could have been requested through the mediator or through Mr. King's attorney.  [Filing No. 153 at 12-13.]  Marion Circuit Court further argues that Mr. King ignores authority that asserts that courts are not required to provide interpreter services for mediation.  [Filing No. 153 at 13 (citing Filing No. 149 at 20).]

In order to recover compensatory damages under the ADA, the plaintiff must prove intentional discrimination. *See Love v. Westville Correctional Ctr.*, 103 F.3d 558, 561 (7th Cir. 1996) (citation omitted).  The Seventh Circuit has not spoken on what standard is needed in order

25

to prove intentional discrimination. *Strominger v. Brock*, 592 Fed.Appx. 508, 512 (7th Cir. 2014). Moreover, the circuits are split on what the appropriate standard should be, "with the minority of circuits suggesting discriminatory animus as the proper standard and the majority applying a deliberate indifference standard." *Prakel*, 100 F. Supp.3d at 684 (listing cases); *see CTL v. Ashland Sch. Dist.*, 743 F.3d 524, 528 n.4 (7th Cir. 2014). Other district courts in this circuit have adopted the majority approach. *See Prakel*, 100 F.Supp. 3d at 684 ("[W]e share the Third Circuit's approach in concluding that the deliberate indifference standard more closely aligns with the remedial goals of the ADA. . . ."); *Phipps v. Sheriff of Cook Cty.*, 681 F. Supp. 2d 899, 918 (N.D. Ill. 2009) (applying the deliberate indifference standard and finding that defendants were unable to show that they were not deliberately indifferent when they refused to provide the accommodations that the plaintiffs requested); *Kennington v. Carter*, 2004 WL 2137652, at *7 (S.D. Ind. 2004) ("Though the Seventh Circuit has not addressed the issue, several circuits have held that the appropriate test for intentional discrimination is the 'deliberate indifference' standard.") (citations omitted). This Court agrees that the deliberate indifference standard should apply, and will analyze the case accordingly.

Deliberate indifference requires: "(1) knowledge that a federally protected right is substantially likely to be violated . . . and (2) failure to act despite that knowledge." *S.H. ex rel. Durrell v. Lower Merion Sch. Dist.*, 729 F.3d 248, 265 (3d Cir. 2013); (citing *Duvall v. Cty. of Kitsap*, 260 F.3d 1124, 1139 (9th Cir. 2001)). That standard "'does not require a showing of personal ill will or animosity toward the disabled person,' but rather can be 'inferred from a defendant's deliberate indifference to the strong likelihood'" that the policies will lead to a federal violation. *Meagley v. City of Little Rock*, 639 F.3d 384, 389 (8th Cir. 2011) (citing *Barber ex rel. Barber v. Colorado Dept. or Revenue*, 562 F.3d 1222, 1228-29 (8th Cir. 2011)).

Marion Circuit Court maintains its position that it did not violate Title II of the ADA because no fundamental right was at issue, but as noted several times, the Court has already determined that Mr. King had a fundamental right to participate in the Modest Means Mediation Program. Thus, as to the first element, it is undisputed that Marion Circuit Court was aware of Mr. King's disability. Mr. King filed a request for an ASL interpreter with the court, notifying it of his disability and need for an accommodation, and the judge issued an order denying his request. Mr. King then sought reconsideration and clearly expressed that "Title II of the Americans with Disabilities Act . . . Chapter 3 requires general effective communication with people with disabilities" and "equal access with auxiliary aids and services. . . ." The judge once again denied Mr. King's request. Thus, Marion Circuit Court was on notice of Mr. King's disability.

The second element is likewise met. Marion Circuit Court does not dispute that it did not provide Mr. King with an ASL interpreter, but rather that it offered him a reasonable accommodation by waiving the mediation requirement. As determined above, however, this is not an accommodation because it would exclude Mr. King from participating in the Modest Means Mediation Program, which he wanted to do. Other than excluding him from participation, Marion Circuit Court has designated no other evidence to demonstrate that it gave primary – or any – consideration to Mr. King's need for an ASL interpreter or that it considered other reasonable accommodations to allow him to participate in mediation. Thus, Marion Circuit Court's failure to seek any reasonable accommodation that would allow Mr. King to participate in the program is sufficient to establish that it acted with deliberate indifference and therefore intentionally. *See Barber*, 562 F.3d 1229 (holding the level of intent that is required to satisfy a failure to act is "'more than negligent, and involves an element of deliberateness'. . . . [A] public entity does not 'act' by proffering just any accommodation: it must consider the particular individual's need when

27

conducting its investigation into what accommodations are reasonable.'") (citing *Lovell v. Chandler*, 303 F.3d 1039, 1056 (9th Cir. 2002)).  Therefore, because Marion Circuit Court knew that Mr. King was deaf and required an ASL interpreter for mediation, was advised that he considered the ADA to apply, and it nevertheless denied him an interpreter or a reasonable accommodation, the Court finds that Marion Circuit Court intentionally discriminated against Mr. King.

In conclusion, the Court finds that Mr. King is a qualified individual, Marion Circuit Court is a public entity, and the Modest Means Mediation Program is a service, program, or activity all within the meaning of Title II of the ADA.  Moreover, Marion Circuit Court violated Title II when it denied Mr. King's request for an ASL interpreter for the Modest Means Mediation Program, failed to provide him with a reasonable accommodation, and intentionally discriminated against him on the basis of his disability.  The Court is mindful of the budget constraints all units of government face, but simple citation to lack of funding is not a sufficient response to a person with a disability seeking to avail himself of a governmental service.

## IV.
### CONCLUSION

For the reasons detailed above, the Court **GRANTS** Mr. King's Motion for Partial Summary Judgment, [Filing No. 128], and **DENIES** Marion Circuit Court's Cross-Motion for Summary Judgment, [Filing No. 141].  No partial final judgment shall enter at this time.  The Court requests that the assigned Magistrate Judge schedule a conference with the parties to discuss the possibility of resolving the remaining issues by agreement, or to develop a plan for resolving the remaining issues at trial.

Date:   May 27, 2016

Hon. Jane Magnus-Stinson, Judge
United States District Court
Southern District of Indiana

Distribution:

Adriana  Katzen
BLEEKE DILLON CRANDALL, PC
adriana@bleekedilloncrandall.com

Alex Maurice Beeman
CIOBANU LAW PC
abeeman@ciobanulaw.com

Andrea Lynn Ciobanu
CIOBANU LAW, PC
aciobanu@ciobanulaw.com

Dino L. Pollock
INDIANA ATTORNEY GENERAL
dino.pollock@atg.in.gov

Kenneth Lawson Joel
INDIANA ATTORNEY GENERAL
kenneth.joel@atg.in.gov

Philip Alan Gordon
INDIANA ATTORNEY GENERAL
philip.gordon@atg.in.gov

William M. Horne
INDIANA ATTORNEY GENERAL
whorne@hornelegal.com

Adriana  Katzen
OFFICE OF CORPORATION COUNSEL
adriana.katzen@indy.gov

Beth Ann Garrison
OFFICE OF CORPORATION COUNSEL
beth.garrison@indy.gov

Amanda J. Dinges
OFFICE OF CORPORATION COUNSEL
amanda.dinges@indy.gov

Betsy M. Isenberg
OFFICE OF THE ATTORNEY GENERAL
Betsy.Isenberg@atg.in.gov

Patricia Orloff Erdmann
OFFICE OF THE ATTORNEY GENERAL
Patricia.Erdmann@atg.in.gov